## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT BISHINS, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CLEANSPARK, INC., ZACHARY BRADFORD, and LORI LOVE,<br><br>　　　　　　　　　　　　Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Scott Bishins ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by CleanSpark, Inc. ("CleanSpark" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by CleanSpark; and (c) review of other publicly available information concerning CleanSpark.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired CleanSpark securities between December 31, 2020 and January 14, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. CleanSpark provides advanced software and controls technology solutions, including end-to-end microgrid energy modeling, energy market communications, and energy management solutions.

3. On January 14, 2021, Culper Research published a report alleging, among other things, that CleanSpark has "fabricated key elements of its business, including purported customers and contracts" and that it is "rife with undisclosed related party transactions."

4. On this news, the Company's share price fell $3.63, or 9%, to close at $35.71 per share on January 14, 2021, thereby damaging investors. The stock continued to decline the next trading session by $4.56, or 13%, to close at $31.15 per share on January 15, 2021.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had overstated its customer and contract figures; (2) that several of the Company's recent acquisitions involved undisclosed related party transactions; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11.     Plaintiff Scott Bishins, as set forth in the accompanying certification, incorporated by reference herein, purchased CleanSpark securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant CleanSpark is incorporated under the laws of Nevada with its principal executive offices located in Woods Cross, Utah. CleanSpark's common stock trades on the NASDAQ exchange under the symbol "CLSK."

13.     Defendant Zachary Bradford ("Bradford") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Lori Love ("Love") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Bradford and Love (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the

positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     CleanSpark provides advanced software and controls technology solutions, including end-to-end microgrid energy modeling, energy market communications, and energy management solutions.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on December 31, 2020. On that day, the Company issued a press release entitled "CleanSpark Achieves Another Record Revenue Year, Discusses Growth Plans in Annual Statement to Shareholders." It stated, in relevant part:

> We're proud of the efforts of our amazing stakeholders across the entire enterprise for successfully achieving a number of significant wins for the Company, including:
>
> - During our 2020 fiscal year, we completed successful acquisitions of GridFabric and p2klabs. Both acquired companies are cashflow-positive and provide us with entirely new verticals for growth. Subsequent policy shifts (FERC2222) should further accelerate growth in the GridFabric segment.
>
> \*       \*       \*
>
> - In early December 2020, we acquired ATL Data Centers in an 'all-stock' transaction. By leveraging our proprietary technologies, the Company expects to increase Bitcoin production while lowering total energy costs, thereby maximizing overall profitability. The anticipation of producing Bitcoins at what we believe will be potentially the lowest total energy cost in America is expected to be a substantial opportunity to market our proprietary energy solutions to other energy intensive operations throughout the world.
>
> \*       \*       \*

**Outlook**

The Company expects the somewhat cyclical nature of our business to continue. As an example, approximately 10% of our fiscal 2020 revenue was realized in the quarter ending December 31, 2019. We anticipate this trend will continue in fiscal 2021 and we forecast that our second and third fiscal quarters will again be our strongest. We expect to generate $20 million in revenue related to our current business segments and we expect the recent acquisition of ATL Data Center to contribute a minimum of $10 million in additional Bitcoin-based (BTC-USD) revenues for 2021. We are working diligently to expand the data center capacity allowing us to further increase these initial estimates, but the Company's guidance will remain somewhat conservative until the expansion has been completed and we have sufficient data to forecast a firm outlook. Finally, as we have only recently begun to integrate ATL into our operations, we have not yet measured the potential additional value expected to be derived from the demonstration of our energy technologies within the data center for additional microgrid deployment and sales opportunities.

18.    The above statements identified in ¶ 17 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had overstated its customer and contract figures; (2) that several of the Company's recent acquisitions involved undisclosed related party transactions; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

19.    On January 14, 2021, Culper Research published a report alleging, among other things, that CleanSpark has "fabricated key elements of its business, including purported customers and contracts" and that it is "rife with undisclosed related party transactions." Specifically, it alleged that the most recent acquisition of ATL Data Centers, LLC "is another Gutless Promotion Attempt."

CleanSpark acquired ATL Data Centers, LLC on December 10, 2020. In the press release, CEO Zachary Bradford stated that: "We began early-stage analysis of ATL in February 2020 to evaluate expanding the facility's energy capacity and reducing

energy costs." However, ATL wasn't created until April 13, 2020, per the State of Georgia:



**ATL Data Centers LLC**
a Domestic Limited Liability Company

has been duly organized under the laws of the State of Georgia on **04/13/2020** by the filing of articles of organization in the Office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

The press release also notes ATL's website, www.atl-data.com, which we find **was registered on December 8, 2020, just two days prior to CleanSpark announcing the acquisition**:



Name: ATL-DATA.COM

Registry Domain ID: 2577179177_DOMAIN_COM-VRSN

Domain Status:
clientDeleteProhibited
clientRenewProhibited
clientTransferProhibited
clientUpdateProhibited

Nameservers:
NS13.DOMAINCONTROL.COM
NS14.DOMAINCONTROL.COM

**Dates**

Registry Expiration: 2021-12-08 00:19:05 UTC

Created: 2020-12-08 00:19:05 UTC

The data center itself was previously held by Virtual Citadel, Inc. which initiated bankruptcy proceedings upon the death of its founder. Out of the bankruptcy process, the assets then appear to be owned by "Fastblock Mining," whose principals were also listed principals of ATL Data Centers, LLC. See that ATL's merely days-old website uses the same branding as Fastblock:

**Fastblock Mining** vs. **ATL Data Centers**



To us, this hasty rebranding was an attempt to dissociate ATL from its checkered history. In August 2020, Marathon made an offer to acquire Fastblock / ATL. However, in September 2020, Marathon backed out of the deal, citing the upcoming expiration of its power agreement:

> "During its due diligence process, the Company discovered that the Power Agreement pursuant to which Fastblock would provide power at a subsidized rate of $0.0285KwH, would expire in three years. The Company and Fastblock were unsuccessful in attempts to extend the term of that agreement with the power provider to the 7–10 year Window which the Company would need for this acquisition to be economically feasible."

In numerous press releases and promotional interviews, CleanSpark has touted that ATL's mining operations are profitable with bitcoin prices above $6,000. **However, CleanSpark has not disclosed to investors if it faces the same rate hike that made Marathon walk away.** CleanSpark's potential lies of omission aside, we think investors buying CleanSpark for the Bitcoin-related hype are getting a broken-down Toyota Corolla, while CleanSpark claims it has a Porsche 911. ATL's single measly warehouse has present capacity of just 3,471 ASIC miners and 245 PH/s, a fraction of miners such as RIOT Blockchain (RIOT) and Marathon Patent Group (MARA).

20.     The report also alleged that the Company "Habitually Fabricates and Overstates Claimed 'Customers' and 'Contracts,'" including by "Claim[ing] Microgrids at 252 Homes in Valle Divino" that are actually "a Wasteland." Culper further stated:

> CleanSpark has touted contracts with International Land Alliance (OTC:ILAL), a $13 million penny stock that we believe to be total vapor. CleanSpark signed its initial agreement with ILAL in November 2019 in which it claimed "1,500 deployment sites … will start later this year [2019] with two Villa's to be used as

model home units … the Company expects to realize revenues ranging from approximately $2,000 to in excess of $100,000 per property."

CEO Bradford referred to the agreement as "a game changer for us" and concurrent with the release, CleanSpark invested up to $500,000 in ILAL. However, despite the claim of a "initial roll-out this year," so far as we can tell, CleanSpark has not yet deployed a single microgrid to any ILAL properties. Instead, in August 2020, CleanSpark announced that it was, "pleased to announce project deployments to be executed as part their exclusive [ILAL] agreement … Under this phase International has agreed that CleanSpark will provide microgrid power solutions to more than 400 unique residential resort properties," of which 252 are cabins at Valle Divino and 152 are "luxury villas within the Plaza Bajamar project."

21.    The report further alleged that CleanSparks' "February 2020 acquisition of p2k Labs, which we've found is an undisclosed related party transaction that has apparently fabricated its customers." It continued:

p2k's website lists customer logos, including Monster Shield and Cirrina Activewear, shown below. **However, Monster Shield, LLC is an Arizona corporation which lists CleanSpark Chief Revenue Officer Amer Tadayon as its sole member since February 2015. Tadayon was Founder and CEO of p2k Labs itself and is now CleanSpark's Chief Revenue Officer.**

*        *        *

[We] were unable to find any independent Cirrina web presence apart form p2k's website. **Highly dubious 'customers' aside, we feel this begs the question of why CleanSpark acquired p2k Labs, which has zero relation to the Company's supposed focus in 'clean energy software.'**

Moreover, p2k Labs corporate documents registered in Nevada in November 2018 list current CleanSpark CFO Lori Love as an officer of the business well before she arrived at CleanSpark in October 2019, and well before CleanSpark closed on the acquisition of p2k Labs in February 2020:



**As such, we view CleanSpark's acquisition of p2k Labs to be yet another undisclosed related party transaction which essentially funneled capital from the Company to the pockets of insiders.**

22.    The report also identified another undisclosed related party transaction with

LAWCLERK.LEGAL, stating:

> On October 13, 2020, CleanSpark claimed to have executed a contract with LAWCLERK.LEGAL "valued in excess of $1 million." The press release included a quote from CleanSpark's CRO and p2klabs founder Amer Tadayon, which stated, in part, "This contract renewal shows that not only can we attract new business, but we have also proven our value as a trusted partner with our clients." We find this laughable, as on LAWCLERK's own website, Tadayon is shown as the company's Chief Product Officer:

**Amer Tadayon**
*Chief Product Officer*

A seasoned executive and entrepreneur, Amer Tadayon is co-founder and CEO of p2k Labs, a design, technology and marketing agency. As CPO of LAWCLERK, Amer brings more than 25 years of experience in all facets of business including technology, marketing, sales and design. He has held leadership positions at Fortune 500 companies including IBM, Cognizant and Frog Design. He has also worked with major global brands such as Nike, MTV and Mattel.

Amer has led the development and technology team at LAWCLERK from its conception to the creation of its online marketplace. As the company expands into new markets, he oversees the crossover of design, technology, function and user experience to make sure the LAWCLERK marketplace is positioned to revolutionize the practice of law.

> As such, it appears that when Tadayon refers to "our clients," he's referring to himself in the third person, as this contract is a blatantly obvious undisclosed related party transaction.

23.    On this news, the Company's share price fell $3.63, or 9%, to close at $35.71 per share on January 14, 2021, thereby damaging investors. The stock continued to decline the next trading session by $4.56, or 13%, to close at $31.15 per share on January 15, 2021.

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased

or otherwise acquired CleanSpark securities between December 31, 2020 and January 14, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, CleanSpark's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.   Millions of CleanSpark shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by CleanSpark or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of CleanSpark; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

30.     The market for CleanSpark's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, CleanSpark's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired CleanSpark's securities relying upon the integrity of the market price of the Company's securities and market information relating to CleanSpark, and have been damaged thereby.

31.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of CleanSpark's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false

and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about CleanSpark's business, operations, and prospects as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about CleanSpark's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34.     During the Class Period, Plaintiff and the Class purchased CleanSpark's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

35.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding CleanSpark, their control over, and/or receipt and/or modification of CleanSpark's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning CleanSpark, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

36.     The market for CleanSpark's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, CleanSpark's securities traded at artificially inflated prices during the Class Period.  On January 7, 2021, the Company's share price closed at a Class Period high of $40.39 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of CleanSpark's securities and market information relating to CleanSpark, and have been damaged thereby.

37.     During the Class Period, the artificial inflation of CleanSpark's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about CleanSpark's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of CleanSpark and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially

inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38.     At all relevant times, the market for CleanSpark's securities was an efficient market for the following reasons, among others:

(a)     CleanSpark shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, CleanSpark filed periodic public reports with the SEC and/or the NASDAQ;

(c)     CleanSpark regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     CleanSpark was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

39.     As a result of the foregoing, the market for CleanSpark's securities promptly digested current information regarding CleanSpark from all publicly available sources and reflected such information in CleanSpark's share price. Under these circumstances, all purchasers of CleanSpark's securities during the Class Period suffered similar injury through their purchase of CleanSpark's securities at artificially inflated prices and a presumption of reliance applies.

40.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of CleanSpark who knew that the statement was false when made.

CLASS ACTION COMPLAINT

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

42.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase CleanSpark's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for CleanSpark's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about CleanSpark's financial well-being and prospects, as specified herein.

46.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of CleanSpark's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about CleanSpark and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing CleanSpark's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of CleanSpark's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired CleanSpark's securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that CleanSpark was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their CleanSpark securities,

or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     Individual Defendants acted as controlling persons of CleanSpark within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.     As set forth above, CleanSpark and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 20, 2021                    By:  *s/Gregory B. Linkh*
                                           **GLANCY PRONGAY & MURRAY LLP**
                                           Gregory B. Linkh (GL-0477)
                                           230 Park Ave., Suite 530
                                           New York, NY 10169
                                           Telephone: (212) 682-5340
                                           Facsimile: (212) 884-0988
                                           Email: glinkh@glancylaw.com

                                                   and

                                           Robert V. Prongay
                                           Charles H. Linehan
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, CA 90067
                                           Telephone: (310) 201-9150
                                           Facsimile: (310) 201-9160
                                           Email: info@glancylaw.com

                                           **THE LAW OFFICES OF FRANK R. CRUZ**
                                           Frank R. Cruz
                                           1999 Avenue of the Stars, Suite 1100
                                           Los Angeles, CA 90067
                                           Telephone: (310) 914-5007

                                           *Attorneys for Plaintiff Scott Bishins*

**SWORN CERTIFICATION OF PLAINTIFF**

**CLEANSPARK, INC. SECURITIES LITIGATION**

I, Scott Bishins, certify that:

1.    I have reviewed the Complaint and authorize its filing and/or the filing of a Lead
      Plaintiff motion on my behalf.

2.    I did not purchase the CleanSpark, Inc securities that are the subject of this action
      at the direction of plaintiff's counsel or in order to participate in any private action
      arising under this title.

3.    I am willing to serve as a representative party on behalf of a class and will testify
      at deposition and trial, if necessary.

4.    My transactions in CleanSpark, Inc. securities during the Class Period set forth in
      the Complaint are as follows:

      (See attached transactions)

5.    I have not sought to serve, nor served, as a representative party on behalf of a
      class under this title during the last three years, except for the following:

6.    I will not accept any payment for serving as a representative party, except to
      receive my pro rata share of any recovery or as ordered or approved by the court,
      including the award to a representative plaintiff of reasonable costs and expenses
      (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

1/16/2021

_____

Date

*Scott Bishins*

DocuSigned by:

CEA2689770374E0...

_____

Scott Bishins

**Scott Bishins' Transactions in Cleanspark, Inc. (CLSK)**

| Date | Transaction Type | Quantity | Unit Price |
|------|-----------------|----------|-----------|
| 1/8/2021 | Bought | 2,000 | $40.4820 |
| 1/14/2021 | Sold | -2,000 | $35.3302 |