UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT BISHINS, et al., | |
| Plaintiffs, | 21 CV 511 (LAP) |
| -against- | OPINION & ORDER |
| CLEANSPARK, INC., et al., | |
| Defendants. | |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are the issues of: (1) appointing lead plaintiff in the above-captioned securities class action pursuant to the Private Securities Litigation Reform Act ("the PSLRA"), see 15 U.S.C. § 78u-4; and (2) approving the selection of counsel for lead plaintiff, also pursuant to the PSLRA.

Four parties initially moved for the status of lead plaintiff in this action: Kenneth Upton, JunMin Liu, Darshan Hasthantra, and Amir Kasbidi. (See dkt. nos. 5, 8, 11, 14.) Subsequently, two parties withdrew their motions upon determining that they did not appear to have the "largest financial interest" in this litigation within the meaning of the PSLRA. (See dkt. nos. 19-21.) On April 16, 2021, the Court granted JunMin Liu's request to withdraw his motion for appointment as lead plaintiff and approval of lead counsel. (See dkt. nos. 19, 21.) On the same day, Amir Kasbidi filed a notice of non-opposition to competing motions for appointment as lead plaintiff and approval of lead counsel. (See dkt. no. 20.)

Thus, only Kenneth Upton and Darshan Hasthantra remain pressing their respective claims through briefs to the Court.

For the reasons set forth, the Court appoints Darshan Hasthantra as lead plaintiff pursuant to the PSLRA.  The Court also selects counsel for Darshan Hasthantra--Glancy Prongay & Murray LLP--as Lead Counsel for the class in this action.

I.    FACTUAL BACKGROUND

The instant dispute arises out of a securities class action brought against Defendant CleanSpark, Inc. ("CleanSpark" or the "Company")--a provider of "advance software and controls technology solutions, including end-to-end microgrid energy modeling, energy market communications, and energy management solutions."  (See dkt. no. 1 ¶ 2.)  Plaintiffs allege that between December 31, 2020 and January 14, 2021, CleanSpark and its executives (1) "overstated the Company's customer and contract figures;" (2) failed to disclose "that several of the Company's recent acquisitions involved undisclosed related party transactions;" and (3) "that, as a result . . . Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis."  (Id. ¶ 5.)  Plaintiffs allege that these misrepresentations and omissions artificially increased the value of the Company's securities, caused the Plaintiffs to purchase the securities at inflated prices, and damaged the Plaintiffs when the price of the securities dropped after the

2

release of Culper Research's report on January 14, 2021.  (Id.
¶¶ 3-6.)

On January 20, 2021, the same day as the commencement of
the action against Defendants, Plaintiff Bishins published
notice of the securities action via Business Wire.  (See Glancy
Prongay & Murray LLP Business Wire Press Release, dated January
20, 2021 [dkt. no. 13, Ex. A].)  The notice provided for 60
days, i.e., until March 22, 2021, the last day permitted under
the PSLRA, for parties to submit their applications to serve as
lead plaintiff.  (See id.)

Both Mr. Upton and Mr. Hasthantra filed motions seeking
appointment as lead plaintiff on March 22, 2021.  (See dkt. nos.
5, 11.)  Mr. Upton claims a loss of approximately $12,110.00 on
his class period transactions in CleanSpark securities.  (See
dkt. no. 6 at 5.)  Mr. Hasthantra claims a loss of approximately
$28,244.04.[1]  (See dkt. no. 13, Ex. C.)

II.  LEGAL STANDARD

The PSLRA demands that a plaintiff in a putative securities
class action publish a notice of "the pendency of the action,
the claims asserted therein, and the purported class period" in

---

[1] In his opposing motion, Mr. Hasthantra presented updated loss
figures:  $34,425.27 for Mr. Hasthantra and $13,531.07 for Mr. Upton.
(Dkt. no. 22 at 4.)  These loss figures differ from those included in
the movants' original loss charts because Mr. Hasthantra calculated
these figures "using an updated 90-day average price (also referred to
as the 'lookback price' or 'lookback value') to value losses on
retained shares."  (Id. at n.3.)

a "widely circulated national business-oriented publication or
wire service" within 20 days of the commencement of the action.
15 U.S.C. § 78u-4(a)(3)(A)(i).  Once said notice has been
published, the PSLRA allows members of the plaintiff class to
move the Court for appointment as lead plaintiff "not later than
60 days after the date on which the notice is published."  Id.

Once it is determined that the various lead plaintiff
motions have timely been filed, the PSLRA establishes a "two-
step competitive process" to determine which of the moving
plaintiffs is "most capable of adequately representing the
interests of class members."  In re eSpeed, Inc. Sec. Litig.,
232 F.R.D. 95, 97 (S.D.N.Y. 2005) (citation omitted).  First,
the PSLRA establishes a rebuttable presumption that the most
adequate plaintiff is the person or group of persons that has:
(1) "either filed the complaint or made a motion in response;"
(2) "has the largest financial interest in the relief sought by
the class;" and (3) "otherwise satisfies the requirements of
Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C.
§§ 78u-4(a)(3)(B)(iii)(I)(aa) - (cc).

After the presumptive lead plaintiff has been identified,
class members may rebut the statutory presumption via proof--by
a member of the purported plaintiff class--that the presumptive
lead plaintiff "will not fairly and adequately protect the
interests of the class" or is otherwise subject to "unique
defenses" that undermine the presumptive lead plaintiff's

ability to represent the class. Bevinal v. Avon Products, Inc.,
No. 19 Civ. 1420 (CM), 2019 WL 2497739, at *1 (S.D.N.Y. June 3,
2019) (quoting 15 U.S.C. § 78-u4(a)(3)(B)(iii)(II)).

Determining which plaintiff possesses the "largest
financial interest" in a given litigation requires courts to
consider: "(1) the number of shares purchased during the class
period; (2) the number of net shares purchased during the class
period (i.e. [,] the number of shares retained during the
period); (3) the total net funds expended during the class
period; and (4) the approximate loss suffered during the class
period." Lang v. Tower Group Int'l, Ltd., No. 13 Civ. 5852
(AT), No. 13 Civ. 6181 (AT), No. 13 Civ. 7085 (AT), 2014 WL
12779212, at *2 (S.D.N.Y. June 17, 2014) (citations omitted).
"The magnitude of the loss is the most significant factor" in
this equation. Plaut v. Goldman Sachs Grp., Inc., No. 18-CV-
12084 (VSB), 2019 WL 4512774, at *2 (S.D.N.Y. Sept. 19, 2019)
(citation omitted); see also Gutman v. Sillerman, No. 15-cv-
7192, No. 15 cv 8774 (CM), 2015 WL 13791788, at *4 (S.D.N.Y.
Dec. 8, 2015) ("Most courts agree that the largest loss is the
critical ingredient in determining the largest financial
interest.").

Finally, to demonstrate that it otherwise "satisfies the
requirements of Rule 23 of the Federal Rule of Civil Procedure"
under the PSLRA, a "moving plaintiff must only make a
preliminary showing that [Rule 23's] adequacy and typicality

requirements have been met." Peifa Xu v. Grisdum Holding Inc.,
No. 18 Civ. 3655 (ER), No. 18 Civ. 5749 (ER), 2018 WL 4462363,
at *4 (S.D.N.Y. Sept. 17, 2018) (citations omitted).  With
respect to the typicality inquiry, courts consider whether the
claims of the proposed lead plaintiff "arise from the same
conduct from which the other class members' claims and injuries
arise." In re Initial Public Offering Sec. Litig., 214 F.R.D.
117, 121 (S.D.N.Y. 2002) (internal citations and quotations
omitted).  The moving plaintiff's and the other class members'
claims, however, "need not be identical;" it is sufficient that
they are "substantially similar." Micholle v. Ophthotech Corp.,
No. 17-cv-210 (VSB), No. 17-cv-1758 (VSB), 2018 WL 1307285, at
*6 (S.D.N.Y. Mar. 13, 2018) (citations omitted).  Evaluating the
adequacy of a lead plaintiff implicates, among other things,
"the size, available resources and experience of the proposed
lead plaintiff . . . the qualifications of the proposed class
counsel . . . and any potential conflicts or antagonisms arising
among purported class members." Blackmoss Investments, Inc. v.
ACA Cap. Holdings, Inc., 252 F.R.D. 188, 191 (S.D.N.Y. 2008)
(quotation marks and citations omitted); see also Bassin v.
deCODE Genetics, Inc., 230 F.R.D. 313, 316 (S.D.N.Y. 2005)
(citations omitted).

III. DISCUSSION

A.   Selection of Lead Plaintiff

At the outset, the Court notes that both parties have filed timely motions.  Mr. Hasthantra, who claims $34,425.27 in total losses,[2] is the largest stakeholder in this litigation.  (See dkt. no. 22 at 4.)  The Court further finds that Mr. Hasthantra has made a prima facie demonstration that he "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Therefore, Mr. Hasthantra would become lead plaintiff absent proof that he "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

Mr. Upton argues that Mr. Hasthantra is not an adequate class representative because Mr. Hasthantra submitted inaccurate information regarding his stock trades in his PSLRA certification.  (See dkt. no. 23 at 3-5.)  Specifically, Mr. Upton claims that Mr. Hasthantra reported trades that exceeded

---

[2] Mr. Hasthantra is the largest stakeholder in this litigation regardless of whether the Court adopts the original loss figures or the updated loss figures calculated using a 90-day lookback price. For purposes of this analysis, the Court adopts Mr. Hasthantra's updated loss figures as this Court prefers "last-in, first out" ("LIFO") for lead plaintiff calculations because LIFO "takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price."  In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 101 (citation omitted).

the Company's highest trading price on January 5, 2021 and January 6, 2021.  (Id. at 3-4.)  In support of this position, Mr. Upton cites to Micholle, in which the court denied a motion for appointment of lead plaintiff because the prices movant claimed to have paid "d[id] not fall within the high and low range listed on [the Company's] website."  2018 WL 1307285 at *9.  Mr. Hasthantra, however, defended the veracity of his PSLRA certification.  According to Mr. Hasthantra, pricing data from Bloomberg Finance L.P. shows that his trades fell within the Company's after-market pricing data for January 5, 2021 and January 6, 2021.  (See dkt. nos. 25 at 3-4, 26, Ex. B.)  Because Mr. Hasthantra and his counsel, Gregory Linkh, certified the veracity of Mr. Hasthantra's trading as compared against the Company's after-market price ranges, the Court finds no errors in Mr. Hasthantra's PSLRA certification.

Moreover, the Court does not find that Mr. Hasthantra's after-market purchases renders him inadequate or atypical. Typicality under Rule 23 "turns on whether the movant's claim 'arises from the same course of events' and 'makes similar legal arguments to prove the defendants' liability.'"  Burnham v. Qutoutiao Inc., Nos. 20-cv-6707, 20-cv-7717 (SHS), 2020 WL 6484490, at *3 (S.D.N.Y. Nov. 4, 2020) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)). Like other class members, Mr. Hasthantra purchased CleanSpark securities during the class period at prices that he contends

were inflated by the Company's alleged false statements and was
damaged thereby.   Accordingly, the Court is satisfied that Mr.
Hasthantra has made a preliminary showing of typicality.

Mr. Upton also argues that Mr. Hasthantra is not an
adequate class representative because he failed to provide the
Court with "information that he understands the obligations of a
lead plaintiff, his willingness to comply with those
obligations, or any sworn evidence concerning his background."
(See dkt. no. 23 at 5.)   Specifically, Mr. Upton argues that Mr.
Hasthantra's counsel's representation (as opposed to Mr.
Hasanthra's PSLA certification) regarding Mr. Hasthantra's
residence, employment and education history, and his investment
history do not "demonstrate that Hasthantra has an understanding
of and desire to fulfill the duties and responsibilities of lead
plaintiff."   (Id. at 5 n.3.)   In contrast, Mr. Upton argues that
his sworn declaration demonstrates "his adequacy with
biographical information, and detail[s] his thorough
understanding of the responsibilities of lead plaintiff and his
commitment to fulfilling [those] obligations."   (Id.)   In
response, Mr. Hasthantra states that his certification meets the
requirements of the PSLRA, as it addresses each of the listed
requirements in 15 U.S.C. § 78u-4(a)(2)(A).   (See dkt. no. 25 at
5.)   Mr. Hasthantra argues that he satisfies the adequacy
requirements of Rule 23 and need not provide additional
information as Mr. Upton suggests.   (Id.)   Indeed, Mr.

Hasthantra provided a sworn declaration attesting to his residence, education and employment history, and his investing experience. (See dkt. no. 26, Ex. A at 1.)

In determining whether a movant has satisfied Rule 23's adequacy requirement, the Court evaluates whether "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Burnham, 2020 WL 6484490, at *3 (citation omitted). The Court is convinced that Mr. Hasthantra can serve adequately as lead plaintiff. First, Mr. Hasthantra's counsel, Glancy Prongay & Murray LLP, possesses experience prosecuting securities fraud class actions. (See dkt. nos. 12 at 7; 13, Ex. D.) Next, Mr. Upton does not raise any potential conflict between Mr. Hasthantra and the members of the class. Finally, as the largest stakeholder in the litigation, Mr. Hasthantra has a sufficient interest in the outcome of the case to ensure vigorous advocacy. While evaluating the adequacy of a lead plaintiff also implicates "the size, available resources and experience of the proposed lead plaintiff," Mr. Upton and Mr. Hasthantra's qualifications are similar. Blackmoss Investments, Inc., 252 F.R.D. at 191 (citation omitted). Both movants received bachelor's degrees and have long careers within their respective industries. (See

dkt. nos. 7, Ex. D; 25 at 6.)   Indeed, based on Mr. Hasthantra's declaration, he possesses greater investing experience than Mr. Upton.   (See dkt. no. 25 at 6.)   Thus, Mr. Upton has not rebutted the presumption that Mr. Hasthantra should serve as lead plaintiff.   Accordingly, the Court names Mr. Hasthantra lead plaintiff.

B.   Selection of Lead Counsel

"Although the Court maintains discretion in appointing lead counsel to protect the interests of the class, . . . the [PSLRA] evidences a strong presumption in favor of appointing a properly-selected lead plaintiff's decision as to counsel selection and counsel retention." Casper v. Song Jinan, No. 12-cv-4202 (NRB), 2012 WL 3865267, at *3 (S.D.N.Y. Sept. 6, 2012) (internal quotation marks and citations omitted).   The Court sees no reason to upset this process, as Mr. Hasthantra has hired capable, experience lead counsel in Glancy Prongay & Murray LLP.   Accordingly, the Court approves their selection as lead counsel.

IV.   CONCLUSION

For the aforementioned reasons, Darshan Hasthantra is appointed lead plaintiff, and Glancy Prongay & Murray LLP is appointed lead counsel for the class.   The Clerk of the Court shall close the open motions. (dkt. nos. 5, 11, 14.)


**SO ORDERED.**

Dated:      December 2, 2021
            New York, New York

                                    LORETTA A.  PRESKA
                                    Senior United States District Judge