# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIFEMD, INC., JUSTIN SCHREIBER and STEFAN GALLUPPI | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| CHRISTIAN MATTHEW LAMARCO, | : | NO.  2:21-cv-00640-WSS |
| CULPER RESEARCH and JOHN/JANE | : | |
| DOES 2-10 | : | |
| Defendants. | : | |
| | : | Electronically Filed |
| | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
CHRISTIAN MATTHEW LAMARCO AND CULPER RESEARCH'S MOTION TO
DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................... 2

I.    New York Law Applies.................................................................................................. 2

II.   Plaintiffs Cannot Use Their Opposition Brief To Augment Their Defamation Claims ..... 3

III.  Plaintiffs Cannot Avoid The Conclusion That The Article's Statements Are Pure Opinion Afforded Full Protection Under New York Law ................................................................ 4

   A.   Plaintiffs' Admissions About Disclosed Facts Accompanying The Challenged Statements Are Fatal To Their Defamation Claims ........................................................................ 5

   B.   Holistic Review Of The Article's Context Conveys Opinion ......................................... 7

IV.   Plaintiffs Are Public Figures Who Failed To Plead Actual Malice................................. 10

V.    Plaintiffs Ignore That Special Damages Must Be Particularized ...................................... 14

CONCLUSION.................................................................................................................. 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcor Life Extension Found. v. Johnson*,
  2014 N.Y. Slip Op. 50784(U), (Sup. Ct., N.Y. County May 1, 2014) ....................................11

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*,
  404 F. Supp. 3d 763 (S.D.N.Y. 2019)......................................................................................3

*Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pennsylvania*,
  923 A.2d 389 (E.D. Pa. 2007)................................................................................................11

*Amira Nature Foods v. Prescience Point LLC*,
  No. 15-cv-9655, Dkt. No. 66 (S.D.N.Y. Oct. 17, 2016) .................................................5, 8, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................................12, 13

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
  151 F. Supp. 3d 287 (E.D.N.Y. 2015)*, aff'd*, 670 F. App'x 731 (2d Cir. 2016).......................10

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541 (2d Cir. 2015) ........................12, 14

*Bobal v. Rensselaer Polytechnic Institute*,
  916 F.2d 759 (2d Cir.1990).....................................................................................................3

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) .....................................................................................................6, 7, 10

*BYD Co. Ltd. v. VICE Media LLC*,
  2021 WL 1225918 (S.D.N.Y. Mar. 31, 2021) .................................................................13, 14

*Cabello-Rondon v. Dow Jones & Co.*,
  720 Fed. App'x 87 (2d Cir. 2018)...........................................................................................14

*Davis v. Boeheim*,
  24 N.Y.3d 262 (2014) ..............................................................................................................6

*Egiazaryan v. Zalmayev*,
  880 F. Supp. 2d 494 (S.D.N.Y. 2012)....................................................................................10

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
  194 F. Supp. 3d 263 (S.D.N.Y. 2016).....................................................................................6, 8

*Eros Int'l, PLC v. Mangrove Partners*,
    191 A.D.3d 465 (1st Dep't 2021) ..................................................................6, 9

*Eros Int'l PLC v. Mangrove Partners*,
    2019 WL 1129196 (N.Y. Sup. Mar. 8, 2019) .................................................9, 10

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
    2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) .................................................3, 4

*F.D.I.C. v. Bathgate*,
    27 F.3d 850 (3d Cir. 1994)...............................................................................3

*Fotochrome, Inc. v. N.Y. Herald Tribune, Inc.*,
    61 Misc. 2d 226 (Sup. Ct., Queens County 1969) ...........................................11

*Franklin Prescriptions, Inc. v. The New York Times Co.*,
    267 F. Supp. 2d 425 (E.D. Pa. 2003) ...............................................................2

*Hayashi v. Ozawa*,
    2019 WL 1409389 (S.D.N.Y. Mar. 28, 2019) ........................................5, 6, 7, 9

*Hobbs v. Imus*,
    266 A.D.2d 36 (1st Dep't 1999) .......................................................................6

*Immuno AG v. Moor-Jankowski*,
    77 N.Y.2d 235 (1991) ....................................................................................1, 2

*James v. Gannett Co., Inc.*,
    40 N.Y.2d 415 (1976) .....................................................................................12

*Kall v. Peekskill City Sch. Dist.*,
    2020 WL 2555256 (S.D.N.Y. May 19, 2020) ..................................................3

*Kirby v. Wildenstein*,
    784 F. Supp. 1112 (S.D.N.Y. 1992)..................................................................14

*Kraus Indus., Inc. v. Moore*,
    2007 WL 2744194 (W.D. Pa. Sept. 18, 2007)..................................................2

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997)..........................................................................5, 6

*MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*,
    2018 WL 4735717 (S.D.N.Y. 2018)................................................11, 12, 13, 14

*Mzamane v. Winfrey*,
    693 F. Supp. 2d 442 (E.D. Pa. 2010) ...............................................................2

iii

*Park v. Cap. Cities Commc'ns, Inc.*,
  181 A.D.2d 192 (4th Dep't 1992) ..................................................................................12

*Parks v. Steinbrenner*,
  131 A.D.2d 60 (1st Dep't 1987) .......................................................................................7

*Redco Corp. v. CBS, Inc.*,
  758 F.2d 970 (3d Cir. 1985) .............................................................................................7

*Reliance Ins. Co. v. Barron's*,
  442 F. Supp. 1341 (S.D.N.Y. 1977) ................................................................................11

*Sabratek Corp. v. Keyser*,
  2000 WL 423529 (S.D.N.Y. Apr. 19, 2000) ....................................................................10

*Silvercorp Metals Inc. v. Anthion Mgmt.*,
  959 N.Y.S.2d 92 (N.Y. Sup. Aug. 16, 2001) ...................................................................10

*Steinhilber v. Alphonse*,
  68 N.Y.2d 283 (1986) .....................................................................................................1, 6

*Wexler v. Dorsey & Whitney, LLP*,
  2019 WL 5485265 (E.D.N.Y. Oct. 25, 2019) ...................................................................6

*Wilson v. Slatalla*,
  970 F. Supp. 405 (E.D. Pa. 1997) ....................................................................................2

*Winklevoss v. Steinberg*,
  170 A.D.3d 618 (1st Dep't 2019) ....................................................................................12

*Yangtze River Port and Logistics Ltd. v. Hindenburg Research*,
  2020 WL 905770 (N.Y. Sup. Feb. 25, 2020) ...................................................................10

*ZAGG, Inc. v. Catanach*,
  2012 WL 4462813 (E.D. Pa. Sept. 27, 2012) ...................................................................9

**Other Authorities**

Rule 12(b)(6) ..........................................................................................................................2

Plaintiffs' Opposition does nothing to salvage their defamation claims. Most strikingly, Plaintiffs do not even engage—let alone try to refute—Culper's argument that the challenged statements are Constitutionally protected opinion because the facts on which the opinions are based are fully disclosed to the reader. In its opening brief, Culper spent seven pages painstakingly detailing how *each* of the challenged statements set forth in the Complaint was accompanied by a recitation of the facts upon which the statement of opinion relied (indeed, in most cases, the facts include an embedded excerpt, table, or hyperlink to the relevant source). In their Opposition, Plaintiffs concede that these facts were disclosed. Plaintiffs do not argue that a single one of these underlying, disclosed facts is false. Nor do Plaintiffs suggest that the Article purported to rely on undisclosed facts. These admissions are fatal to Plaintiffs' defamation claims: under long-standing New York law, statements accompanied by disclosed facts are "pure opinion" and are completely protected by the First Amendment.

Indeed, the Opposition makes clear that what Plaintiffs are really challenging in this action are the *conclusions* reached by the Article based on these disclosed sources. This is a dispute about a difference of opinion—but Plaintiffs' dissatisfaction with the conclusions drawn in the Article does not give rise to a claim for defamation. As the United States Supreme Court made clear nearly 50 years ago, "[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)). The New York Constitution offers even broader protection of opinion. *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 252 (1991).

1

Finally, the Opposition misconstrues New York law on actual malice and special damages and fails to demonstrate that these elements have been adequately satisfied under their respective stringent standards—both of which are additional reasons to dismiss the defamation claims.

## ARGUMENT

### I.    New York Law Applies[1]

As an initial matter, Plaintiffs gloss over the choice of law analysis, ignoring that federal courts have given specific instructions for the unique facts of this type of case: "in a defamation suit where the defamatory statements were published in more than one jurisdiction [*i.e.*, on the Internet], the state with the significant interest is the domicile of the plaintiff." *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997) (quoting *Rome v. Glanton*, 958 F. Supp. 1026, 1034 n.5 (E.D. Pa. 1997) and Restatement (Second) of Conflicts of Law, § 150); *Kraus Indus., Inc. v. Moore*, 2007 WL 2744194, at *4 (W.D. Pa. Sept. 18, 2007); *see also Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 472-73 (E.D. Pa. 2010) (applying law of the defamed party's domicile); *Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F. Supp. 2d 425, 432–33 (E.D. Pa. 2003) (applying law of the defamed party's principal place of business). Thus, that the Article may have been published in Pennsylvania is immaterial.

Moreover, this choice of law analysis is important because there *is* a conflict between New York and Pennsylvania law on a material point of law:  as Plaintiffs themselves point out, Pennsylvania's constitution grants heightened protections to reputational interests. (Opp. at n.2.) And expressions of opinion receive absolute protection under the New York constitution. *Immuno AG*, 77 N.Y.2d at 252.  Even though the Complaint is dismissible under either state's law, New

---

[1] Plaintiffs note that "Defendants do not address the legal standard for Rule 12(b)(6)." (Opp. at 3.) That is because this Court's guidelines ask the parties not to do so.  Motions Practice and Brief Writing for Attorneys Appearing in the Western District of Pennsylvania, https://www.pawd.uscourts.gov/sites/pawd/files/MotionsPracticeandBriefWriting.pdf, at 5.b.

York's additional constitutional protections make the choice of law analysis necessary and the circumstances of this case require the application of New York law.

## II.    Plaintiffs Cannot Use Their Opposition Brief To Augment Their Defamation Claims

"A long line of cases [in New York federal court]" hold that a defamation complaint must include all statements alleged to be defamatory. *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *3 (S.D.N.Y. Dec. 30, 2020) ("[I]t is only by pleading the substance of the purported communication that a defendant can challenge and, upon a motion, the court can determine the essential elements of a defamation claim under New York law," and dismissing defamation counterclaim for failure to allege the defamatory statement beyond the broad category of statements regarding the "business relationship and dispute between" parties; citing extensive case law in Second Circuit on this point); *see also Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 763 (2d Cir. 1990) (affirming dismissal of defamation claim for failure to "plead adequately the actual [defamatory] words"); *F.D.I.C. v. Bathgate,* 27 F.3d 850, 875 (3d Cir. 1994) (affirming denial of motion to amend defamation complaint where alleged misstatements "do not satisfy the pleading requirements for defamation claims because they do not identify the alleged defamatory statements"); *Kall v. Peekskill City Sch. Dist.*, 2020 WL 2555256, at *9 (S.D.N.Y. May 19, 2020) (finding defamation claim "deficiently pleaded" where, *inter alia*, it failed to "adequately identify the allegedly defamatory statements" beyond "broad strokes"); *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790–91 (S.D.N.Y. 2019) (dismissing defamation claim where, *inter alia*, plaintiff "has not pleaded the 'particular words complained of'").

Instead of recognizing this limitation, Plaintiffs have used an "Appendix" attached to their Opposition brief to purport to set forth the "defamatory statements" at issue in this action.  This Appendix purports to add at least 11 **additional** allegedly defamatory statements that appear

3

nowhere in the Complaint. For example, Plaintiffs' Appendix I adds the phrase "LifeMD Practices Mirror the Redwood Scientific Fraud" to the list of defamatory statements. But the word "mirror"—let alone that phrase—does not appear in the Complaint.[2] And while Plaintiffs cite to ¶ 44 of the Complaint as the source for that challenged statement, that paragraph simply alleges that "the Report contains a myriad of other errors, distortions, and outright misstatements of fact," and then lists a few very vague categories of such alleged errors. A broad "catchall" paragraph does not substitute for the itemized statement required in a defamation complaint. *Evliyaoglu*, 2020 WL 7774377, at *3 (dismissing defamation claims based on broad categories of topics). Indeed, without pleading the specific statements alleged to be defamatory, this Court cannot determine whether the broad categories alleged in Paragraph 44 of the Complaint are false, disparaging, and capable of defamatory meaning. Plaintiffs' deceptive attempt to amend their Complaint through their Opposition should be rejected.

III.    **Plaintiffs Cannot Avoid The Conclusion That The Article's Statements Are Pure Opinion Afforded Full Protection Under New York Law**

Plaintiffs engage in the wrong analysis in arguing that the challenged statements in the Article are not protected opinion. Plaintiffs devote three full pages to stringing together words and phrases from across the Article in an effort to demonstrate that the challenged statements are purportedly "factual statements." (Opp. at 5-7.) Setting aside Plaintiffs' disingenuous paraphrasing, which bears little resemblance to what the Article *actually* says[3], this inquiry is

---

[2] The other statements in the Appendix that are not found in the Complaint are: "LifeMD executives have not disclosed their involvement in material fraud, namely in Redwood Scientific, prior to joining LifeMD"; "That said, this torrential cash burn hasn't stopped LFMD insiders from using the Company as a personal piggy bank."; "Insiders have collected healthy paychecks and insider enrichment concerns us, given Schreiber's propensity to participate in stock promotion schemes in which common shareholders are left holding the bag."; "At LifeMD, Insiders Win While Common Shareholders Lose."; "We think that a business whose core strength is built upon customer deception is unsustainable."; and the entire section of the Appendix titled "Cover-Up & Lies."

[3] Plaintiffs distort the text of the Article beyond recognition, taking words and phrases pages apart and putting them together to create new statements they then argue are defamatory. (Opp. at 5-7.) Just by way of example, Plaintiffs suggest that the Article talks about the "highly problematic practices" of "unlicensed doctors [] dispens[ing] and

4

precisely what the New York Court of Appeals has cautioned **not** to do to determine whether statements are protected opinion. As Plaintiffs' own case law states: "Indeed, sifting through a communication for purposes of isolating and identifying assertions of fact is not the correct inquiry. Instead, the statements should be approached holistically and within their full context." *Hayashi v. Ozawa*, 2019 WL 1409389, at *4 (S.D.N.Y. Mar. 28, 2019) (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)); *see also Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997). Plaintiffs present these phrases in isolation, stripped of their context—omitting the forum, the disclaimers, important qualifiers, and, most importantly, the disclosed facts on which these statements were based.

A. **Plaintiffs' Admissions About Disclosed Facts Accompanying The Challenged Statements Are Fatal To Their Defamation Claims[4]**

Plaintiffs completely ignore the in-depth analysis setting out all of the disclosed facts on which the challenged statements were based. Plaintiffs do not (because they cannot) argue that there were any undisclosed facts; nor, despite conclusorily stating that Culper relied on "gross distortions," do they point to a single one of the disclosed facts as inaccurate or even "distorted." For this reason, Plaintiffs' case law involving demonstrably false underlying facts have no relevance to the matter before this Court. *See*, *e.g.*, *Amira Nature Foods v. Prescience Point LLC*,

---

sell[ing] controlled substances"—but the phrase "highly problematic practices" was in a **different section**, and the discussion of "unlicensed doctors" was for "OTC [over-the-counter] substances," not "controlled substances." Plaintiffs talk about "investigative findings about Plaintiffs' criminal activity," but the Article instead says the use of unlicensed doctors "potentially" exposed LifeMD to felony repercussions—and nowhere accused them of "criminal activity" (or "criminal conduct," as Plaintiffs phrase it in their Opposition introduction). Plaintiffs argue it was improper for Culper to reference unlicensed "doctors" in plural, while ignoring that the Article lists **two** doctors who were not licensed in the jurisdictions LifeMD said they were (a fact to which Plaintiffs have already readily admitted). And finally, Plaintiffs suggest that the Article "identif[ies] LifeMD's contracts with other businesses as unlawful 'insider' or 'related party' transactions" for which LifeMD shareholders "hold the bag"—but the Article nowhere uses the word "unlawful," nor is the phrase "holding the bag" mentioned in connection with LifeMD or its shareholders. As demonstrated by these examples of wholly distorted text, none of Plaintiffs' paraphrasing of the Article—and even their quotations therefrom—can be taken as true or accurate.

[4] Plaintiffs do not respond to Culper's argument that the trade libel claim is duplicative of the defamation claim. The trade libel claim must be dismissed on this ground, at a minimum. It is also subject to dismissal for all the reasons the defamation claim is subject to dismissal, as set forth in Culper's opening brief.

No. 15-cv-9655, Dkt. No. 66 (S.D.N.Y. Oct. 17, 2016); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016).

Instead, Plaintiffs offer only the bald response that "the fact that the [Article] cites various sources … does not turn Defendants' statements into protected opinion." (Opp. at 11.)  But that is directly contrary to decades of well-settled New York law.  Pure opinions—*i.e.*, "statement[s] of opinion accompanied by a recitation of the facts upon which [they are] based"—"receive *absolute* constitutional protection." *Steinhilber*, 68 N.Y.2d at 289-90 (emphasis added); *Hayashi*, 2019 WL 1409389, at \*4.  "This requirement that the facts upon which the opinion is based are known ensures that the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw the reader's own conclusions concerning its validity." *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) (defamation claim could proceed because it was *not* pure opinion, as the speaker implied undisclosed facts); *Brian*, 87 N.Y.2d at 53-54 ("although defendant unquestionably offered his own view that these sources were credible, he also set out the basis for that personal opinion, leaving it to the readers to evaluate it for themselves"); *Levin*, 119 F.3d at 197; *Wexler v. Dorsey & Whitney, LLP*, 2019 WL 5485265, at \*9 (E.D.N.Y. Oct. 25, 2019) ("while [plaintiff] disputes the accuracy of the summary of the case, this does not imply that the headline or statements in the article are based on undisclosed facts and does not, therefore, transform the post into actionable mixed opinion"), *aff'd*, 815 Fed. App'x 618 (2d Cir. 2020); *Eros Int'l, PLC v. Mangrove Partners*, 191 A.D.3d 465 (1st Dep't 2021) ("[T]he court correctly found that the statements were accompanied by a recitation of facts on which they were based and therefore were nonactionable opinion."); *Hobbs v. Imus*, 266 A.D.2d 36, 37 (1st Dep't 1999) ("as defendants recited the facts upon which their opinions were based, plaintiffs' contention that the statements constituted 'mixed opinion' and were actionable as such is unavailing").

Indeed, even the cases on which Plaintiffs rely recognize this basic principle of First Amendment law.  *See, e.g.*, *Hayashi*, 2019 WL 1409389, at *4*; *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985) ("If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts.").

Ultimately, what Plaintiffs are really arguing is that they do not like the conclusions reached by the disclosed facts.  Plaintiffs make clear that this is the crux of the dispute:  they argue that five allegedly defamatory ***conclusions*** are "not warranted by [the] evidence" disclosed in the Article as support for these statements.  (Opp. at 11-12.)  Plaintiffs disagree with the Article's opinions—not with the underlying facts themselves.  But this is not grounds for a defamation claim.  New York law is clear on this point:

> That one may dispute the conclusions drawn from the specified facts is not, however, the test.  So long as the opinion is accompanied by a recitation of the facts upon which it is based it is deemed a "pure opinion" and is afforded complete immunity even though the facts do not support the opinion.

*Parks v. Steinbrenner*, 131 A.D.2d 60, 66 (1st Dep't 1987) (reversing lower court and finding that pure opinion with disclosed facts is not actionable even if "one may dispute the conclusions drawn from the specified facts"); *Brian*, 87 N.Y.2d at 51 (defamation claim may only proceed if premised on published assertions of provably false facts, not opinions).[5]

### B.    Holistic Review Of The Article's Context Conveys Opinion

Plaintiffs fare no better in trying to dispute that the context of the Article suggests it is conveying opinion.  Plaintiffs argue that Article is "professional-looking" because it has "links to graphs, pictures, charts, screenshots, and an appendix."  (Opp. at 8.)  But it is this very

---

[5] Plaintiffs cite *Milkovich* and its progeny for the proposition that disclosure of underlying facts is not entirely protective of statements of opinion.  (Opp. at 11.)  But these cases ignore the broader protections afforded to speech under the New York Constitution, as recognized by subsequent New York case law offering blanket protection to "pure opinion."

7

concession—that the Article is replete with the disclosed facts underlying its opinions—that renders the statements based on these disclosed facts "pure opinion." Plaintiffs also appear eager to report that "readers … relied and acted on the Report" because it was followed by a stock price drop. (Opp. at 8.) Plaintiffs' argument completely ignores the fact that the LifeMD stock price had been plummeting for months prior to the Article's publication. (Br. at 4.) But in any event, that readers allegedly "relied" on the Article has no bearing on whether it was presented as fact or opinion; rather, it suggests only that readers may have agreed with the opinions drawn from underlying facts Plaintiffs do not dispute.

Plaintiffs also do not dispute that the first five words of the Article revealed that the author was short LifeMD stock. In the face of the mountain of case law holding that this revelation suggests to the reader that the author is presenting a biased opinion (Br. at 8-9), Plaintiffs cite an unpublished transcript from a bench decision, without an opinion. *See Amira Nature Foods v. Prescience Point LLC*, No. 15-cv-9655, Dkt. No. 66 (S.D.N.Y. Oct. 17, 2016) ("*Amira* Transcript). But even that transcript doesn't support Plaintiffs' position; in *Amira*, the court found that plaintiff "barely" met its pleading burden for defamation, and only because it adequately alleged that the facts on which the challenged statements relied were either not fully disclosed or demonstrably false. *Amira* Transcript at 23-28, 60-61.[6] The *Amira* court did not hold, as Plaintiffs suggest, that the disclosure of short-selling bias is not relevant in a different context where, as here, there is no allegation whatsoever that the underlying facts are not fully disclosed or that they are false.

---

[6] Plaintiffs' citation of *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016), is unavailing for the same reason. In that case, the court did not find statements about a competitor's product by a product "expert" in a "Forums" section on a website to be protected opinion because the "disclosed facts [supporting the purported opinion] [we]re themselves false." *Id.* at 287. Here, Plaintiffs make no allegation of falsity of the facts underlying the Article's opinions.

Plaintiffs' attempts at diminishing the clear "opinion" context—the lengthy disclaimer presenting the Article "as is," extensive language of conjecture, and the Internet forum itself—fail because Plaintiffs merely argue that each of these *in isolation* is insufficient to signal opinion. But that is not controversial, nor is it Culper's argument. Viewed holistically, as the New York Court of Appeals requires, each of these contextual indicators provides additional signaling to the reader that the content is protected opinion. The cases Plaintiffs cite underscore this point. *See, e.g.*, *ZAGG, Inc. v. Catanach*, 2012 WL 4462813, at *3 (E.D. Pa. Sept. 27, 2012) (holding, under Utah law, that exculpatory words "*in and of themselves*," do not save statements from being defamatory) (emphasis added); *Eros Int'l PLC v. Mangrove Partners*, 2019 WL 1129196, at *8 (N.Y. Sup. Mar. 8, 2019) ("*In conjunction with the other aspects of the articles*, however, the frequent use of opinion-like language further indicates to the reasonable reader that the author is expressing an opinion about Eros based on disclosed facts.") (emphasis added), *aff'd*, 191 A.D.3d 465 (1ˢᵗ Dep't 2021); *Hayashi*, 2019 WL 1409389, at *5 ("[c]ourts have noted that statements made online in blogs or forum boards are more likely to be interpreted as opinion" in finding that context of online blog post signaled opinion and dismissing defamation claims because statements were non-actionable opinion). The *sum total* of these indicia would lead a reasonable reader to understand the content of the Article as opinion—as they did in the *Eros* and *Hayashi* cases Plaintiffs themselves cite.

Plaintiffs' attempts to distinguish Culper's case law on narrow reads of these cases is unavailing. These cases were not, as Plaintiffs suggest, simply about "calling for investigation" or extreme hyperbole. Rather, in these cases, the courts engaged in a holistic analysis of the challenged statements' context to conclude that, in light of several corroborating elements, a reasonable reader would understand the statements to be conveying opinion. *See Silvercorp*

*Metals Inc. v. Anthion Mgmt.*, 959 N.Y.S.2d 92, at \*4 (N.Y. Sup. Aug. 16, 2001) (considering disclosure of underlying facts, disclosure of short position, Internet forum and choice of language in determining statements were protected opinion); *Yangtze River Port and Logistics Ltd. v. Hindenburg Research*, 2020 WL 905770, at \*7 (N.Y. Sup. Feb. 25, 2020) (considering disclosure of underlying facts, disclosure of short position, Internet forum, use of language of conjecture, lengthy disclaimer in determining statements were protected opinion); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 503-15 (S.D.N.Y. 2012) (considering disclosure of underlying facts, disclosure of author bias, forum of statements, and specific language used in determining statements were protected opinion); *Brian*, 87 N.Y.2d at 51 (same); *Eros*, 2019 WL 1129196, at \*8 (considering disclosure of underlying facts, disclosure of short position, disclaimer language, language of conjecture, and Internet forum in determining statements were protected opinion); *Sabratek Corp. v. Keyser,* 2000 WL 423529 (S.D.N.Y. Apr. 19, 2000) (considering disclosure of underlying facts, disclaimer language in determining statements were protected opinion); *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015) (considering disclosure of underlying facts, disclosure of bias, and Internet forum in determining statements were protected opinion)*, aff'd*, 670 F. App'x 731 (2d Cir. 2016).

Finally, Plaintiffs make the straw man argument that there is no "exemption from defamation liability for short-sellers or investment analysts." (Opp. at 12.) But Culper never argued there was any such "exemption." Rather, because the Article disclosed all the facts on which the statements were based, and because a holistic review of the statements' context signaled it was opinion, the challenged statements in the Article are non-actionable opinion.

## IV. Plaintiffs Are Public Figures Who Failed To Plead Actual Malice

Plaintiffs claim they are not public figures but fail to cite the correct standard. As an initial matter, New York state and federal courts have time and time again found publicly-traded

10

companies that file publicly available reports with the SEC as public figures for purposes of a defamation claim.  Indeed, just recently, a New York federal court found "no clear error" in holding that a publicly-traded company is a public figure in a defamation matter **on a motion to dismiss**.  *MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 4735717 (S.D.N.Y. 2018); *see also Fotochrome, Inc. v. N.Y. Herald Tribune, Inc.,* 61 Misc. 2d 226, 229 (Sup. Ct., Queens County 1969); *Alcor Life Extension Found. v. Johnson,* 2014 N.Y. Slip Op. 50784(U), at *8–9 (Sup. Ct., N.Y. County May 1, 2014), *aff'd*, 136 A.D.3d 464 (1st Dept. 2016); *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977).[7]  Plaintiffs simply ignore this case law. And there is no need to go outside the record for LifeMD's satisfaction of this standard:  Plaintiffs themselves plead that LifeMD is publicly-traded and that it is a "leading telehealth company." (Compl. ¶¶ 10, 16, 85.)[8]

Moreover, the individual Plaintiffs argue that "more would be required [to be a limited purpose public figure] beyond having 'participated in public investor earnings calls, video interviews, and press releases regarding LifeMD's finances, platform, and prospects.'"  (Opp. at 14-15.)  But the New York appellate courts have held the exact **opposite**.  For example, in 2019, the Appellate Division affirmed a motion to dismiss a defamation claim and found that individual plaintiffs were limited public figures where, "[t]hrough their voluntary participation in numerous interviews, in widely-covered conferences and meetings with entrepreneurs, and in their own radio broadcasts, they have attracted public attention to themselves as investors in start-ups, have voluntarily injected themselves into the world of investing, and have sought to establish their

---

[7] Indeed, based on this reasoning, the parties in the *Amira* case, on which Plaintiffs rely so heavily, treated the plaintiff as a public figure.  *See, e.g.*, *Amira* MTD, Dkt. # 56, at p. 18.

[8] Plaintiffs' citation to *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pennsylvania*, 923 A.2d 389, 401 (E.D. Pa. 2007) further underscores LifeMD as a public figure.  In that case, the court recognized that plaintiff, a publishing company with an on-going direct-mail solicitation component, millions of customers, and greater access to the channels of effective communication than ordinary citizens was a limited purpose public figure.  The same can be said about LifeMD, which counts direct marketing of customers as its core business practice.  (Br. at 17.)

11

reputation as authorities in the field." *Winklevoss v. Steinberg*, 170 A.D.3d 618, 619 (1st Dep't 2019); *see also James v. Gannett Co., Inc.*, 40 N.Y.2d 415, 422 (1976) ("the essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public attention"); *Park v. Cap. Cities Commc'ns, Inc.*, 181 A.D.2d 192, 196 (4th Dep't 1992) (same).[9]

In their Opposition, Plaintiffs posit that they alleged actual malice by pointing to boilerplate allegations in the Complaint, such as Culper "knowingly spread materially false and misleading information about Plaintiffs," "Culper knew, or were recklessly indifferent to the fact that the defamatory statements were false; and Culper made the false statements "intentionally, maliciously, and with knowledge of their falsity." (Opp. at 16). But this boilerplate pleading, devoid of any actual factual allegations, falls far short of the plausibility pleading threshold established by *Iqbal* and *Twombly* and recognized by New York federal courts as "more onerous" than the typical "heavy burden" in proving actual malice. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015). Nor is an allegation of "malicious motives" (Opp. at 16) relevant to the "actual malice" inquiry. *See MiMedx Grp. Inc.*, 2018 WL 4735717, at *12 (holding, on a motion to dismiss, that purported financial motives alone do not support a finding of actual malice); *Biro v. Conde Nast*, 963 F. Supp. 2d at 276 ("actual malice does not simply connote ill will or spite; rather it is a term of art denoting deliberate or reckless falsification").

---

[9] At no point did Culper argue that Plaintiffs were public figures as a result of pushing back publicly against defamatory charges. Rather, Plaintiffs weighed in before the Article was published on behalf of their company and to influence the public regarding LifeMD, its new name, and telehealth platform.

Plaintiffs then try to cobble a series of "other indicia"—having nothing to do with knowledge of alleged falsity—to try to meet the "onerous" pleading burden for actual malice in federal court.  Plaintiffs point out that the Article was published anonymously—but that makes it no more or less plausible that the statements were published with knowledge of any alleged falsity.  Plaintiffs also point to the docket in the FTC matter against Redwood Scientific; but, as set forth in Plaintiffs' opening brief, whether Plaintiffs were present on the docket of a case against *other defendants* does not rule out anything relating to Plaintiffs' conduct.  Indeed, Culper disclosed the facts on which Culper based its opinion—*i.e.*, that Redwood Scientific was charged with fraud and Schreiber and Galluppi were officers at and/or owners of Redwood Scientific—which are not disputed, and they are presented to the reader so the reader can reach its own conclusions.  Plaintiffs then argue that "Defendants intentionally misled readers … by presenting information … inaccurately and out of context" (Opp. at 16)—but this conclusory statement is simply a summary of a defamation allegation, not a well-pled factual allegation demonstrating actual malice.  *BYD Co. Ltd. v. VICE Media LLC*, 2021 WL 1225918, at *7 (S.D.N.Y. Mar. 31, 2021) ("inaccuracy itself will not demonstrate 'actual malice' in a libel case").  Critically, none of these allegations constitute "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice'" to avoid dismissal on a 12(b)(6) motion.  *MiMedx Grp., Inc.*, 2018 WL 4735717, at *9-11 (quoting *Biro,* 807 F.3d at 546 and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Plaintiffs resort to arguing that—despite the federal pleading standard—their conclusory, boilerplate allegations irrelevant to knowledge of falsity should suffice because it would be too difficult for them without a defendant "admit[ting to] making a false statement."  (Opp. at 16.)  New York courts have recognized that the pleading burden for actual malice is intentionally

13

difficult.  *Biro*, 963 F. Supp. 2d at 278 ("Not only is "[p]roving actual malice [ ] a heavy burden, but, in the era of *Iqbal* and *Twombly* **pleading** actual malice is a more onerous task as well.") (emphasis added).  And, yet, many defamation cases have been dismissed at the pleading stage on this ground.  *See, e.g., id.*, 963 F. Supp. 2d at 279-88 (collecting cases); *Cabello-Rondon v. Dow Jones & Co.*, 720 Fed. App'x 87, 88 (2d Cir. 2018); *BYD Co.*, 2021 WL 1225918, at *10; *MiMedx Grp., Inc.*, 2018 WL 4735717, at *11-12.  Plaintiffs are not entitled to a relaxation of this pleading burden simply because they cannot satisfy it.

## V.      Plaintiffs Ignore That Special Damages Must Be Particularized

Finally, Plaintiffs' Opposition fails to cure the defects in the Complaint with respect to special damages.  Plaintiffs do not even address the case law holding that, when a defamation is a corporation, pleading defamation per se requires showing the statement injured "its overall business reputation or its credit standing."  (Br. at 19 FN 15, citing *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489 n. 23 (S.D.N.Y. 2011)).  LifeMD— whose stock had been plummeting for months before the Article was published—failed to make any such plausible showing.  Second, Plaintiffs do not attempt to point to any itemization in the Complaint of their damages in a quantifiable way—despite clear New York law stating that special "must be fully and accurately stated, with sufficient particularity to identify actual losses." *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992).    The defamation claim must be dismissed on this ground as well.

## CONCLUSION

For the reasons set forth herein and in their opening memorandum of law, Defendants Christian Lamarco and Culper Research respectfully request that Plaintiffs' Complaint be dismissed in its entirety.  Defendants respectfully request that the dismissal be with prejudice given

14

the parties' meet and confer in advance of Defendants' filing of their motion to dismiss and Plaintiffs' failure at the time to replead their claims accordingly.

Respectfully submitted,

COZEN O'CONNOR

BY:    */s/ Michael de Leeuw*

Michael de Leeuw  *(admitted pro hac vice)*
Tamar Wise *(admitted pro hac vice)*
Rachel J. Wenger (Pa. I.D. 325647)
COZEN O'CONNOR
One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA  15219
Telephone: 412.620.6500
*Attorneys for Christian Matthew Lamarco and Culper Research*

15

## CERTIFICATE OF SERVICE

I an attorney, hereby certify that on August 9, 2020, I filed the foregoing **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS CHRISTIAN MATTHEW LAMARCO AND CULPER RESEARCH'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** using the Court's CMC/ECF system, which will automatically send notice to all counsel of record.

<em>/s/ Michael de Leeuw</em><br>Michael de Leeuw