**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SCOTT BISHINS and DARSHAN HASTHANTRA, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CLEANSPARK, INC., ZACHARY BRADFORD, and S. MATTHEW SCHULTZ,<br><br>        Defendants. | Case No. 1:21-cv-00511-LAP |

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

Jay S. Auslander
Michael Van Riper
Wilk Auslander LLP
825 Eighth Avenue, Suite 2900
New York, NY 10019
Tel: 212-981-2300

*Attorneys for Defendants CleanSpark, Inc.,*
*Zachary Bradford, and S. Matthew Schultz*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

POINT I: COMPLAINT IS SUBJECT TO RIGOROUS PLEADING
STANDARDS.................................................................................................1

POINT II: PLAINTIFFS FAIL TO ALLEGE MISSTATEMENTS OR
SCIENTER ....................................................................................................1

    A.  THE ESTIMATES................................................................................3

        1.  Plaintiffs Allege No Contemporaneous Falsity ...........................3

            (i)  Allegations Concerning Pre-FE1 Estimates Are Insufficient ...........................3

            (ii) Allegations Concerning Post-FE1 Estimates Are Insufficient...........................4

        2.  The Core Operations Doctrine Does Not Create Scienter ....................................5

        3.  The Estimates Are Puffery........................................................6

    B.  STATEMENTS REGARDING ANALYSIS AND EXAMINATION ........................7

        1.  Bankruptcy of Virtual Citadel/Marathon's Withdrawal ...........................8

            (i)  No Duty to "Disclose" .................................................8

            (ii) Plaintiffs Rely On Speculation and Unsupported Conclusions ........................9

            (iii)  Blue Chip Audit .....................................................10

            (iv)The Culper Reports and Employee Questions About Them...........................10

    C.  STATEMENT REGARDING BITCOIN INVESTMENTS .....................................11

        1.  Bitcoin Investments Statement Was Non-Actionable Puffery..............................12

        2.  No Obligation to "Disclose" Competitor Marathon's Withdrawal........................12

POINT III: THE STATEMENTS FALL WITHIN THE PSLRA'S SAFE
HARBOR........................................................................................13

    A.  All Of The Statements At Issue Are Forward-Looking Statements ...........................13

    B.  Plaintiffs Identify No Misleading Statements Or Material Omissions .......................13

    C.  Defendants Provided Meaningful Cautionary Language................................14

POINT IV: PLAINTIFFS FAIL TO ALLEGE RELIANCE....................................................15

    A.  Plaintiffs Are Not Entitled To Presumption Of Reliance On Post-Sale Statements....15

    B.  *Affiliated Ute* Does Not Apply..........................................................15

POINT V: PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION....................................16

    A.  The Revised Estimates Are Not Corrective Disclosures ...........................18

POINT VI: PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM ...........................18

CONCLUSION.................................................................................18

i

## TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Affiliated Ute Citizens of Utah v. U.S.*,
  406 U.S. 128 (1972) ................................................................................... 15, 16

*Behrendsen v. Yangtze Riv. Port and Logistics Ltd.*,
  2021 WL 2646353 (E.D.N.Y. June 28, 2021)............................................... 5

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
  866 F. Supp. 2d 223 (S.D.N.Y. 2012)......................................................... 6

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014)................................................................. 1, 2, 7

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2007)....................................................................... 15

*Cheng v. Can. Goose Holdings Inc.*,
  2021 WL 3077469 (S.D.N.Y. July 19, 2021) .............................................. 11

*City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Tech. Corp.*,
  450 F. Supp. 3d 379 (S.D.N.Y. 2020)......................................................... 6

*City of Providence, Rhode Island v. Bats Glob, Markets, Inc.*,
  2022 WL 902402 (S.D.N.Y. Mar. 28, 2022) ............................................... 15

Cohen v. Stevanovich,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010)......................................................... 16

*Emps.' Ret. Svcs. of Gov't of Virgin Islands v. Blanford*,
  794 F.3d 297 (2d Cir. 2015)........................................................................ 1

*Finger v. Pearson PLC*,
  2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019)................................... passim

*Gamm v. Sanderson Farms, Inc.*,
  944 F.3d 455 (2d Cir. 2019)....................................................................... 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258, 134 S. Ct. 2398 (2014)......................................................... 15

*Harris v. AmTrust Fin. Servs., Inc.*,
    135 F. Supp. 3d 155, 173 n. 30 (S.D.N.Y. 2015) ...................................................... 17

*In re AOL Time Warner, Inc. Sec. Litig.*,
    503 F. Supp. 2d 666 (S.D.N.Y. 2007) .......................................................... 18

*In re Barrick Gold Corp. Sec. Litig.*,
    341 F. Supp. 3d 358 (S.D.N.Y. 2018) ...................................................... 2, 4

*In re Bemis Co. Sec. Litig.*,
    512 F. Supp. 3d 518 (S.D.N.Y. 2021) ................................................... 13, 14

*In re Blue Earth, Inc. Sec. Class Action Litig.*,
    2015 WL 12001274 (C.D. Cal. Nov. 3, 2015) ........................................... 17

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
    2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ....................................... 16, 17

*In re Diebold Nixdorf, Inc.*, Sec. Litig.,
    2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ................................... 2, 3, 4, 5

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
    2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ........................................... 10

*In re Omnicom Grp. Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) ...................................................................... 16

*In re Silvercorp Metals, Inc. Sec. Litig.*,
    26 F. Supp. 3d 266 (S.D.N.Y. 2014) .......................................................... 11

*In re Symbol Technologies Class Action Litigation*,
    950 F. Supp. 1237 (E.D.N.Y. 1997) ........................................................... 11

*In re Vale S.A. Sec. Litig.*,
    2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ............................................. 6

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ........................................................................ 7

*Kleinman v. Elan Corp., plc*,
    706 F.3d 145 (2d Cir. 2013) .................................................................. 8, 13

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021) ........................................................ 16

*Lehmann v. Ohr Pharm. Inc.*,
    2019 WL 4572765 (S.D.N.Y. Sept. 20, 2019) ......................................... 1, 5

*Lipow v. Net1 UEPS Tech., Inc.,*
   131 F. Supp. 3d 144 (S.D.N.Y. 2015) ...................................................... 10, 12

*Mehmet v. Gautier*,
   2019 WL 4805859 (S.D.N.Y. Sept. 30, 2019) ............................................... 4

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) ................................................................ 17

*Meyer v. Jinosolar Holdings Co.,*
   761 F.3d 245 (2d Cir. 2014) ................................................................... 8, 9

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ..................................................................... 3

*Omnicare, Inc. v. Laborers Dist. Council Indus. Pension Fund*,
   575 U.S. 175 (2015) ................................................................................... 5

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ................................................................ 13, 15

*Rice as Tr. of Richard E. and Melinda Rice Revocable Family Tr. 5/9/90 v Intercept Pha*rm., Inc.,
   2022 WL 837114 (S.D.N.Y. Mar. 21, 2022) ............................................... 16

*S.E.C. v. Merchant Cap., LLC*,
   483 F.3d 747 (11th Cir. 2007) .................................................................... 9

*S.E.C. v. Weintraub*,
   2011 WL 6935280 (S.D. Fla. Dec. 30, 2011) ............................................... 9

*Schwab v. E*TRADE Fin. Corp.*,
    752 F. App'x 56, 59 (2d Cir. 2018) ........................................................... 16

*Sheppard v. TCw/DW Term,*
   *Tr. 2000,* 938 F. Supp. 171 (S.D.N.Y. 1996) ............................................... 7

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
   417 F. Supp. 3d 379 (S.D.N.Y. 2019) .......................................................... 4

*Slayton v. Am. Express Co,*
   604 F.3d 758 (2d Cir. 2010) ..................................................................... 14

*Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*,
   412 F. Supp. 3d 353 (S.D.N.Y. 2019) ........................................................ 13

*Strougo v. Barclays PLC,*
   105 F.Supp. 3d 330, 346-47 n. 99-100 (S.D.N.Y. 2015) .............................. 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................ 2

*Wilson v. LSB Indus., Inc.*,
  2017 WL 7052046 (S.D.N.Y. Mar. 2, 2017) .......................................................... 4

**Statutes**

15 U.S.C. 78u-5 ....................................................................................................... 13

15 U.S.C. §78u-4 .................................................................................................. 1, 8

**Rules**

Federal Rule of Civil Procedure ("FRCP") 9(b)................................................. 1, 7, 9

FRCP 8....................................................................................................................... 16

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief lays bare the paucity of their factual allegations, which reflect nothing more than accurate, good faith statements by the defendants in this action. While that may be sufficient fodder for an unscrupulous short-seller looking to trash a company, it certainly is not sufficient to state the securities fraud claims that Plaintiffs assert here.

## POINT I: COMPLAINT IS SUBJECT TO RIGOROUS PLEADING STANDARDS

Plaintiffs largely avoid Federal Rule of Civil Procedure ("FRCP") 9(b) when describing applicable pleading requirements. (Opp'n at 5). It is well-established, however, that FRCP 9(b) applies to securities fraud claims such as Plaintiffs' here. *See*, *e.g.*, *Lehmann v. Ohr Pharm. Inc.*, 2019 WL 4572765, at *2 (S.D.N.Y. Sept. 20, 2019) (securities fraud claims are subject to "the heightened pleading requirements" of both FRCP 9(b) and the Private Securities Litigation Reform Act ("PSLRA")), *aff'd and remanded*, 830 F. App'x 349 (2d Cir. 2020) (cited in Mot. at 7).

Plaintiffs also erroneously argue that the heightened pleading requirements of the PSLRA, 15 U.S.C. § 78u-4(b)(2), apply *only* to the element of scienter (Opp'n at 5). But the PSLRA *also* requires that securities fraud plaintiffs "specify each statement alleged to have been misleading," "specify … the reason or reasons why the statement is misleading," and, "if an allegation regarding the statement or omissions is made on information and belief … state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B). Neither of the cases Plaintiffs cite on this point (Opp'n at 5) limits the PSLRA's heightened pleading requirements to scienter. *See Emps.' Ret. Svcs. of Gov't of Virgin Islands v. Blanford,* 794 F.3d 297, 304-5 (2d Cir. 2015) (quoting specificity requirements of 15 U.S.C. § 78u-4(b)(1)(B)); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014) (same).

## POINT II: PLAINTIFFS FAIL TO ALLEGE MISSTATEMENTS OR SCIENTER

Plaintiffs challenge a limited universe of statements in this action: (i) alleged statements

by Bradford and Schultz that appear in a single December 20, 2020 press release (the "December 20, 2020 Press Release") (*e.g.*, AC ¶¶ 37, 118-19) and (ii) Bradford's alleged estimates of when expansion of the power supply at ATL Data Centers LLC's data center and bitcoin mining facility (the "ATL Facility") would be completed (the "Estimates") (AC ¶¶ 120-137). None of these is an actionable misstatement: Securities fraud plaintiffs "must do more than say that the statements ... were false and misleading; they must demonstrate with specificity why and how that is so." *Carpenters Pension Fund*, 750 F3d at 236.

Plaintiffs' effort to conjure allegations of scienter is similarly unavailing. The Opposition points to no strong "circumstantial evidence of conscious misbehavior or recklessness," *e.g.*, *Finger v. Pearson PLC,* 2019 WL 10632904, at *12 (S.D.N.Y. Sept. 16, 2019) because there is none (Mot. at 9-10) – a pleading failure that even Plaintiffs implicitly concede at times. (Opp'n at 32) ("[T]he totality of Defendants' actions *suggest* a deliberate effort to conceal ATL's history.") (emphasis added). Merely "suggesting" scienter is insufficient, however: a 10(b) Claim[1] must allege facts that give rise to an inference of scienter that is compelling and cogent when considered against "nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 310 (2007) ("Congress did not merely require plaintiffs to allege facts from which an inference of scienter rationally *could* be drawn.")

Nor can Plaintiffs' emphasis on reviewing scienter allegations collectively (*e.g.*, Opp'n at 21) save their 10(b) Claim: Insufficient allegations do not magically transform into an adequate inference of scienter simply because they are considered together: "[z]ero plus zero is zero." *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 374 (S.D.N.Y. 2018); *see also In re Diebold Nixdorf, Inc.*, Sec. Litig., 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021) (Preska, J.).

---

[1] "10(b) Claim" refers to a claim under Exchange Act Section 10(b) and Rule 10b-5.

### A.    The Estimates

#### 1.    Plaintiffs Allege No Contemporaneous Falsity

Despite Plaintiffs' conclusory assertions that the Estimates were fraudulent (e.g. AC ¶ 100), they do not allege Bradford knew or believed the Estimates to be incorrect when he made them. Thus, Plaintiffs have alleged neither misstatement nor scienter with respect to the Estimates. (Mot. at 12-15); *see also Diebold Nixdorf*, 2021 WL 1226627, at *7 (statement must be "contemporaneously false" to support a 10(b) Claim) (internal quotation marks omitted). And far more compelling than the arbitrary fraud Plaintiffs posit is that Bradford believed the Estimates. (Mot. at 15); *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 418-19 (9th Cir. 2020) (inference that defendants knew from confidential witness reports that company's preferred timeframe for FDA approval was impossible to meet, yet stood by that timeline anyway in press releases and conferences for no apparent reason or motive, was not even plausible, let alone compelling).

#### (i)    Allegations Concerning Pre-FE1 Estimates Are Insufficient

Much of Plaintiffs' Opposition tries to obscure that lack of contemporaneous falsity. Defendants have pointed out that many of the Estimates took place *before* the FE1 Timeline on which Plaintiffs heavily rely (the "Pre-FE1 Estimates") (Mot. at 13), so Plaintiffs turn their attention to arguing that (i) at the time Bradford allegedly made the Pre-FE1 Statements, "Defendants had not completed architectural or engineering drawings for the project," a "contract with a general contractor," or "a contract for a build-out of the mining units," and (ii) one can infer that CleanSpark had no detailed timeline prior to January 2021. (Opp'n at 23, citing AC ¶ 76).

For at least four independent reasons, none of this "plead[s] with particularity that Defendants knew that [the Pre-FE1 Estimates] … were misleading when they were made." *Diebold Nixdorf*, 2021 WL 1226627, at *11.  First, under the exacting standard of *Tellabs*, the assignment of additional planning to FE1 cannot support the inference that Defendants had not

3

made their own previous reasonable assessment.  Second, Plaintiffs point to no allegation "that Defendants knew of such" lack of drawings, contract, or timelines "but made their representations anyway." *Id.* Third, scienter is lacking given that Plaintiffs allege no facts to support a conclusion that the purported lack of drawings, contracts, or timeline in January or February 2021 – soon after the December 10, 2020 announcement of the ATL acquisition (AC ¶ 3) – was so outrageous as to be "highly unreasonable and . . . an extreme departure from the standards of ordinary care." *Diebold Nixdorf*, 2021 WL 1226627, at \*13 (internal quotation marks omitted); *Finger*, 2019 WL 10632904, at \*13 (same). Fourth, the absence of an alleged duty to disclose the claimed lack of drawings, contracts, and timeline dooms Plaintiffs' claim. *Id.* at \*13.[2]

### (ii)    <u>Allegations Concerning Post-FE1 Estimates Are Insufficient</u>

Plaintiffs' allegations concerning the Estimates that *followed* the FE1 Timeline do not fare any better. As set forth in the Motion at 13, Plaintiffs' failure to "specifically identify" the FE1 Timeline (e.g., Opp'n at 23) is fatal to their conclusory scienter allegations and, therefore, their claim.  *See, e.g., In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 373-4 (S.D.N.Y. 2018); (Mot. at 13). Plaintiffs are silent on this point in their Opposition and thus implicitly concede it. *See Mehmet v. Gautier*, 2019 WL 4805859, at \*10 (S.D.N.Y. Sept. 30, 2019).

The Post-FE1 Timeline allegations are also insufficient to plead misstatement or scienter for three additional, independent reasons. First, the Complaint fails to allege that anything in the

---

[2] Plaintiffs' reliance on *Wilson v. LSB Indus., Inc.*, 2017 WL 7052046 (S.D.N.Y. Mar. 2, 2017) (Opp'n at 14) is misplaced.  *Wilson* assessed the statement "the engineering effort is now substantially complete, and the project timeline is now driven by executing the construction process." *See* Corr. Am. Compl. ¶ 16, *Wilson v. LSB Industries, Inc.*, No. 15-cv-07614-RA (Feb. 17, 2016) (ECF No. 92).  Yet the CEO later expressly admitted that "the Company's prior estimates were 'not an engineered estimate ... the detailed engineering work was not there.'"  (*Id*. at ¶ 16.) As such, *Wilson* "involved a much starker conflict between a defendant's statement and the omitted facts in its possession than any conflict that might exist here." *Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 406 (S.D.N.Y. 2019) (citing *Wilson*, 2017 WL 7052046, at \*1).

FE1 Timeline convinced Bradford that the estimated completion times he allegedly stated were incorrect, and even Plaintiffs in their Opposition do not claim otherwise. *See*, *e.g. Diebold Nixdorf*, 2021 WL 1226627, at *7 ("[A] sincere statement of pure opinion is not an untrue statement of material fact, regardless [of] whether an investor can ultimately prove the belief wrong") (quoting *Omnicare, Inc. v. Laborers Dist. Council Indus. Pension Fund*, 575 U.S. 175, 186 (2015)). Second, Plaintiffs allege no facts indicating that Defendants had "a clear duty to disclose," *Finger*, 2019 WL 10632904, at *13, an unconvincing timeline prepared by a since-departed managerial holdover of Virtual Citadel, CleanSpark's failed predecessor at the ATL Facility (AC ¶¶ 68-69); to the contrary, prevailing law is clear that there is no obligation to disclose every potential fact "cutting the other way." *Lehmann*, 2019 WL 4572765, at *3. Third, Plaintiffs make no allegations showing that choosing not to "disclose" that timeline "was highly unreasonable and constitutes an extreme departure from the standards of ordinary care." *Finger*, 2019 WL 10632904, at *13. Fourth, Plaintiffs' allegation that the "the architectural drawings and engineering plans were not completed until March 2021 at the earliest" (AC ¶ 76) cuts *against* scienter, as it shows that it was hardly reckless to believe a better project manager could have finished the work on time.

### 2.    The Core Operations Doctrine Does Not Create Scienter

Plaintiffs invoke the "core operations doctrine" to establish scienter. (Opp'n at 24). Whether the doctrine remains valid at all in the wake of the PSLRA is an open question. *Behrendsen v. Yangtze Riv. Port and Logistics Ltd.*, 2021 WL 2646353, at *13 (E.D.N.Y. June 28, 2021). Even if it does, the doctrine may only "bolster other evidence of scienter," not independently satisfy the requirement to plead scienter. *In re Garrett Mot. Inc. Sec. Litig.*, 222 WL 976269, at *15 (S.D.N.Y. Mar. 13, 2022) (internal quotation marks omitted) – as Plaintiffs themselves concede. (Opp'n at 24-25 n. 35). Thus, given that Plaintiffs fail to allege scienter, the "core operations doctrine" cannot save their claim. *See id.*; *Diebold Nixdorf*, 2021 WL 1226627,

at *15 ("[T]he core operations doctrine can only be a buoy, not a life raft"). Plaintiffs' theory also fails because the Complaint does not demonstrate that the subjects of the challenged statements were "core to [CleanSpark's] business" at the time the statements were allegedly made. *City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Tech. Corp.,* 450 F. Supp. 3d 379, 424 (S.D.N.Y. 2020). To the contrary, the Complaint alleges that "*as a result of* the acquisitions and transactions described *infra*, CleanSpark transformed itself from being a generalized energy company to a company whose primary function is Bitcoin mining." (AC ¶¶27) (emphasis added).

### 3. The Estimates Are Puffery

In addition, the Estimates do not constitute material misstatements because, as set forth in the Motion at 12, Plaintiffs' allegations concerning them reflect nothing more than "corporate optimism" and puffery, of the type courts frequently reject as insufficient to state a material misstatement for purposes of a 10(b) Claim. *See, e.g., Finger,* 2019 WL 10632904, at *10. Plaintiffs contest this, relying on cases such as *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223 (S.D.N.Y. 2012) (cited in Opp'n at 15). But courts frequently dismiss 10(b) Claims alleging puffery.[3]  *See, e.g.,Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 346-47 n. 99-100 (S.D.N.Y. 2015) (collecting cases).

Plaintiffs' effort to refute Defendants' argument that the Estimates are non-actionable opinions (Opp'n at 16-17) is similarly flawed. Plaintiffs contend that "omitted facts" make the Estimates "materially misleading to a reasonable person" (*Id.*), yet at most they obliquely refer to

---

[3] Moreover, the allegations in *Bricklayers* were statements that the defendants, which were engaged in the "dangerous" industry of deepwater drilling, had "conducted extensive training and safety programs," 866 F. Supp. 2d at 244 – not open, qualified estimates of when the project might be completed in statements replete with expressions of optimism. *See In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *22 (S.D.N.Y. Mar. 23, 2017) ("[T]he challenged statements are accompanied by the types of qualifiers which render the statements even more in the nature of puffery"); *e.g.*, AC ¶¶ 118 ("It is expected..."); 122 ("CleanSpark Achieves Another Record Revenue Year").

the purported expectation of "[a] reasonable person … that an estimate for a major construction project issued by a public company would have had a more rigorous degree of preparation and analysis built into its estimate." (Opp'n at 17). The Complaint contains no such allegation, however, (*see, e.g.,* AC ¶ 80) (alleging only that Estimates lacked a "reasonable basis"), and Plaintiffs cannot belatedly add one in their Opposition. *See Sheppard v. TCw/DW Term Tr. 2000,* 938 F. Supp. 171, 178 (S.D.N.Y. 1996) ("Allegations made outside of the complaint are not properly before the court on a motion to dismiss.") (internal quotation marks omitted).  In any event, such a bland allegation cannot satisfy the specificity requirements of FRCP 9(b) and the PSLRA. *See, e.g., Carpenters Pension*, 750 F3d at 236.

**B.       Statements Regarding Analysis and Examination**

Plaintiffs argue that their allegations establish that Bradford's alleged statement that "[w]e began early-stage analysis of ATL in February 2020 to evaluate expanding the facility's energy capacity and reducing energy costs" (the "Early Analysis Statement") (AC ¶¶ 118) is an actionable misstatement made with scienter because the Press Release that quotes the Early Analysis Statement defines "ATL" as ATL Data Centers LLC, a corporate entity that formed on April 13, 2020. (Opp'n at 6; 8). That argument contradicts Plaintiffs' own pleading, however, which concedes the possibility that Bradford's reference to "ATL" was to the ATL Data Facility (AC ¶ 119(b)). Plaintiffs proffer no authority holding that imprecise speech satisfies the heightened pleading requirements applicable to its 10(b) Claim.

Moreover, scienter is lacking given that Plaintiffs cannot point to any factual allegation showing that Bradford referred to "ATL" with any intent to "deceive, manipulate, or defraud," *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). For example, the Complaint does not demonstrate that referring to a company's main asset by an abbreviation for the company is "an extreme departure from the standards of ordinary care." *Finger*, 2019 WL 10632904, at *13.

7

Plaintiffs also argue that their allegations concerning the Early Analysis Statement and a related statement concerning "in-depth examination of the profitability under the existing structure" (the "Examination Statement") satisfy the material misrepresentation and scienter elements of their 10(b) Claim because those purportedly "conceal[ed] material information" by not mentioning (a) the Virtual Citadel bankruptcy, (b) "that ATL was just one of several shell companies formed by Bernardo Schucman ("Schucman") to market the same set of assets" or (c) that a competitor, Marathon, had considered acquiring the ATL Data Facility but then declined to do so. (Opp'n at 21). The referenced allegations are unavailing, however, as set forth below.

### 1.    Bankruptcy of Virtual Citadel/Marathon's Withdrawal

#### (i)    No Duty to "Disclose"

There is no duty to disclose "information … simply because it may be relevant or of interest to a reasonable investor"; disclosure is only required where "necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013) (internal quotation marks omitted) (cited in Opp'n at 11).  Further, a securities fraud plaintiff must "specify … the reason or reasons" that the omission renders "the statement misleading." 15 U.S.C. § 78u-4(b)(1).

Relying on *Meyer v. Jinosolar Holdings Co.,* 761 F.3d 245 (2d Cir. 2014), Plaintiffs argue that Defendants had a duty to disclose the Virtual Citadel bankruptcy because a company has "a duty to tell the whole truth" once a company speaks on a topic. (Opp'n at 8). But in *Meyer*, the statements at issue misleadingly described "pollution-preventing equipment and 24-hour monitoring teams" while omitting facts directly related to the same topic: that such equipment and teams "were then failing to prevent substantial violations of the Chinese regulations." 761 F.3d at 251. Here, in contrast, the statements at issue discuss "early-stage analysis of ATL" and "in-depth examination of profitability," yet the purported omissions involve different topics: the unrelated,

8

death-related bankruptcy of a previous owner of the ATL Data Facility and Marathon's decision not to purchase the ATL Data Facility. (Opp'n at 2). Plaintiffs proffer no authority suggesting that "omitting" such unrelated topic renders the challenged statement misleading or demonstrates that it was made with scienter. *See Meyer*, 761 F.3d at 250-51 (where there is "a disclosure about a *particular topic ...* the representation must be complete and accurate") (emphasis added and internal quotation marks omitted).

Plaintiffs do, though, cite two out-of-circuit cases, suggesting that these stand for an unequivocal duty to disclose "bankruptcy of a similar predecessor company." (Opp'n at 7, 22). But these non-binding, inapposite SEC enforcement action decisions address personal bankruptcies of the defendants themselves, not third parties.[4]

### (ii)    Plaintiffs Rely On Speculation and Unsupported Conclusions

Plaintiffs do not meaningfully address Defendants' argument (Mot. at 16-17) that the allegations regarding the Virtual Citadel bankruptcy and Marathon's withdrawal fail to satisfy the heightened pleading requirements of FRCP 9(b) and the PSLRA, but they do take issue with Defendants' argument that any risk arising from the Virtual Citadel bankruptcy was "inherently speculative." (Mot. at 8). Plaintiffs claim that "Defendants misapprehend Plaintiffs' theory of falsity" because Plaintiffs have not suggested "a duty to speculate on future risks that the Virtual Citadel bankruptcy might pose to ATL." (Opp'n at 8). But it is Plaintiffs who misapprehend Defendants' argument: as a matter of law "'[d[efendants cannot be held liable for failing to disclose

---

[4] *See S.E.C. v. Merchant Cap., LLC*, 483 F.3d 747, 770 (11th Cir. 2007) (defendant principal's "previous personal bankruptcy" material where he and his colleague "put his experience in issue by touting" his "business experience," and "because [the company] was marketing the interests to people with little experience in the debt purchasing industry"); *S.E.C. v. Weintraub*, 2011 WL 6935280, at *2 (S.D. Fla. Dec. 30, 2011) (defendant did not disclose "several aspects of *his* personal background") (emphasis added).

what would have been pure speculation.'" *In re Ferrellgas Partners, L.P., Sec. Litig.,* 2018 WL 2081859, at \*14 (S.D.N.Y. Mar. 30, 2018) (quoting *Lipow v. Net1 UEPS Tech., Inc.,* 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015)), *affd*, 764 F. App'x 127 (2d Cir 2019). Plaintiffs' suggestion that disclosure of the Virtual Citadel bankruptcy was required rests on an implication that this would have disclosed some risk that acquisition of ATL could threaten CleanSpark's financial health, but "[d]efendants cannot be held liable for failing to disclose what would have been pure speculation." *Lipow,* 131 F. Supp. 3d at 170 (internal quotation marks omitted).

Finally, Plaintiffs' convoluted discussion of the supposed decline in CleanSpark's market value (Opp'n at 9) despite record-breaking revenues (Mot. at 2) is a mere distraction from the legally deficient nature of Plaintiffs' allegations.

### (iii)     Blue Chip Audit

Plaintiffs proclaim without supporting authority that Bradford's Examination Statement was misleading because it did not mention the purported audit by Blue Chip "[t]hat no audit was performed by an independent accounting firm, and that the purchase of ATL was made from Bradford's personal friend (AC ¶ 70), undermines Bradford's representation concerning the rigor and quality of Defendants' due diligence process." (Opp'n at 12) But this vague and incorrect statement ignores that the Complaint does not even purport to allege that due diligence was faulty nor comes close to satisfying Plaintiffs' "burden of explaining what rendered the statement[] materially false or misleading." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 463 (2d Cir. 2019).

Further, Plaintiffs do not dispute Defendants' argument that the allegations regarding Blue Chip fail to plead scienter. (Mot. At 18).

### (iv)     The Culper Reports and Employee Questions About Them

The Opposition repeats Plaintiffs' insufficient allegations concerning the Culper Reports and baldly claims that these "further strengthen[] the inference of scienter." (Opp'n at 22-23). As

set forth in the Mot. at 18-19, however, the "more compelling" interpretation is that, having been named as defendants in an action based on the Culper Reports, Defendants chose to be responsible and careful in their responses regarding the Culper Reports.[5] Moreover, Plaintiffs proffer no authority suggesting that such a measured approach to a short seller's inflammatory communications was "highly unreasonable and an extreme departure from the ordinary standard of care," *Finger*, 2019 WL 10632904, at *13. *Cf. Cheng v. Can. Goose Holdings Inc.,* 2021 WL 3077469, at *5 (S.D.N.Y. July 19, 2021) ("Considering the specific question that was asked, Reiss' response … is a reasonable one."). The only case Plaintiffs cite on this point, *In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266 (S.D.N.Y. 2014) (cited in Opp'n at 23), is inapplicable: it involves a "non-denial" of a mining company's role in the corrupt arrest and detention of a Canadian citizen in China, as reported by *a newspaper that had engaged in well-supported investigation* that had not engaged in "mere press speculation about defendants' motive." A further point of contrast is that here, according to Plaintiffs' own allegations, Defendants *did* deny the Culper Reports: CleanSpark issued a press release stating that Culper Research had made "false accusations against CleanSpark and its officers." (AC ¶ 144).

### C.    **Statement Regarding Bitcoin Investments**

Plaintiffs argue in their Opposition that Schultz's alleged statement that "recent, significant investments into Bitcoin by such respected companies as Square, PayPal, and MicroStrategy further validate our due diligence conclusions surrounding this acquisition" (AC ¶ 119(c)) (the "Bitcoin Investments Statement") was "materially misleading" because it "failed" to disclose that a competitor, Marathon, chose not to go forward with an acquisition of ATL's assets. (Opp'n at

---

[5] *In re Symbol Technologies Class Action Litigation*, 950 F. Supp. 1237 (E.D.N.Y. 1997) illustrates the dangers of engaging with a short-seller via press release.

10). Plaintiffs point to no adequate allegations of either misstatement or scienter relating to the Bitcoin Investments Statement, however.

### 1.     Bitcoin Investments Statement Was Non-Actionable Puffery

Plaintiffs fail to grapple with Defendants' argument that the Bitcoin Investments Statement was puffery and thus non-actionable. (Mot. at 16-17) They vaguely argue that the statement's "presence in the [December 10, 2020] press release, along with" the ATL Analysis Statement, "rendered it actionable deception" (Opp'n at 11), but this is unavailing because two correct statements do not transform into actionable misstatements just because they appear together.

### 2.     No Obligation to "Disclose" Competitor Marathon's Withdrawal

As set forth in the Motion at 16-17, Plaintiffs' allegations concerning the Bitcoin Investment Statement demonstrate neither an actionable misstatement nor scienter: Defendants had no duty to discuss competitor Marathon's withdrawal given that the impact of Marathon's reported reason for withdrawing its bid – the expiration of a subsidized power rate agreement a full three years in the future that meant the project was economically infeasible *for Marathon* – on CleanSpark's acquisition is purely speculative. Even Plaintiffs' own Complaint contains open speculation about what the "real" reason for Marathon's withdrawal was. (AC ¶ 71).

Similarly to their argument regarding Virtual Citadel, Plaintiffs in their Opposition respond that Defendants "misunderstand[] Plaintiffs' theory of falsity" because "Plaintiffs do not allege that Defendants should have speculated about the reasons Marathon withdrew its bid." (Opp. at 11). Again, Plaintiffs miss the point: They contend that the accurate Bitcoin Investment Statement is misleading because Defendants should have disclosed Marathon's withdrawal as part of that statement (AC ¶119(c)), but the lack of any duty to disclose a fact that established at most a purely speculative risk defeats Plaintiffs' contention as a matter of law. *See Rodman v. Grant Found.*, 460 F. Supp. 1028, 1040 (S.D.N.Y. 1978) ("Speculation on financial consequences . . . [is]

12

unnecessary for full disclosure of the terms of the [stock purchase] transactions.")

Plaintiffs also argues that the alleged "sharp price decline when Culper revealed the connection between ATL and Fastblock" somehow demonstrates that Marathon's withdrawal should have been disclosed in the Bitcoin Investment Statement. Plaintiffs rely on cases regarding materiality of share price drops. (Opp'n at 11). But Plaintiffs' cases do not hold that a stock drop precipitated by a short seller report establishes that the "facts" the "report" contains are inherently non-speculative or material. To the contrary, both *Kleinman v. Elan Corp, plc*, 706 F.3d 145 (2d Cir. 2013) and the out-of-circuit *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) affirm with-prejudice dismissals of securities fraud complaints and do not discuss short seller reports at all.

**POINT III: THE STATEMENTS FALL WITHIN THE PSLRA'S SAFE HARBOR**

### A.      All of the Statements At Issue Are Forward-Looking Statements

Plaintiffs argue that the statements at issue are "present" or "historical" and thus not subject to PSLRA safe harbor. (Opp'n at 18). That argument fails for two reasons. First, Plaintiffs concede that all of the Estimates are forward-looking. (Opp'n at 18). Second, the remaining alleged statements at issue are all forward-looking as well, given that "[u]nder the PSLRA, forward-looking statements include" not just statements such as "those of future economic performance" but also "any statement of the assumptions underlying such statements." *In re Bemis Co. Sec. Litig.,* 512 F. Supp. 3d 518, 531 (S.D.N.Y. 2021). In addition, a statement that is "forward looking as a whole" is entitled to safe harbor even when combined with statements of historical fact. *Steamfitters Loc. v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 363 (S.D.N.Y. 2019).

### B.      Plaintiffs Identify No Misleading Statements Or Material Omissions

A plaintiff seeking to escape application of the PSLRA safe harbor provision bears the burden of proving that the speaker had "actual knowledge … that the statement was false or misleading." 15 U.S.C. 78u-5(c)(1)(B); *Bemis*, 512 F. Supp. 3d at 531 (emphasis added)**.** Contrary

13

to Plaintiffs' statement in the Opposition (Opp'n at 20), however, the Complaint contains no such allegation concerning any of the statements at issue (*see, e.g.*, above at 5).

Plaintiffs also attempt to rely on cases holding that safe harbor does not apply to "material omissions," (Opp. at 18-19) but their reliance is misplaced given that, here, Plaintiffs' allegations do not demonstrate any material omissions whatsoever, for all of the reasons set forth in the Motion and this reply. *See* above at 3-4.

### C.    Defendants Provided Meaningful Cautionary Language

The Motion and the referenced securities filings defeat Plaintiffs' claim that Defendants "do not point the Court to any specific risk factors or cautionary language." (Opp'n at 19); December 10, 2020 Press Release (risks of acquisition include "the successful integration of ATL into CleanSpark"); CleanSpark, Inc., Form 10-K 2019, at 11, 13-14) (Van Riper Decl. Ex. G).[6]

Moreover, contrary to Plaintiffs' assertions, CleanSpark's cautionary language is not "boilerplate." (Opp'n at 19).[7] Plaintiffs cite *Slayton v. Am. Express Co,* 604 F.3d 758, 772 (2d Cir. 2010), for example, which affirms dismissal of a securities fraud complaint but notes in dicta that a statement "verg[ed] on mere boilerplate" where it "essentially warn[ed] that 'if our portfolio deteriorates, then there will be losses in our portfolio." Here, in contrast, Defendants' cautionary language specifically addresses the substance of the challenged statements: the risks of acquisitions. *See Bemis*, 512 F. Supp. 3d at 533 (defendants' acknowledgment of risks relating to "ability to implement integration plans for the transaction the ability to recognize the anticipated

---

[6] Contrary to Opp'n 19, CleanSpark's FY 2019 10-K includes the relevant cautionary language with respect to the December 10, 2020 Press Release because it was the last 10-K filed before that Release and therefore sets forth the "'Risk Factors' in our Annual Report on Form 10-K" that the Release incorporates by reference. CleanSpark's 2020 10-K was filed a week later.

[7] Nor do Plaintiffs cite any authority for their implication that cautionary language is insufficient unless it includes "warnings about the specific factors" that a plaintiff later says rendered a statement misleading. (Opp'n at 20).

14

growth and cost savings" was meaningful cautionary language).

## POINT IV: PLAINTIFFS FAIL TO ALLEGE RELIANCE

### A.    **Plaintiffs Are Not Entitled to Presumption Of Reliance On Post-Sale Statements**

Here, the Complaint invokes a "fraud-on-the-market" presumption of reliance (AC ¶¶ 162-64), but Plaintiffs' sale of all of their shares *before* Defendants made several of the alleged statements at issue precludes application of that presumption with respect to those post-sale alleged statements – as Defendants demonstrate in the Mot. at 19, citing *Halliburton*, 573 U.S. at 279 ; *see also id.* at 278 ("[I]f the plaintiff did not buy or sell the stock *after the misrepresentation was made* but before the truth was revealed, then he could not be said to have acted in reliance on a fraud-tainted price.") (emphasis added).  In response, Plaintiffs erroneously accuse Defendants of "confus[ing] the question of reliance with standing" (Opp. at 25) while simultaneously relying on cases addressing the standing of named plaintiffs to bring claims on behalf of unnamed class members. Those cases cannot preclude dismissal for lack of reliance here, however, because "for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant [to satisfy standing in a putative class action]." *City of Providence, Rhode Island v. Bats Glob, Markets, Inc.*, 2022 WL 902402, at *18 (S.D.N.Y. Mar. 28, 2022) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007) (alterations in original)). Here, neither of the named Plaintiffs can assert any *individual* 10(b) Claim directly against Defendants based on post-sale statements because they do not (and cannot) properly allege reliance on those statements.

### B.    ***Affiliated Ute* Does Not Apply**

The *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972) presumption of reliance applies "only when the original rationale for *Affiliated Ute* is present: when there are 'no positive

statements,' and 'reliance as a practical matter is impossible to prove.'" *Schwab v. E\*TRADE Fin. Corp.*, 752 F. App'x 56, 59 (2d Cir. 2018); Mot. at 19. Here, contrary to Opp'n at 26, Plaintiffs' claims are rooted in alleged "affirmative" misstatements, such as statements concerning "early-stage analysis" of the ATL Data Center. Thus, *Affiliated Ute* is inapplicable. *See id.*

**POINT V: PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION[8]**

Plaintiffs' 10(b) Claim also fails because they do not properly plead loss causation (Mot. at 19-20), *i.e.*, "that [they] purchased securities at an inflated price and that the price dropped once the fraud became known," *Rice as Tr. of Richard E. and Melinda Rice Revocable Family Tr. 5/9/90 v Intercept Pharm., Inc.*, 2022 WL 837114, at 23 (S.D.N.Y. Mar. 21, 2022).

In response to Defendants' arguments (Mot. at 19-20), Plaintiffs protest that the Culper Reports' reliance on public information does not preclude their being corrective disclosures (Opp'n at 27-28), but Plaintiffs ignore that *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 559 (S.D.N.Y. 2021) (cited in Mot. at 20) holds that "[a]lready-public information cannot constitute a public disclosure for purposes of alleging loss causation." Plaintiffs' attempt to distinguish *In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) (cited in Mot. at 20) (Opp'n at 27) is also ineffective given that Omnicom does not confine itself to its facts.

And the cases Plaintiffs cite (Opp'n at 27) are inapposite, *see, e.g., In re Chicago Bridge & Iron Co. N.V. Sec. Litig.,* 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) (reports provided new information concerning accounting irregularities). The Culper Reports do not present complex economic analysis purporting to correct public information regarding CleanSpark's financial

---

[8] Plaintiffs argue they need only satisfy FRCP 8 with respect to loss causation, (Opp'n at 26), but that question remains unsettled. *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 432 n. 9 (S.D.N.Y. 2010) (applying Rule 9 to loss causation). Under either standard, however, Plaintiffs' allegations fail. *See Rice*, 2022 WL 837114, at \*23 (assuming Rule 8 standard applies to loss causation and dismissing regardless).

condition, *Chicago Bridge*, 2020 WL 1329354, at *7, but rather inflammatory remarks by an admitted short seller (AC 45-54) concerning an announced transaction, which do not "correct" statements concerning CleanSpark's financial condition nor address the Estimates or the due diligence Plaintiffs challenge in this action. Courts have frequently rejected loss causation allegations premised on similar short seller reports. *See, e.g., In re Blue Earth, Inc. Sec. Class Action Litig.*, 2015 WL 12001274, at *2 (C.D. Cal. Nov. 3, 2015) (short report was "a compilation of publicly available information" that "hyperlink[ed] to various state and local government documents – and even a newspaper article – to support the allegation[s]"); *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) ("[T]he mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure.") As in *Blue Earth* and *Meyer*, the Culper Reports rely almost exclusively on public information, replete with links to and screenshots of publicly available websites and state and local government documents; and state the "information contained herein" was "obtained from public sources." (*See* AC Ex. 2 at 1).

Courts also reject attempts to use short seller reports as corrective disclosures where, as here, plaintiffs fail to allege facts showing that declines in share price following their issuance resulted from the particular "disclosures" at issue here, rather than the reports' various other calumnies and innuendos. *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n. 30 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (failure to "allege any facts to show that the price decline was caused, in whole or in part, by the cherry picked pieces of the report that [the complaint] contends are true and not the allegations that Lead Plaintiff has cast aside"); *Blue Earth*, 2015 WL 12001274, at *3 ("[T]he 58-page report devotes a mere 5 pages to addressing Blue Earth's alleged misrepresentations" without pleading "that the stock price was impacted by the specific" alleged disclosures "as opposed to [] the massive amount of negative information

17

contained in the report that was unrelated.")

Here, the Culper Report devotes just three of its nineteen pages to the history of ATL, with the remainder consisting of scurrilous allegations that Plaintiffs cast aside when they amended the original Complaint.  (AC ¶ 45 n. 9.)  Plaintiffs makes no attempt to allege that these now-discarded portions of the Culper Reports did not depress share price.

Moreover, Plaintiffs' reliance on the Culper Reports as corrective disclosures contradicts the fraud-on-the-market theory of reliance they purport to allege (AC ¶¶ 138, 159(c), 162, 164). *See Meyer,* 710 F.3d at 1198-99 ("The Investors cannot contend that the market is efficient for purposes of reliance and then cast the theory aside when it no longer suits their needs for purposes of loss causation. Either the market is efficient or it is not.") (emphasis added).

### A.    <u>The Revised Estimates Are Not Corrective Disclosures</u>

As set forth in the Motion, the alleged revised Estimates cannot be corrective disclosures because they do not disclose the purported "conditions" underlying Plaintiffs' fraud claims. (Mot at 20).  Plaintiffs implicitly concede, but pivot to arguing that the revised Estimates "support a pleading of loss causation based on materialization of the risk." (Opp'n at 28). This argument fails because the Amended Complaint contains no such allegation let alone the "identif[ication of] a particular risk that was allegedly concealed by the defendant's actions and which then materialized to cause a market loss" – as would be required to alleged loss causation via materialization of risk. *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 678 (S.D.N.Y. 2007).

### POINT VI: PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM

Plaintiffs' failure to state a 10(b) Claim dooms its Section 20(a) claim as well.

### <u>CONCLUSION</u>

For the foregoing reasons and those set forth in their opening brief, Defendants respectfully request that the Court dismiss Plaintiffs' action in its entirety with prejudice.

18

Respectfully submitted,

*/s/Jay S. Auslander*
Jay S. Auslander
Michael Van Riper
Wilk Auslander LLP
825 Eighth Avenue, Suite 2900
New York, NY 10019
Tel: 212-981-2300

*Attorneys for Defendants CleanSpark, Inc.,*
*Zachary Bradford, and S. Matthew Schultz*

Dated:  August 11, 2022

19