UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARSHAN HASTHANTRA, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

CLEANSPARK, INC., ZACHARY BRADFORD, and S. MATTHEW SCHULTZ,

Defendants.

Civil Action No. 1:21-cv-00511-LAP

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 1

II. ARGUMENT ..... 2

A. Defendants Concede Market Efficiency ..... 2

B. Defendants' Arguments Regarding Standing Contradict The Law ..... 3

1. Plaintiff Need Not Sell His Shares To Have Standing ..... 3

2. Loss Causation Should Not Be Considered At Class Certification ..... 3

3. Defendants' Arguments Concerning The Class Definition Are Unavailing ..... 4

C. Plaintiff Is Not Subject To Unique Defenses ..... 5

D. Defendants' Attacks On Dr. Bozanic's Opinions Are Not Only Premature, But Incorrect ..... 7

1. Dr. Bozanic's Model Does Not Preclude Recovery ..... 7

2. Defendants' Argument About Statistically Significant ..... 8

3. Defendants' Argument About Disaggregation ..... 9

E. Defendants' Argument About Mr. Hasthantra's Reasoning ..... 10

F. Defendants' Recital Of The Facts Is Incorrect ..... 11

III. CONCLUSION ..... 12

**TABLE OF AUTHORITIES**

CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 14

*Arkansas Teacher Ret. Sys. V. Goldman Sachs Group, Inc.*,
77 F.4th 74 (2d Cir. 2023) .......... 12

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
222 F.3d 52 (2d Cir. 2000) .......... 8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......... 14

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018) .......... 11

*City of Livonia Emps. Ret. Sys. V. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) .......... 8

*Eagle Equity Funds, LLC v. Centrals Electricas Brasileiras S.A – Eletrobras*,
2021 WL 371449 (S.D.N.Y. Feb. 3, 2021) .......... 7, 9

*Erica P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011) .......... 6

*Erickson v. Jernigan Capital, Inc.*,
692 F. Supp. 3d. 114 (S.D.N.Y. 2023) .......... 10

*Forte v. U.S. Pension Comm.*,
2016 WL 5922653 (S.D.N.Y. Sept. 30, 2016) .......... 7

*GAMCO Investors, Inc. v. Vivendi, SA*,
917 F. Supp. 2d 246 (S.D.N.Y. 2013) .......... 9

*Goldman Sachs Grp. Inc. v. Arkansas Teacher Ret. Sys.*,
594 U.S. 113 (2021) .......... 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .......... 12

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) .......... 13

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) .......... 10

*In re Crazy Eddie Sec. Litig*.,
135 F.R.D. 39 (E.D.N.Y. 1991) .......... 9

*In re Crazy Eddie Sec. Litig*.,
948 F. Supp. 1154 (E.D.N.Y. 1996) .......... 10

*Koppel v. 4987 Corp*.,
191 F.R.D. 360 (S.D.N.Y. 2000) .......... 9

*Martinez v. Avantus, LLC,*
343 F.R.D. 254 (D. Conn. 2023) .......... 8

*Menaldi v. Och-Ziff Cap. Mgm't Group LLC*.,
328 F.R.D. 86, (S.D.N.Y. 2018) .......... 8

*Packer v. Yampol*,
630 F. Supp. 1237 (S.D.N.Y. 1986) .......... 7

*Pfizer, Inc. Sec. Litig*.,
282 F.R.D. 38 .......... 9, 14

*Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) .......... 6

*Pirnik v. Fiat Chrysler Automobiles, N.V*.,
327 F.R.D. 38 (S.D.N.Y. 2018) .......... 11

*Rocco v. Nam Tai Elecs., Inc.,*
245 F.R. D. 131 (S.D.N.Y. 2007) .......... 8

*Sjunde Ap-Fonden v. Goldman Sachs, Inc.*,
2024 WL 1497110 (S.D.N.Y. Apr. 5, 2024) .......... 13

*Spokeo, Inc. v Robins*,
578 U.S. 330 (2016) .......... 7

*Swain v. Wilmington Trust, N*.A.,
2018 WL 934598 (D. Del. Feb. 16, 2018) .......... 6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
672 F. Supp. 2d 596 (S.D.N.Y. 2009) .......... 6

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017) .......... 13

RULES

Fed. R. Civ. P. 23(b)(3) .......... 8

# I. PRELIMINARY STATEMENT

Lead Plaintiff Darshan Hasthantra's ("Plaintiff") motion for class certification should be granted in its entirety. Defendants' opposition ("Def. Br") fails to rebut the core elements required for certification. Instead, it raises issues that are premature, legally or factually incorrect, or irrelevant at this stage.

First, Defendants have conceded market efficiency. Defendants did not submit an expert report or testimony challenging it, nor do they meaningfully dispute the *Cammer* and *Krogman* factors, which courts routinely apply to assess market efficiency. Defendants' failure to engage with these well-established standards leaves the *Basic* presumption of reliance firmly intact and confirms that Plaintiff has satisfied his burden under Rule 23.

Second, Defendants' arguments regarding Plaintiff's standing are contrary to longstanding precedent. They incorrectly suggest that Plaintiff must have sold his shares to demonstrate a financial loss. Yet courts have consistently rejected any sell-to-sue requirement, holding that unsold shares do not preclude a showing of damages or loss causation. Furthermore, Defendants' attacks on Plaintiff's loss causation arguments are not only incorrect but premature. The Supreme Court has made clear that loss causation is a merits issue to be addressed later, not a prerequisite for class certification.

Third, Defendants' concerns about the class definition are equally unpersuasive. Even if they were well-founded, which they are not, Plaintiff has proactively proposed a minor amendment to exclude investors who suffered no compensable loss, in line with authority from this District and in view of the Supreme Court's recent grant of certiorari in *Laboratory Corporation of America Holdings v. Davis.* This adjustment ensures that the class is properly defined and eliminates any potential standing concerns.

Fourth, Defendants' attempts to manufacture unique defenses against Plaintiff are meritless. Courts have consistently held that continued stock purchases after partial disclosures, or after litigation begins, do not render a plaintiff atypical or inadequate. Similarly, Plaintiff's claims remain typical despite the fact that he did not purchase shares after every alleged misstatement, as they arise from the same fraudulent course of conduct.

Fifth, Defendants' attacks on Plaintiff's expert, Dr. Bozanic, are both premature and unfounded. Dr. Bozanic's use of an "out-of-pocket" damages model is well-accepted in securities litigation. Defendants' critiques regarding statistical significance and price impact improperly seek to inject loss causation questions into the certification stage, contrary to clear Supreme Court guidance. Even if certain price movements did not meet a 95% confidence threshold, that does not disprove price impact under prevailing case law, which requires Defendants to demonstrate by a preponderance of evidence that something else caused the price movement.

Finally, Defendants' recitation of the factual record mischaracterizes discovery and is misplaced at this juncture. Rule 23 does not permit a merits inquiry at class certification. Regardless, the evidence, including testimony from key witnesses, supports Plaintiff's allegations that Defendants made false and/or misleading statements, including that the timeline for the completion of the Expansion Project lacked a reasonable basis.

## II. ARGUMENT

### A. Defendants Concede Market Efficiency

Defendants did not submit an expert report or testimony to rebut the presumption of market efficiency or to challenge the applicability of the *Basic* presumption of reliance. Nor have they meaningfully addressed the well-established *Cammer* and *Krogman* factors that courts routinely consider when assessing market efficiency. Their failure to offer contrary evidence or engage with these factors underscores that Plaintiff has satisfied his burden at class certification.

### B. Defendants' Arguments Regarding Standing Contradict The Law

#### 1. Plaintiff Need Not Sell His Shares To Have Standing

Defendants' standing arguments contradict long established law. To the extent Defendants are claiming that Plaintiff does "not demonstrate any concrete financial loss" because he "had not sold the shares [his loss chart] references", Def. Br. at 10, the law has long been clear that a Plaintiff need not have sold the stock to demonstrate a loss. *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 611 (S.D.N.Y. 2009) ("that Class members have not yet sold their shares does not preclude a finding of loss causation or an award of damages"); *see also Swain v. Wilmington Trust, N.*A., 2018 WL 934598, at *3 (D. Del. Feb. 16, 2018) (collecting cases that have "likewise rejected arguments that *Dura* [*Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)] instituted a sell-to-sue requirement").[1]

#### 2. Loss Causation Should Not Be Considered At Class Certification

Defendants appear to be suggesting that Plaintiff has failed to demonstrate loss causation. However, binding precedent establishes that examination of this issue at the class certification stage is premature. The Supreme Court has made clear that loss causation, the causal link between the alleged misrepresentation and the economic loss, is a ***merits issue*** that need not be proven for a class to be certified. *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 807 (2011) ("*Halliburton I*") ("The question presented in this case is whether securities fraud plaintiffs must also prove loss causation in order to obtain class certification. We hold that they need not.").

---

[1] Requiring a sale of stock to participate in a class action would create perverse incentives, such as (1) forcing premature sales, potentially deepening their loss, penalizing long-term investors who hold during periods of volatility, and (3) conflict with investor protection goals of protecting ***investors*** from deception, not just short term traders.

To the extent that Defendants argue that Plaintiff alleges only artificial inflation and not loss causation, Def. Br. at 11, that is contradicted by the allegations in the complaint alleging that the drops in the stock price were indeed connected with Defendants' fraud.[2] *See e.g.,* CAC at ¶ 89 (February 12, 2001 price drop); ¶ 112 (August 17, 2021 price drop), ¶¶ 150-52 (noting that on those dates the truth "was partially revealed, and/or the concealed risks materialized" and "[a]s a direct result of these partial disclosures, the price of CleanSpark's stock declined significantly, precipitously, thereby damaging investors as the artificial inflation in CleanSpark's stock price was removed").

**3. Defendants' Arguments Concerning The Class Definition Are Unavailing**

Defendants' arguments that the class definition might include those without Article III standing, Def. Br. at 12, is without merit. As a practical matter, in the event of resolution of the case, the Plan of Allocation would be designed so that any CleanSpark investor who did not suffer a loss would not be entitled to any recovery. In an abundance of caution, however, given that the Supreme Court has recently granted certiorari in *Laboratory Corporation of America Holdings v.*

---

[2] Defendants cases regarding artificial inflation are distinguishable, in that for each case, the plaintiffs failed to demonstrated any theory of loss causation at all. In *Eagle Equity Funds, LLC v. Centrals Electricas Brasileiras S.A – Eletrobras*, 2021 WL 371449, at *4 (S.D.N.Y. Feb. 3, 2021), the court noted that plaintiffs only alleged artificial inflation, and provided no theory at all about injury or loss causation, specifically trying to avoid this analysis asking only for injunctive and declaratory relief. In *Forte v. U.S. Pension Comm.*, 2016 WL 5922653, at *8 (S.D.N.Y. Sept. 30, 2016), the court held that plaintiff had no theory of loss causation, and merely claimed "that because his shares in the Stock Fund were worth less at the end of the Class Period than they were at the beginning, he has suffered a cognizable injury." In *Packer v. Yampol*, 630 F. Supp. 1237, 1240 (S.D.N.Y. 1986), a derivative action, not a securities action, the Court found that plaintiffs had no theory of loss, and in fact noted that "since plaintiffs allege that defendants' misrepresentations and omissions continue to date, it is logical to infer that any artificial inflation of the price of Graphic stock also continues. In that case, plaintiffs have not been damaged because they could sell their stock at an equally inflated price." *Spokeo, Inc. v Robins*, 578 U.S. 330, 338 (2016) doesn't even implicate the securities laws, and rather concerns the Fair Credit Reporting Act.

*Davis*, (24-304) and is considering the issue of whether a federal court may certify a class action under Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury, Plaintiff proposes modifying the class definition with the following addition in the exclusion section: "[e]xcluded from the Class are . . . persons and entities that suffered no compensable losses . . . .".[3] *See Martinez v. Avantus, LLC,* 343 F.R.D. 254, 264 (D. Conn. 2023) (court amended class definition to exclude class members that lacked Article III standing).

**C. Plaintiff Is Not Subject To Unique Defenses**

Defendants' argument that Mr. Hasthantra is subject to unique defenses because he continued to buy stock after a partial disclosure, and even while the lawsuit was pending, Def. Br. at 16-18, is unavailing. Courts in this district have consistently held that post-litigation purchases do not disqualify a plaintiff from serving as a class representative in a securities fraud action. *Menaldi v. Och-Ziff Cap. Mgm't Group LLC*., 328 F.R.D. 86, 93, (S.D.N.Y. 2018); *City of Livonia Employees Ret. Sys. V. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012).[4] Plaintiff testified that he

---

[3] The entire proposed class definition would now read as follows:

> All persons and entities that purchased or otherwise acquired the publicly-traded securities of CleanSpark, Inc. between December 10, 2020 and August 16, 2021, both dates inclusive. Excluded from the Class are ***persons and entities that suffered no compensable losses, as well as:*** (i) Defendants; (ii) current and former officers, employees, and directors of CleanSpark, Inc.; (iii) blood relatives and household members of any person excluded under (i) or (ii); and (iv) any entities affiliated with, controlled by, or more than 10% owned by, any person excluded under (i) through (iii); and (v) the legal representatives, heirs, successors, or assigns of any person or entity excluded under (i) through (iv). (Additions in emphasis.)

[4] The cases cited by Defendants are distinguishable. In *Rocco v. Nam Tai Elecs., Inc.,* 245 F.R. D. 131, 136 (S.D.N.Y. 2007), the court clarified that there is "no per se rule" regarding an increase in holdings, but noted that in this particular case, the proposed class representative's "allegations of the inventory fraud are particularly harmful to his efforts for certification as class representative, as he bought Nam Tai stock despite information he had about Nam Tai's allegedly manipulated finances." In *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp*., 222 F.3d 52, 59 (2d Cir. 2000), the Second Circuit held that the district court didn't not abuse its discretion when it determined that disqualifying unique defenses were raised from the fact that, among other things, she was a

bought more stock in February or March because he "did not know everything that was going on behind the scenes" and that he bought "more and more thinking that this would do great, but later on I figured out things did not go well and it was all inflated." *See* Hasthantra Tr. 66:2-24 (attached as Ex. A to the Declaration of Gregory Linkh submitted herewith). Moreover, "the rule barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit; it has generally been applied only where a full defense is available against an individual plaintiff's action." *Koppel v. 4987 Corp*., 191 F.R.D. 360, 365 (S.D.N.Y. 2000) (citations omitted).

Similarly, Defendants' argument that Mr. Hasthantra cannot represent investors who relied on misstatements made after his last purchase on March 5, 2021 is also contrary to established law. Courts have consistently held that a class representative need not have made purchases after every alleged misstatement, as long as their claims arise from the same course of conduct and legal theory as those of the absent class members. *See In re. Pfizer, Inc. Sec. Litig*., 282 F.R.D. 38, 44-47 (claims "are typical of those of absent class members [because] they allege injury resulting from the same course of conduct that injured the absent class members and are based on the same theories of recovery.") (*citing In re Crazy Eddie Sec. Litig*., 135 F.R.D. 39, 40 (E.D.N.Y. 1991)). Here, the misstatements made after March 5, 2021 concerned the same course of conduct as many of the previous misstatements: the estimates for the completion of the power delivery to the Expansion Project had no reasonable basis in fact.[5]

---

"sophisticated broker who had access to more information than other investors in the putative class". In *Eagle Equity Funds, LLC v. Centrals Electricas Brasileiras S.A – Eletrobras*, 2021 WL 371449, at *4 (S.D.N.Y. Feb. 3, 2021), the court noted that plaintiffs "affirmatively disbelieved the statements at issue, and purchased the ADRs despite the statements — not in reliance on them." Here by contrast, there is no argument or evidence that Mr. Hasthantra knew CleanSpark's statements were false but made purchases anyway in spite of this knowledge.

[5] Defendants' argument regarding post-Culper Report disclosures, Def. Br.at 22, is perplexing. They argue on one hand, citing *GAMCO Investors, Inc. v. Vivendi, SA*, 917 F. Supp. 2d 246, 261-62 (S.D.N.Y. 2013), that the initiation of this action "on the heels of the Culper Report" is "so

### D. Defendants' Attacks On Dr. Bozanic's Opinions Are Not Only Premature, But Incorrect

#### 1. Dr. Bozanic's Model Does Not Preclude Recovery For Investors Who Did Not Sell Shares

Defendants' assertion that Plaintiff is subject to unique defenses regarding economic loss because he has not sold his shares, Def. Br. at 19, misconstrues both the law and the methodology applied at the class certification stage. The "out-of-pocket" damages model employed by Plaintiff's expert, Dr. Bozanic, calculates individual damages based on differences in artificial inflation in stock prices ***at the time of purchase***, thus it is irrelevant that Plaintiff has not sold his shares. This is a standard method for estimating class-wide damages in securities fraud actions and is routinely accepted. *See, e.g., Erickson v. Jernigan Capital, Inc.*, 692 F. Supp. 3d. 114, 131 (S.D.N.Y. 2023); (endorsing "out-of-pocket" damages model); *In re Barrick Gold Sec. Litig.,* 314 F.R.D. 91, 105-06 (S.D.N.Y. 2016) (same); *In re Crazy Eddie Sec. Litig*., 948 F. Supp. 1154, 1165 (E.D.N.Y. 1996) (same).

---

forceful that it becomes unreasonable for an investor" to continue to rely on statements by CleanSpark. Yet, on the other hand, they argue that the Culper Report had no material impact. Defendants can't have it both ways. This argument also fails to recognize that the misstatements revealed by the Culper Report (e.g. omissions of the Virtual Citadel bankruptcy and the termination of the proposed transaction with Marathon) are materially different than misstatements concerning the timeline for completion of the Expansion Project.

### 2. Defendants' Argument About Statistically Significant Price Movements Is Both Premature And Incorrect

Defendants' argument that Dr. Bozanic did not find a statistically significant price movements for certain price movements, Def. Br. at 22-23, raises issues of loss causation that, as stated above, should not be resolved at the class certification stage. Regardless of the prematurity of this argument, Defendants' assertions are substantively incorrect. For example, the December 10, 2020 price increase was statistically significant at the 89.6% level. *See* Expert Reply Report of Dr. Zahn Bozanic, dated May 2, 2025, at ¶ 35, submitted herewith. While this price increase may not meet the 95% confidence level, it in no way demonstrates the ***absence*** of price impact. *See Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 46-47 (S.D.N.Y. 2018) (a sub-95% result "is obviously less comfort than a result that is statistically significant at a confidence level of 95%, but it does not prove the *absence* of price impact") (emphasis in original); *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 344–45 (D.N.J. 2018) (holding that the plaintiffs' expert's report "[did] not demonstrate the absence of a price impact," even though the expert failed to find price impact with 95% confidence).

Similarly, while the January 14, 2021 and January 15, 2021 price drops do not, by themselves rise to the level of statistical significance at the 95% level, given the nature of the release of the news, which includes both the Culper Report on January 14th and the follow-up tweet on January 15th, this news should be considered in tandem. And the combined two-day drop is statistically significant at the 94.4% level. Moreover, the August 17, 2021 price decrease was, by itself, statistically significant at the 99.3% level. Bozanic Reply Report at ¶¶ 35-37.

Furthermore, even if the December 10, 2020 price increase was not statistically significant, it would not be fatal. As alleged at CAC ¶ 170, and as supported by Dr. Bozanic, in his Reply Report at ¶ 22, as of December 10, 2020 the price of CleanSpark stock contained artificial inflation

consistent with the price maintenance theory. Under the price maintenance theory, "a misrepresentation causes a stock price 'to remain inflated by preventing preexisting inflation from dissipating from the stock price.'" *Goldman Sachs Grp. Inc. v. Arkansas Teacher. Ret. Sys.*, 594 U.S. 113, 119-20 (2021). A drop in stock price upon a corrective disclosure thus "operates as an indirect proxy for the front-end inflation, or the amount that the misrepresentation fraudulently propped up the stock price." *Arkansas Teacher Ret. Sys. V. Goldman Sachs Group, Inc.*, 77 F.4th 74, 80 (2d Cir. 2023).

To the extent that Defendants are arguing that some other phenomenon caused the price drops, at this stage they have to do so by a preponderance of the evidence. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281-82 (2014) ("*Halliburton II*"), (defendants can rebut *Basic* if they can, by a preponderance of the evidence, "'sever[ ] the link between the alleged misrepresentation and . . . the price received (or paid) by the plaintiff . . . [which would] be sufficient to rebut the presumption of reliance' because 'the basis for finding that the fraud had been transmitted through the market price would be gone.'"). Even if Plaintiff has not provided evidence of certain stock price movements that rise to the 95% confidence level, Defendants have certainly failed to show that it is more likely than not that something other than the misstatement or corrective disclosure that caused the price fluctuation.

**3. Defendants' Argument About Disaggregation Is Both Premature And Incorrect**

Furthermore, Defendants' arguments that Dr. Bozanic will not be able to disaggregate news, Def. Br. at 23-24, is not only premature, but incorrect. Courts have repeatedly held that plaintiffs are not required to disaggregate confounding information at class certification, particularly where they are invoking the *Basic* fraud-on-the-market presumption of reliance. As, stated above, the Supreme Court made clear in *Halliburton II* that at class certification, defendants

may attempt to rebut the *Basic* presumption by showing the absence of price impact, but the burden is on defendants, not plaintiffs, to do so with evidence that the alleged misstatements had no effect on the stock price. Defendants have provided no argument for this. Furthermore, issues of disaggregation should not be addressed at the class certification stage. *Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017) ("failure to disaggregate . . . did not preclude class certification'); *Sjunde Ap-Fonden v. Goldman Sachs, Inc.*, 2024 WL 1497110, at *25 (S.D.N.Y. Apr. 5, 2024) (any difficulty in disaggregation "does not mean damages cannot be proved on a class-wide basis. . . . Quite simply, there is no requirement to provide such details at class certification".); *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at 15 (S.D.N.Y. Sept. 8, 2021) (plaintiff "need not [disaggregate] at this juncture to establish that common issues relating to damages predominate").

Nonetheless, as Dr. Bozanic has explained in his Reply Report, "there are many potential ways to disaggregate confounding information; to the extent any exists, one can utilize a variety of well-accepted valuation techniques including, but not limited to, event studies, valuation analysis, published academic research studies, analyst research, or other case-specific documents."[6] Reply Report at ¶ 40.

**E. Defendants' Argument About Mr. Hasthantra's Reasoning Behind His Stock Purchases Does Not Demonstrate Atypicality**

Defendants' assertion that "Plaintiff revealed the reasons for his purchases of CleanSpark stock have nothing to do with the statements by Defendants on which this case purports to be based", Def. Br. at 3, is flawed both legally and factually. First, his reasons are irrelevant. To serve

[6] Defendants' assertion he considered disaggregation to be "tricky" takes his testimony out of context. While he notes that disaggregation is difficult to do with an events study, he then noted that he would have to use tools other an event study, and "[y]ou'd have to look for corroborating evidence", such as, among other thing, analyst reports. Bozanic Tr. at 179:14-20 (attached at Ex. B to the Linkh Declaration) Dr. Bozanic, in his Reply Report at ¶ 40, demonstrates additional methods by which he could perform a disaggregation analysis.

as an adequate class representative, a plaintiff need not prove individualized reliance. Under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and its progeny, a plaintiff is entitled to a presumption of reliance so long as the fraud-on-the-market theory applies. In other words, he is entitled to this presumption as long as the market for the stock was efficient and the misstatements were public and material. *See In re Pfizer Inc., Sec. Litig*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012) (granting class certification in a securities class action, and holding that "persons buying and selling in the efficient market can be presumed to have relied on any such misstatements and omissions for purposes of a fraud claim").

That aside, Mr. Hasthantra has affirmatively demonstrated that he invested because he believed that CleanSpark would be able to efficiently mine Bitcoin, which is the issue at the center of this case. *See* Hasthantra Tr. at 53:8-15 ("CleanSpark was an energy grid business, and they knew how to efficiently manage the energy for producing the bitcoins, for mining the bitcoins. So, I felt that combination was great because they should know how to efficiently manage the power or energy, and at the same time, they should know how to mine the bitcoin.") (attached as Ex. A to the Linkh Declaration).

**F. Defendants' Recital Of The Facts Is Incorrect**

Defendants' attempts to inject factual disputes regarding liability into the class certification analysis are misplaced. Courts have repeatedly held that Rule 23 does not require a determination of the merits of the plaintiffs' claims at this stage. As the Supreme Court emphasized in *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." The inquiry is limited to whether the requirements of Rule 23 are satisfied, and not whether Defendants actually committed securities fraud. To the extent Defendants raise factual disagreements about the truth or falsity of the alleged misstatements, their materiality, or whether they were made with scienter, those are

***common questions*** that will be resolved on the merits for the class as a whole, not grounds to deny certification.

Regardless, Plaintiff strongly disputes certain factual assertions made in Defendants' brief. For example, Defendants' assertion that discovery has "disproven" allegations supporting an *Affiliated Ute* presumption, Def. Br. at 21, is incorrect. First, while FE1 confirmed at deposition that she did not circulate any timeline until March 3, 2021, other discovery in the case makes it clear that CleanSpark management had no reasonable basis to make their unduly optimistic projections, at any time in the Class Period, for the timing of the completion of the Expansion Project, especially prior to the March 3rd creation and dissemination of this timeline.

In fact, at deposition FE1 confirmed, and provided additional testimony about, one of the key issues in the litigation: that Defendants' statements about the timeline for the completion of the Expansion Project were without basis in fact. Evidence demonstrating this will be presented to the Court when merits issues are ultimately considered. Similarly, contrary to Defendants' assertion that "[d]iscovery has likewise disproved Plaintiff's allegations of the remaining supposed omissions, which pertain to the Virtual Citadel bankruptcy and Marathon's withdrawal of its bid for the ATL Facility", discovery has supported the allegations made in the CAC.

## III. CONCLUSION

For the foregoing reasons, as well as the opening memorandum, the expert reports of Dr. Bozanic, and other materials submitted in connection with Plaintiff's motion, Plaintiff's motion for class certification should be granted in its entirety.

Dated: May 2, 2025

By: /s/ *Gregory B. Linkh*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone:(212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Christopher Fallon (*admitted pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
cfallon@glancylaw.com

**LAW OFFICES OF FRANK CRUZ**
Frank Cruz (*admitted pro hac vice*)
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
fcruz@frankcruzlaw.com

*Lead Attorneys for Lead Plaintiff Darshan Hasthantra and the putative Class*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On May 2, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 2, 2025.

*s/Gregory B. Linkh*
Gregory B. Linkh