UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARSHAN HASTHANTRA,
Individually and on Behalf of
Others Similarly Situated,

                Plaintiff,

-against-

CLEANSPARK, INC., et. al,

                Defendants.

No. 21-CV-511 (LAP)

OPINION AND ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

Lead Plaintiff Darshan Hasthantra ("Plaintiff Hasthantra" or "Plaintiff") brings this putative class action against Defendants CleanSpark, Inc. ("CleanSpark" or the "Company"), Zachary Bradford, and S. Matthew Schultz pursuant to § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"); Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder; and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Before the Court is Plaintiff's motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Motion" or "Motion for Class Certification").[1] Defendants oppose

---

[1] (See Notice of Plaintiff's Motion for Class Certification, dated January 10, 2025 [dkt. no. 89]; Memorandum of Law in Support of Plaintiff's Motion for Class Certification ("Pl. Cert. Br."), dated January 10, 2025 [dkt. no. 90]; Declaration of Gregory Linkh in Support of Plaintiffs' Motion for Class Certification, dated January 10, 2025 [dkt no. 91]; Reply Memorandum of Law in Further Support of Plaintiff's Motion for Class Certification ("Pl. Reply"), dated May 2, 2025 [dkt. no. 94]; Declaration of Gregory Linkh in Support of Reply Brief on Plaintiffs' Motion for Class

the Motion.[2]   For the reasons set forth below, the Motion is granted.

I.   **Background**

    A. Factual Background

The Court presumes the parties' familiarity with the specific facts of this case, as set forth in the Court's January 5, 2023 Opinion and Order denying Defendants' motion to dismiss.  (Dkt. no. 60.)  As a general matter, this action arises out of Plaintiff's claim that Defendants shifted CleanSpark's business model from alternative energy and software to mining Bitcoin and in so doing, fraudulently omitted material information and misled investors in three ways during a December 10, 2020 press release and subsequent investor call.  (Amended Complaint [dkt. no. 36] ¶¶ 2, 3, 25.)  First, Plaintiff alleges that Defendants misled investors about CleanSpark's acquisition of ATL Data Centers, Inc. ("ATL"), a Bitcoin mining company (id. ¶¶ 3, 6) by failing to disclose that another Bitcoin mining company, Marathon Patent Group ("Marathon"), had announced its intent to purchase ATL, before withdrawing the offer because it discovered adverse information about ATL during the due diligence process (id. ¶ 6).

---

Certification, dated May 2, 2025 [dkt. no. 95]; Expert Reply Report of Zahn Bozanic, Ph.D., dated May 2, 2025 [dkt. no. 96].)
[2] (See Defendants' Opposition to Plaintiff's Motion for Class Certification ("Opp'n), dated March 14, 2025 [dkt no. 92]; Declaration of David J. Partida, dated March 14, 2025 [dkt. no. 93].)

Second, Plaintiff claims that Defendants omitted the material fact that ATL was effectively the rebranded assets of a company called Virtual Citadel, Inc. ("Virtual Citadel"), which had gone bankrupt. (Id.) Finally, Plaintiff alleges that Defendants misrepresented the timeline for completion of a project to expand the ATL facility's power capacity (the "Expansion Project"). (Id. ¶ 4.)

According to Plaintiff, Defendants' fraud was revealed by a series of corrective disclosures, including: 1) the January 14, 2021 Culper Research Report (the "Culper Report"), which disclosed Marathon's failed acquisition of ATL and that ATL was the assets of Virtual Citadel, which had gone bankrupt (id. ¶¶ 45-49); 2) a January 15, 2021 Tweet from Culper Research following up on its report (id. ¶ 51); 3) Defendants' February 12, 2021 adjustment of the timeline for completion of the Expansion Project (id. ¶ 126); and 4) Defendants' August 17, 2021 adjustment of the Expansion Project timeline (id. ¶ 111).

## II.  **Legal Standards**

A district court may only certify a class after it is satisfied based on a "rigorous analysis" that the proposed class meets Federal Rule of Civil Procedure 23(a)'s prerequisites. Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015). "Those prerequisites require showing that: (1) 'the class is so numerous that joinder of all members is impracticable'; (2) 'there are

3

questions of law and fact common to the class'; (3) 'the claims or defenses of the representative parties are typical' of those of the class; and (4) 'the representative parties will fairly and adequately protect the interests of the class.'" Id. (quoting FED. R. CIV. P. 23(a)).

The district court also must ensure that certification is appropriate under one of the three bases for certification set forth by Rule 23(b). Id. Relevant here, Rule 23(b)(3) "allows for certification if both (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Id. (quoting FED. R. CIV. P. 23(b)(3)). "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Id. (quotation omitted).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015).

## III. __Discussion__

Defendants do not dispute that Plaintiff has met the Rule 23(a) numerosity, commonality, and adequacy requirements or the Rule 23(b) superiority requirement. Rather, Defendants assert that (1) Plaintiff Hasthantra lacks standing to pursue claims on behalf of the proposed class and the proposed class includes individuals who lack standing; (2) Plaintiff is not a typical lead plaintiff under Rule 23(a); and (3) Plaintiff fails to show that common questions of law or fact predominate under Rule 23(b). (Opp'n at 10-12, 14-20, 20-25.) The Court will address standing and each of Rule 23's requirements in turn.

### A. Standing

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

"In a class action, [t]he initial inquiry is whether the lead plaintiff individually has standing." City of Livonia Employees'

Ret. Sys. v. Wyeth, 284 F.R.D. 173, 177 (S.D.N.Y. 2012) (citation and internal quotations omitted).  The fact "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Ross v. AXA Equitable Life Ins. Co., 115 F. Supp. 3d 424, 432 (S.D.N.Y. 2015), aff'd, 680 F. App'x 41 (2d Cir. 2017) (citation omitted).

In addition, "[t]he class must [ ] be defined in such a way that anyone within it would have standing." Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006).  "Although it is not necessary that each member of the putative class submit evidence of personal standing, 'no class may be certified that contains members lacking Article III standing.'" Calvo v. City of New York, No. 14-CV-7246 (VEC), 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017) (citing Denney, 443 F.3d at 263-64).

At the class certification stage, a plaintiff must prove standing by a preponderance of the evidence.  See Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008).

### 1.  Lead Plaintiff

Defendants argue that Plaintiff Hasthantra lacks standing because he has not demonstrated that he sold his shares at a loss

6

or provided evidence of any other financial harm.  (Opp'n at 10-11.)  Plaintiff Hasthantra purchased CleanSpark securities between December 31, 2020 and January 12, 2021 (see dkt. nos. 13-2 at 3; 13-3 at 2) and has not sold any of his CleanSpark shares (see dkt. no. 93 at ECF 336.)[3]

Plaintiff Hasthantra's failure to sell his shares is no bar to his representation of the class because Article III does not impose a sell-to-sue requirement for standing.  See Swain v. Wilmington Tr., N.A., No. CV 17-71-RGA-MPT, 2018 WL 934598, at *3 (D. Del. Feb. 16, 2018).  In seeking to impose a sell-to-sue requirement, Plaintiff relies primarily on a quotation by the Court of Appeals for the Sixth Circuit stating, "stock must be purchased at an inflated price and sold at a loss for an economic injury to occur."  (Opp'n at 11 (citing Forte v. U.S. Pension Comm., No. 15-CV-4936 (PKC), 2016 WL 5922653, at *8 (S.D.N.Y. Sept. 30, 2016) (citing Taylor v. KeyCorp, 680 F.3d 609, 613 (6th Cir. 2012))).)  In Taylor, the Sixth Circuit affirmed a lower-court decision holding a plaintiff suffers no injury-in-fact where she sold her stock at an inflated purchase price for more than she paid for it and benefited from defendants' misrepresentations.  680 F.3d at 613.  But Taylor did not address whether a plaintiff must sell his or her stock to have standing.  As the court in Swain put it, the

---

[3] ECF page numbers are used herein only where the filing does not include pagination by the parties.

quotation on which Defendants rely was instead the Sixth Circuit's "less than precise paraphrase" of the Supreme Court's decision in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 342 (2005). 2018 WL 934598, at *3.

In Dura, the Supreme Court explained that an inflated purchase price alone does not constitute an economic loss because at the time of the transaction, the plaintiff owns shares equal in value to the inflated purchase price. 544 U.S. 336, 342 (2005). For example, there would be no loss if the plaintiff sells his shares quickly before any fraud was revealed. Id. However, if a plaintiff continues to hold shares with depreciating value as a result of the truth becoming known, then the plaintiff has sustained a loss. See id. Dura did not address whether a plaintiff was required to sell his stock to demonstrate a loss (and did not address standing whatsoever). Rather, the plaintiff in Dura failed to plead an economic loss because the complaint did not allege that the share price fell significantly after the truth became known or otherwise indicate a causal connection between the misrepresentation and loss. Id. at 347.[4] Plaintiff Hasthantra

---

[4] Of course, Dura teaches that Plaintiff must have alleged more than artificial inflation to allege a loss. But this requirement presents no obstacle for Plaintiff. As the Court previously held in its January 5, 2023 decision denying Defendants' motion to dismiss, the Amended Complaint sufficiently alleges that the drops in the price of CleanSpark securities were caused by Defendants' alleged misrepresentations. (Dkt. no. 60 at 36-38.)

need not have sold his shares to demonstrate he has suffered an injury-in-fact.  Cf. Varghese v. China Shenghuo Pharm. Holdings, Inc., 672 F. Supp. 2d 596, 611 (S.D.N.Y. 2009) ("[T]hat Class members have not yet sold their shares does not preclude a finding of loss causation or an award of damages.").[5]

### 2. Class Definition

Next Defendants argue that Plaintiff's proposed class of investors includes individuals who lack standing.  (Opp'n at 12.) Plaintiff defines the putative class as "[a]ll persons and entities that purchased or otherwise acquired the publicly-traded securities of CleanSpark, Inc. between December 10, 2020 and August 16, 2021, both dates inclusive" excluding certain categories of investors such as Defendants and CleanSpark officers, employees, and directors.  (Pl. Cert. Br. at 1, 1 n.2.)  According to Defendants, this definition encompasses investors that suffered no injury, such as 1) those who sold before any alleged fraud was revealed and were unaffected by the corresponding stock drop and

---

[5] Defendants also cite Forte in support of a sell-to-sue requirement, relying on its quotation of Taylor.  (Opp'n at 11 (citing Forte, 2016 WL 5922653, at *8 (quoting Taylor, 680 F.3d at 613)).)  But the plaintiff in Forte did not only fail to sell his stock at a loss—more importantly, he also failed to purchase his stock at an artificially inflated price.  The plaintiff purchased his shares before the start of the class period and did not allege that he overpaid for those shares.  See Forte, 2016 WL 5922653, at *8.

2) short-sellers who profited from the stock declines.  (Opp'n at 12.)

The Supreme Court recently denied certiorari to a case presenting the question of whether a federal court may certify a damages class pursuant to Rule 23 when the class includes both injured and uninjured class members, choosing not to resolve the question.  See Lab'y Corp. of Am. Holdings v. Davis, 605 U.S. 327 (2025).  In dissent, Justice Kavanaugh cautioned that he would hold a federal court may not certify such a class because common questions do not predominate in a class that includes both injured and uninjured members.  Id. at 328 (Kavanaugh, J., dissenting).

Given this warning, the Court exercises its authority to modify the proposed class definition to exclude investors who suffered no compensable losses from the class, in accordance with the proposal Plaintiff outlined in reply.  See Ruzhinskaya v. Healthport Techs., LLC, 311 F.R.D. 87, 108 (S.D.N.Y. 2015) ("The Court has authority sua sponte to modify a proposed class definition." (collecting cases)).[6]

---

[6] Plaintiff's revised proposal defines the class as:

> All persons and entities that purchased or otherwise acquired the publicly-traded securities of CleanSpark, Inc. between December 10, 2020 and August 16, 2021, both dates inclusive. Excluded from the Class are persons and entities that suffered no compensable losses, as well as: (i) Defendants; (ii) current and former officers, employees, and directors of CleanSpark, Inc.; (iii) blood relatives and household members of any person excluded under (i) or (ii); and (iv) (cont'd)

**B.   Rule 23(a)**

1. <u>Numerosity</u>

Rule 23(a)(1) is satisfied when a class is "so numerous that joinder of all members is impracticable." Fᴇᴅ. R. Cɪᴠ. P. 23(a)(1). "[N]umerosity is presumed where a putative class has forty or more members[]." <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 252 (2d Cir. 2011) (citing <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995)). "In securities fraud class actions relating to publicly owned and nationally listed corporations, 'the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" <u>In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.</u>, 281 F.R.D. 134, 138 (S.D.N.Y. 2012) (citation omitted).

Here, CleanSpark common stock was traded on the Nasdaq with an average of 30.3 million shares outstanding. (<u>See</u> Pl. Cert. Br. at 8 (citation omitted).) Approximately 93% of the Company's common stock was held and freely tradeable by outside investors.

---

(cont'd) any entities affiliated with, controlled by, or more than 10% owned by, any person excluded under (i) through (iii); and (v) the legal representatives, heirs, successors, or assigns of any person or entity excluded under (i) through (iv).

(Pl. Reply at 5 n.3.)

(See id.)  Because there are presumably thousands of class members, the numerosity requirement is satisfied.

####  2. Commonality

Commonality requires that there be "questions of law or fact common to the class," FED. R. CIV. P. 23(a)(2), and is a "low bar, especially in securities-fraud actions." S. A. Fire & Police Pension Fund v. Dentsply Sirona Inc., No. 22-CV-6339 (AS), 2025 WL 1903959, at *2 (S.D.N.Y. July 10, 2025). Questions of law and fact common to the class include: "1) whether defendants made misleading misstatements or misleadingly omitted information; 2) whether the alleged fraud was material; and 3) whether defendants acted with scienter." Id. (citing Fogarazzo v. Lehman Bros., 232 F.R.D. 176, 180 (S.D.N.Y. 2005)).

Plaintiff's claims raise numerous questions common to the class, for example whether Defendants made misleading statements or concealed material facts about CleanSpark's business.

####  3. Typicality

The typicality requirement set forth in Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." McIntire v. China MediaExpress Holdings, Inc., 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014); see FED. R. CIV. P. 23(a)(3). Courts deny class certification on atypicality grounds "where a class representative may be subject

to a unique defense that would 'pose an unacceptable risk of drawing attention away from the central issues in [the] litigation.'" In re Pfizer Inc. Sec. Litig., 282 F.R.D. 38, 45 (S.D.N.Y. 2012) (alteration in original) (citation omitted).

However, "the unique defense rule . . . is not rigidly applied in this Circuit. Indeed, it is intended to protect [a] plaintiff class—not to shield defendants from potentially meritorious suit and has generally been applied only where a full defense is available against an individual plaintiff's action." Id. (citation omitted); see also In re Sumitomo Copper Litig., 194 F.R.D. 480, 482 (S.D.N.Y. 2000) ("[T]o the extent that particular [c]lass members are later found to be subject to defenses, 'a court can certify a class while reserving the right to shape the class more precisely to fit the issues of the case as those emerge during the litigation.'" (alteration in original) (citation omitted)).

Defendants argue that Plaintiff Hasthantra is subject to unique defenses that destroy typicality. First, Defendants claim Plaintiff is vulnerable to an argument that he did not rely on the market because he continued to purchase CleanSpark securities after the Culper Report was issued and this lawsuit was initiated and a few weeks before he filed a motion seeking to be appointed lead plaintiff. (Opp'n at 17.) According to Defendants, because Plaintiff made these purchases, he is ill-suited to invoke the fraud-on-the-market presumption of reliance under Basic Inc. v.

_Levinson_, 485 U.S. 224 (1988) and the presumption of reliance applicable to omission claims under _Affiliated Ute Citizens of Utah v. United States_, 406 U.S. 128 (1972). (Opp'n at 17.)

"[N]umerous courts have held [that] the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market . . . before the information at issue was corrected or changed." _In re Pfizer Inc. Sec. Litig._, 282 F.R.D. at 46 (alterations in original) (citation omitted). However, "courts have found plaintiffs who have made post-disclosure purchases to be atypical when those plaintiffs possessed information that had not been disclosed to the investing public or when plaintiffs made a 'disproportionately large percentage' of their purchases post-disclosure.'" _City of Livonia_, 284 F.R.D. at 178.

Here, Plaintiff Hasthantra's post-disclosure purchases do not render him an atypical representative of the class. There is no suggestion that Plaintiff Hasthantra had any insider information. _Cf. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp._, 222 F.3d 52, 59 (2d Cir. 2000) (disqualifying proposed class representative who made purchases after stock decline and was a "sophisticated broker" with "access to more information than other investors in the putative class"); _Rocco v. Nam Tai Elecs., Inc._, 245 F.R.D. 131,

134-36 (S.D.N.Y. 2007) (holding plaintiff who made additional post-class period purchases despite knowledge of a second, ongoing alleged fraud that was never publicly disclosed was atypical).  In addition, Plaintiff's post-disclosure purchases of CleanSpark shares constitute a small portion of his overall amount of purchases. (See dkt. no. 36-1 at 3-4.)  The overwhelming majority of Plaintiff Hasthantra's purchases were made between December 31, 2020 and January 12, 2021 (see id.) before any alleged fraud was revealed by the Culper Report on January 14, 2021.  While Plaintiff Hasthantra bought more CleanSpark shares on February 9, 2021, February 23, 2021, and March 5, 2021, these transactions represent a small fraction of his overall ownership in CleanSpark common stock. (See id.)  The Court is satisfied that Plaintiff Hasthantra's purchases do not present a conflict precluding certification and that the possible defense Defendants contemplate is unlikely to become the focus of the litigation.

Defendants also argue that Plaintiff Hasthantra is subject to a separate unique defense—that he cannot show he relied on any of the alleged misstatements that occurred after his last purchase of CleanSpark stock on March 5, 2021. (Opp'n at 18.)  On the contrary, "it is well established that where . . . [a] plaintiff[] allege[s] that [his] losses were the result of a sustained course of conduct that propped up defendant's stock price throughout the class period, the class may be represented by an individual who

15

purchased his shares prior to the close of the class period." In re Vivendi Universal, S.A., 242 F.R.D. 76, 87 (S.D.N.Y. 2007), aff'd sub nom. In re Vivendi, S.A. Sec. Litig., 838 F.3d 223 (2d Cir. 2016).  Here, the alleged misstatements Defendants made after March 5, 2021 concerned the same course of conduct as their earlier misstatements, namely CleanSpark's shift of its business model from alternative energy and software to mining Bitcoin, including the delayed timeline for the Expansion Project.  The fact that Plaintiff Hasthantra's transactions of CleanSpark securities ended on March 5, 2021—before the close of the class period on August 16, 2021—does not prevent Plaintiff Hasthantra from representing the class.

Also in support of their assertion that Plaintiff Hasthantra is an atypical representative, Defendants argue that Plaintiff's damages model does not calculate any damages to him.  (Opp'n at 19.)  Defendants claim that Plaintiff's expert's out-of-pocket model calculates damages at the time of the investor sale and point out that Plaintiff Hashantra has not sold any of his CleanSpark shares.  (Id.)

Plaintiff's out-of-pocket damages model does not preclude investors who have not sold their shares.  Rather, out-of-pocket losses in a securities fraud action is "the difference between the purchase price and true value of the stock, or, if bought and sold, the gross economic loss adjusted to reflect that portion of loss

16

attributed to market and other factors." In re Crazy Eddie Sec. Litig., 948 F. Supp. 1154, 1165 (E.D.N.Y. 1996).  Moreover, "plaintiffs are not required to . . . proffer a damages model [] on class certification."  In re Barrick Gold Sec. Litig., 314 F.R.D. 91, 105 (S.D.N.Y. 2016).  Plaintiff's damages model does not subject him to unique defenses.

Finally, Defendants argue that Plaintiff Hasthantra is atypical because he "revealed the reasons for his purchases of CleanSpark stock, and they have nothing to do with the statements by Defendants on which this case purports to be based." (Opp'n at 3.)  Specifically, Defendants assert that Hasthantra testified at his deposition that he bought CleanSpark stock because Bitcoin was one of the top performing industries at the time.  (Id. at 3 n.5.) But Plaintiff's fraud claims are premised on the fraud-on-the-market theory outlined in Basic, 485 U.S. at 241, whereby individuals transacting in the efficient market can be presumed to have relied on any misstatements and omissions for purposes of their fraud claim.  Moreover, Plaintiff's deposition indicates that he purchased CleanSpark stock because he believed the company would be able to efficiently mine Bitcoin.  (Hasthantra Tr. at 53:8-15.)  Plaintiff Hasthantra's reasoning therefore relates directly to Plaintiff's central allegation of fraud—that CleanSpark misrepresented and omitted material information regarding its business shift to mining Bitcoin.  Defendants have

not demonstrated that Plaintiff Hasthantra is "subject to an arguable defense of non-reliance on the market . . . and therefore, atypical of the class under Rule 23(a)(3)." Rocco, 245 F.R.D. at 136.

### 4. Adequacy

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "In assessing this requirement, courts make two principal inquiries: 'whether (1) plaintiff's interests are antagonistic to the interest of other members of the class; and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" In re Aphria, Inc. Sec. Litig., 342 F.R.D. 199, 204-05 (S.D.N.Y. 2022) (quoting In re Flag Telecom Holdings, Ltd. Securities Litigation, 574 F.3d 29, 35 (2d Cir. 2009)).

Plaintiff Hasthantra's claims are aligned with the claims of the class, and he has ably prosecuted this action thus far. Similarly, Plaintiff's counsel are experienced securities-fraud litigators. Plaintiff meets the adequacy requirement.

### C.   Rule 23(b)

#### 1. Predominance

A class qualifies for certification under Rule 23(b)(3) if it meets the prerequisites of Rule 23(a), "the court finds that the questions of law or fact common to class members predominate over

any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

"The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiff "must demonstrate that 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof.'" In re Aphria, Inc. Sec. Litig., 342 F.R.D. at 205 (citation omitted).

Defendants claim that Plaintiff does not meet the predominance requirement because he fails to demonstrate a common method of reliance that applies class wide. (Opp'n at 21.) In this action, Plaintiff seeks to satisfy the reliance element of his claim via the fraud-on-the-market presumption under Basic and the presumption of reliance applicable to omission claims under Affiliated Ute. (Pl. Cert. Br. at 12.)

First, with respect to reliance, Defendants argue that discovery has disproved Plaintiff's allegations regarding Defendants' omissions such that the Affiliated Ute presumption

does not apply.   (Opp'n at 21.)[7]   While a court's class-certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 351 (2011), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." <u>Amgen Inc. v. Conn. Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." <u>Id.</u>

Defendants' argument requires an inquiry into the merits that is inappropriate for the class certification stage. Even assuming that Defendants' characterization of discovery were accurate and discovery has disproven Plaintiff's allegations regarding omissions, the question of whether Plaintiff's claims primarily concern omissions does not present a risk that individual questions will predominate.  Either the entire class or no member of the class is entitled to rely on the <u>Affiliated Ute</u> presumption.

Next Defendants argue that neither the <u>Basic</u> presumption or the <u>Affiliated Ute</u> presumption applies to investors who purchased their CleanSpark stock after this lawsuit was filed on January 20,

---

[7] The alleged omissions by Defendants involve the shift in CleanSpark's business to mining Bitcoin, including Marathon's withdrawn offer and that Virtual Citadel had gone bankrupt. (<u>See</u> <u>supra</u> Section I.)

2021.  (Opp'n at 22.)  In Defendants' view, this action was a "disclosure [that was] so forceful" it became unreasonable for an investor or the market to continue to be misled by Defendants' alleged misstatements.  (Id. (citing GAMCO Inv'rs, Inc. v. Vivendi, S.A., 917 F. Supp. 2d 246, 261-62 (S.D.N.Y. 2013).)  This argument ignores that a significant aspect of the alleged fraud—the timeline for completion of the Expansion Project—was not revealed until the corrective disclosures in February and August 2021.  Under these circumstances, the initiation of this lawsuit was not a disclosure that made it unreasonable for investors who purchased after January 20, 2021 to rely on Defendants' statements.

Third, Defendants argue that putative class members will be unable to invoke the Basic presumption for alleged misstatements that post-date their purchases.  (Opp'n at 22.)  As outlined supra Section III.B.3, Defendants' allegations are premised on one continuing course of conduct—alleged misrepresentations regarding CleanSpark's shift of its business model from alternative energy and software to mining Bitcoin, including the delayed timeline for the Expansion Project.  Because the alleged misstatements involve one course of conduct, individual questions about investor reliance for misstatements that post-date their purchases do not threaten to predominate the action.

Finally, Defendants assert that Plaintiff cannot show predominance because he has not provided a model capable of

calculating damages on a class-wide basis that is consistent with his liability theory. (Opp'n at 22-23.) Plaintiff submitted the expert report of Dr. Bozanic in support of the assertion that CleanSpark common stock traded in an efficient market and to demonstrate that damages can be calculated using a common methodology. (Dkt. no. 91-1 ¶¶ 1, 2.) Defendants claim Dr. Bozanic's event study did not find statistically significant price movements on the dates of certain misstatements and corrective disclosures, indicating this model is inconsistent with Plaintiff's theory of liability. (Opp'n at 23.)

Defendants' argument fails for two reasons. First, Dr. Bozanic's "event study was not prepared to demonstrate price impact, but, rather, market efficiency. As such, Defendants' efforts to criticize his report for failing to make findings that were not the focus of the report is to no avail." Bing Li v. Aeterna Zentaris, Inc., 324 F.R.D. 331, 345 (D.N.J. 2018), aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc., 775 F. App'x 51 (3d Cir. 2019); (see dkt. no. 91-1 ¶ 1.) Second, it is Defendants' burden, rather than Plaintiff's, to demonstrate the absence of price impact. Halliburton v. Erica P. John Fund, 573 U.S. 258, 279 (2014) (Halliburton II). While Dr. Bozanic did not find certain price movements at the 95% confidence level generally necessary to demonstrate price impact (see Opp'n at 23), his report concluded that it is more likely than not that the alleged

misrepresentations had price impact, (see dkt. no. 96 ¶ 35).  For example, Dr. Bozanic found a statistical significance level of 89.6% for the stock price increase associated with the alleged misrepresentations on December 10, 2020.  (Id.)  Likewise, the expert found a 94.4% cumulative significance level for the stock drops associated with the Culper Report and the follow-on tweet the next day.  (Id. ¶ 37.)  Considering Defendants have failed to present any evidence demonstrating a lack of price impact to rebut the presumption of reliance, Plaintiff is entitled to the presumption of reliance and have satisfied Rule 23(b)(3)'s predominance requirement.

   2. <u>Superiority</u>

  Plaintiff must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  In assessing superiority, a district court examines Rule 23(b)(3)'s nonexclusive list of factors for consideration.  Specifically,

> A) the class members' interests in individually controlling the prosecution . . . of separate actions; B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and D) the likely difficulties in managing a class action.

<u>Id.</u>  "The manageability of a class action is the most important of these factors."  <u>In re Aphria, Inc. Sec. Litig.</u>, 342 F.R.D. at 207.

Plaintiff explains that there is no indication any members of the proposed class would prefer to prosecute individually and there do not appear to be any existing cases already pursued by class members. (Pl. Cert. Br. at 25.)  In addition, the cost of pursuing individual litigation may not be feasible given the members of the class are geographically dispersed, which counsels in favor of concentrating the litigation in one forum.  Finally, there is no suggestion of any management issues.  Plaintiff has demonstrated that a class action is the superior method to adjudicate his claims.

## IV.  **Conclusion**

For the foregoing reasons, Defendants' Motion for Class Certification [dkt. no. 89] is GRANTED.  The Court orders as follows:

1. This action is certified as a class action and the Class is defined as:

> All persons and entities that purchased or otherwise acquired the publicly-traded securities of CleanSpark, Inc. between December 10, 2020 and August 16, 2021, both dates inclusive. Excluded from the Class are persons and entities that suffered no compensable losses, as well as: (i) Defendants; (ii) current and former officers, employees, and directors of CleanSpark, Inc.; (iii) blood relatives and household members of any person excluded under (i) or (ii); and (iv) any entities affiliated with, controlled by, or more than 10% owned by, any person excluded under (i) through (iii); and (v) the legal representatives, heirs, successors, or assigns of any person or entity excluded under (i) through (iv).

2.  Darshan  Hasthantra  is  hereby  appointed  as  Class Representative.

3. Glancy Prongay & Murray LLP is hereby appointed as Class Counsel.

Counsel shall confer and inform the Court by letter no later than October 9, 2025 of how they propose to proceed.

The Clerk of Court is respectfully directed to close docket entry 89.

**SO ORDERED.**

Dated:    September 24, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge