UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARSHAN HASTHANTRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CLEANSPARK, INC., ZACHARY BRADFORD, and S. MATTHEW SCHULTZ,<br><br>Defendants. | No. 1:21-cv-00511-LAP |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE PORTIONS OF DAVID M. PONTE'S REPORT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ............................... 1

ARGUMENT ............................................................................................................................... 2

    I.    PLAINTIFF MUST ESTABLISH ADMISSIBILITY ....................................................... 2

        A.    Expert Opinions Must Be Reliable At Every Step ............................................... 3

        B.    Expert Opinions Must Be Relevant ...................................................................... 3

    II.    THE COURT SHOULD EXCLUDE IMPROPER FACTUAL NARRATIVE ................. 5

    III.    THE COURT SHOULD EXCLUDE PONTE'S OPINIONS ABOUT CLEANSPARK'S ALLEGED KNOWLEDGE AND CONDUCT ................................. 10

        A.    Ponte Improperly Opines On Defendants' Knowledge and Credibility ........................ 10

        B.    Ponte Improperly Opines On Legal Issues ........................................................ 11

        C.    Ponte Relies On Hearsay .................................................................................... 13

CONCLUSION .......................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*523 IP LLC v. CureMD.Com,*
  48 F. Supp. 3d 600 (S.D.N.Y. 2014) .................................................................................... 8

*Abreu Bautista v. Pagan-Rodriguez,*
  2025 WL 1730213 (S.D.N.Y. June 23, 2025) ........................................................... 2, 3, 4, 13

*Accent Delight Int'l. Ltd. v. Sotheby's,*
  2023 WL 2307179 (S.D.N.Y. Mar. 1, 2023) .......................................................... 5, 11, 12, 13

*Amorgianos v. Natl. R.R. Passenger Corp.,*
  303 F.3d 256 (2d Cir 2002) .................................................................................................. 3

*Arista Recs. LLC v. Lime Grp. LLC,*
  2011 WL 1674796 (S.D.N.Y. May 2, 2011) ......................................................................... 5

*Bank of Am., N.A. v. Bear Stearns Asset Mgt.,*
  969 F. Supp. 2d 339 (S.D.N.Y. 2013) .................................................................................. 2

*Boucher v. U.S. Suzuki Motor Corp.,*
  73 F.3d 18 (2d Cir. 1996) ..................................................................................................... 3

*Bustamante v. Kind, LLC,*
  100 F.4th 419 (2d Cir. 2024) ............................................................................................. 2, 4

*Cerbelli v. City of New York,*
  99 CV 6846 (ARR)(RML), 2006 WL 2792755 (E.D.N.Y. Sept. 27, 2006) ........................ 13

*Cleaveland v. Home Depot USA Inc.,*
  788 F.Supp.3d 325 (D. Conn. 2025) .................................................................................... 3

*Colangelo v. Champion Petfoods USA, Inc.,*
  6:18-CV-1228 (LEK/ML), 2022 WL 991518 (N.D.N.Y. Mar. 31, 2022) ........................... 11

*Daubert v. Merrell Dow Pharm., Inc.,*
  509 U.S. 579, 113 S. Ct. 2786 (1993) .................................................................................. 4

*Dibella v. Hopkins,*
  403 F.3d 102 (2d Cir. 2005) ................................................................................................. 3

*Doe 3 v. Indyke,*
  24-CV-1204 (AS), 2025 WL 2642114 (S.D.N.Y. Sept. 15, 2025) ..................................... 11

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ............................................................................................................. 3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   11 MDL 2262 (NRB), 2025 WL 2733020 (S.D.N.Y. Sept. 25, 2025) .............................. 4, 13

*In re Mirena Ius Levonorgestrel-Related Products Liab. Litig. (No. II)*,
   341 F. Supp. 3d 213 (S.D.N.Y. 2018) ............................................................................. 3

*In re Platinum-Beechwood Litig.*,
   469 F. Supp. 3d 105 (S.D.N.Y. 2020) ............................................................................ 11

*In re Rezulin Prods. Liability Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................................................................ 4, 11

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) ..................................................................................... 13, 14

*Navigators Ins. Co. v. Goyard, Inc.*,
   608 F. Supp. 3d 44 (S.D.N.Y. 2022) ............................................................................... 7

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ................................................................................... 3, 4, 5

*Novartis Pharma AG v. Incyte Corp.*,
   1:20-CV-400-GHW, 2024 WL 3608338 (S.D.N.Y. July 29, 2024) ................................. 6

*PharmacyChecker.com v N.A. of Boards of Pharm.*,
   19-CV-7577 (KMK),2023 WL 2973038 (S.D.N.Y. Mar. 28, 2023) ........................... 8, 12

*Scentsational Tech., LLC v. Pepsi, Inc.*,
   13-CV-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ............................ 5, 10

*Sec. & Exch. Commn. v. Am. Growth Funding II, LLC*,
   16-CV-8,28 (KMW),2019 WL 1772509 (S.D.N.Y. Apr. 23, 2019) ............................... 10

*Wells Fargo Bank, N.A. v. United States Life Ins. Co. in City of New York*,
   22 CIV. 8606 (JPC)2025 WL 2220948 (S.D.N.Y. Aug. 4, 2025) .................................. 12

**Rules**

Federal Rules of Evidence Rule 702 ................................................................................ 2, 3, 4

Federal Rules of Evidence Rule 401 ........................................................................................ 4

Federal Rules of Evidence Rule 403 ..................................................................................... 4, 5

Federal Rules of Evidence Rule 704(a) .............................................................................. 4, 12

Federal Rules of Evidence Rule 801(c) ................................................................................... 13

**PRELIMINARY STATEMENT**

The report by Plaintiff's[1] proposed construction expert in this case, David M. Ponte ("Ponte"), contains virtually no "expert" opinion in it at all. Instead, the report is comprised almost entirely of pure narrative based on an amalgamation of certain discovery materials he reviewed, and is thus far closer to a summation by counsel than to neutral analysis by an expert. Other portions of the report step squarely on the jury's role, making legal and factual "findings" that have no place in an expert's report. And inadmissible hearsay is integral to the whole thing.

Although Defendants do not at this stage seek exclusion of Ponte's opinions concerning construction project management standards, the remainder of his opinions are inadmissible and should be excluded outright.

**STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY**

Plaintiff's amended complaint ("Complaint" or "AC") (ECF 36) asserts two claims, under: (i) Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (together, "Section 10(b)"); and (ii) Section 20(a) of the Exchange Act ("Section 20(a)"). (AC ¶15). Plaintiff asserts these claims on behalf of himself and the class that this Court certified on September 24, 2025. (ECF 101 at 24).

The Complaint alleges that Defendants made material misrepresentations or omissions on various dates between December 10, 2020 and May 7, 2021, relating to CleanSpark's acquisition of ATL Data Centers LLC ("ATL") and expansion of ATL's data center and bitcoin mining facility. (*E.g.*, AC¶¶14, 139-40, 151). Plaintiff has now abandoned all but four alleged corrective disclosures: (i) the "Culper Report" "published" by short-seller Culper Research on January 14,

---

[1] "Plaintiff" refers to Darshan Hasthantra. "Defendants" refer to CleanSpark, Inc. ("CleanSpark"), Zachary Bradford ("Bradford") and S. Matthew Schultz, collectively.

2021 (AC ¶¶6, 45); (ii) Culper's related Tweet on January 15, 2021 (AC ¶51); (iii) a February 12, 2021 CleanSpark press release ("2/12/21 PR"), announcing financial results for the fiscal quarter ending on December 31, 2020 (AC ¶88); and (iv) an August 17, 2021 CleanSpark press release ("8/17/21 PR"), which announced financial results for the fiscal quarter ending on June 30, 2021 (AC ¶110) (collectively, the "Alleged Corrective Disclosures").

On July 18, 2025, Plaintiff provided a report by Ponte (the "Report"),[2] which purports to provide "an overview of construction project management principles" and to opine "on the reasonableness of the Defendants' various assertions regarding project completion in light of the project's own estimated completion dates." Report §I(A).

## ARGUMENT

**I.     PLAINTIFF MUST ESTABLISH ADMISSIBILITY**

Expert testimony that does not satisfy Federal Rules of Evidence Rule ("FRE") 702 is inadmissible. *See, e.g., Abreu Bautista v. Pagan-Rodriguez*, 2025 WL 1730213, at *1 (S.D.N.Y. June 23, 2025). And the party proffering an expert bears the burden of establishing admissibility by a preponderance of the evidence. *See, e.g., Bank of Am., N.A. v. Bear Stearns Asset Mgt.*, 969 F. Supp. 2d 339, 346-47 (S.D.N.Y. 2013). As "gatekeeper," the Court is obligated to ensure that only reliable, relevant expert testimony is admitted. *Bustamante v. Kind, LLC*, 100 F.4th 419, 427 (2d Cir. 2024).

Qualifications are not enough: the expert's proponent must also "demonstrate[] to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable

---

[2] A copy of the Report is attached to the accompanying Affirmation of David Partida (the "Partida Aff.") as Exhibit A.

2

principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FRE 702.

### A. Expert Opinions Must Be Reliable At Every Step

"To warrant admissibility…it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Natl. R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir 2002). And "*any* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Id.* Accordingly, courts exclude expert opinions that are: "'speculative or conjectural,'" *Abreu*, 2025 WL 1730213, at *2 (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)); "'based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison,'" *id.*; "connected to existing data only by the *ipse dixit* of the expert,'" *id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached," *Amorgianos*, 303 F.3d at 266; or the product of "reverse-engineer[ing] a theory to fit" an assumed conclusion." *In re Mirena Ius Levonorgestrel-Related Products Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 251 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Products Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020)).

### B. Expert Opinions Must Be Relevant

Even where an expert's opinion is reliable, "the Court must determine that the expert's testimony will 'assist the trier of fact,' by helping 'the jury in comprehending and deciding issues beyond the understanding of a layperson.'" *Cleaveland v. Home Depot USA Inc.*, 788 F.Supp.3d 325, 344 (D. Conn. 2025) (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *Dibella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005)). "Expert testimony that seeks to address lay matters, which a jury is capable of understanding without expert help, is not relevant and therefore

3

not admissible." *Abreu*, 2025 WL 1730213, at *4 (internal quotation marks omitted). Neither are expert opinions addressed to points that are not at issue in the action. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11 MDL 2262 (NRB), 2025 WL 2733020, at *26 (S.D.N.Y. Sept. 25, 2025) (excluding expert testimony "as irrelevant, misleading, and unhelpful to the fact finder" where it generated conclusions about a subject not at issue).

In addition, expert testimony may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Nimely*, 414 F.3d at 397 (internal quotation marks omitted).

And although "[a]n opinion is not objectionable just because it embraces an ultimate issue," FRE 704(a), "expert testimony regarding 'an ultimate determination that [is] exclusively within [the jury's] province,' including witness credibility, must be precluded, as must expert testimony 'on issues of law.'" *Abreu*, 2025 WL 1730213, at *2.

Critically, experts may not "supplant the role of counsel in making argument at trial or be permitted to merely construct[] a factual narrative based upon record evidence." *Id.* (citations and internal quotation marks omitted). *See also In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (holding "narrative of the case which a juror is equally capable of constructing" inadmissible).

Finally, judges analyzing FRE 702 "'should also be mindful of other applicable rules,'" including FRE 401 ("Test for Relevant Evidence") and FRE 403 ("Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons"). *Bustamante*, 100 F.4th at 427 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786 (1993)). For example, courts are careful to consider the "unique weight [expert testimony] may have in a jury's deliberations" and FRE 403's prohibition of evidence whose "probative value is substantially

4

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *4 (S.D.N.Y. May 2, 2011) (quoting *Nimely*, 414 F.3d at 397, FRE 403).

## II.    THE COURT SHOULD EXCLUDE IMPROPER FACTUAL NARRATIVE[3]

Experts are "witnesses who, by virtue of specialized expertise, are able to provide opinions or information beyond the ken of the layperson." *Scentsational Tech., LLC v. Pepsi, Inc.*, 13-CV-8645 (KBF), 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018), *aff'd sub nom. ScentSational Tech. LLC v. PepsiCo, Inc.*, 773 Fed. Appx. 607 (Fed. Cir. 2019). As a result, it is "inappropriate for experts to act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story.'" *Id*.

Yet that is *exactly* what Ponte does here. The vast majority of his Report consists of a one-sided factual narrative purportedly derived from the Complaint, deposition transcripts, and other documents he reviewed. (Report §I(C)). Such expert "opinion" is neither relevant nor reliable. *See Scensational*, 2018 WL 1889763, at *4 ("Acting simply as a narrator of the facts does not convey opinions that are based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology."). Rather, it "invade[s] the province of the jury," *id.*, as well as "counsel's job in summation." *Accent Delight Int'l. Ltd. v. Sotheby's*, 2023 WL 2307179, at *29 (S.D.N.Y. Mar. 1, 2023) (excluding expert testimony where it "simply rehash[ed] the facts of the case or summarize[d] evidence," for example by "describing and interpret[ing] communications between" plaintiffs and a third party; "draw[ing] inferences from the invoices" the third party provided plaintiffs; describing meeting notes; and "recit[ing] the contents of emails," among other

---

[3] This motion addresses issues pertaining to admissibility and should not be construed as a comprehensive exploration of every flaw in Ponte's opinions. Defendants reserve all of their rights.

5

things). "Factual testimony as to what individuals did, or what they said to each other must come from the trial testimony of the individuals concerned and not the expert." *Novartis Pharma AG v. Incyte Corp.*, 1:20-CV-400-GHW, 2024 WL 3608338, at *10 (S.D.N.Y. July 29, 2024) (internal quotation marks omitted).

Here, the overwhelming majority of the Report is improper factual narrative centered on purportedly summarizing certain documents to tell Plaintiff's story. For example, Ponte openly purports to make factual findings (§II (titled "Opinion and Findings"), §II(A) (titled "Key Findings")). And the substance of his Report kicks off with a Plaintiff-friendly narrative alleging that CleanSpark publicly claimed the ATL power expansion "would be completed on a very aggressive timeline," which he claims was contradicted by "internal emails, testimony, and project records [that] show that there was no factual basis for the April 2021 projected completion date"; he goes on to conclude based on other alleged communications that Defendants' "public representations did not reflect actual project conditions that existed when they were made." (Report §II(A)(1)).

Similarly, Ponte purports to summarize CleanSpark's planning activities related to the ATL expansion project (Report §II(A)(2)) as well as Bradford's alleged lack of "engineering, construction, or critical path scheduling background" and "contemporaneous records," which he suggests undercut Bradford's testimony concerning reliance "on project personnel and third-party consultants." (Report §II(A)(2)). In addition, Ponte purports to summarize terms of a Power Agreement (Report §II(A)(4)); facts relating to contractor engagement and permits concerning the ATL expansion project (Report §II(A)(5)); particular conditions that he alleges gave rise to delays (Report §II(A)(6)); noise abatement issues (Report §II(A)(7)); invoices that he claims reflected the progress of the project (Report §II(A)(7)); "power-related construction delays" that Ponte claims

6

delayed the project (Report §II(A(9)); and a purported "[m]aterial disconnect" between Defendants' public statements regarding the ATL project and "the internal state of planning and execution." (Report §II(A)(10)).

Indeed, this improper factual narrative is not limited to only Section II, but rather permeates the Report. Section III ("Project Overview") is essentially a three-page summary of Plaintiff's factual allegations in this case as well as names and roles of "[k]ey [i]ndividuals and [e]ntities," along with supposed revelations from discovery "that CleanSpark's original estimates lacked a reasonable factual basis and that … the management's projections and subsequent revisions to those projections … were unrealistic." (Report at 7). This "overview" appears to be based on compilation and summary of documents, which Defendants produced during discovery and Plaintiff's counsel presumably provided to Ponte.

And while Section IV(A) purports to describe typical "project management processes and practices" and Section IV(E) discusses "global supply chain disruptions" – which Defendants for the most part[4] do not seek to exclude at this stage[5] – Ponte dives right back into an inadmissible factual narrative in Section IV(B), with discussion of:

- the terms of a September 1, 2020 Power Sales Agreement (IV(B)(1));
- a January 7, 2021 meeting between CleanSpark and the City of College Park, Georgia, where the ATL data center was located (AC ¶61 n.15) and the alleged state of CleanSpark's internal planning at that time, apparently based on emails and

---

[4] The statement in Section IV(E) stating that "CleanSpark's team, should have reasonably anticipated lengthy procurement timelines for electrical equipment and adjusted the schedule and contingencies accordingly during project planning and execution" is inadmissible, however, for the reasons set forth in Section III of this brief.

[5] It is Plaintiff's burden, however, to demonstrate that such supposed standards are relevant to his claims under Sections 10(b) and 20(a). *See, e.g.*, *Navigators Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44, 47 (S.D.N.Y. 2022).

- meeting notes (Report §IV(B)(2));[6]

- CleanSpark's "internal planning documents dated January 29, 2021" and an excerpt of deposition testimony, as well as what he claims those "demonstrate" or "support[]" regarding the state of CleanSpark's internal planning (Report §IV(B)(3));

- an "internal email dated March 3, 2021, transmitting a preliminary Gantt chart and project plan" and more deposition testimony, as well as what these "suggest" about the state of the project's planning and Defendants' communications and "governance" (Report §IV(B)(4));

- "Other Relevant Dates and Milestones," concerning retention of an "engineer/project manager" and contractor, as well as submission of a final site plan and permit approval (Report §IV(C));

- "Additional Risk Factors and Indicators of Delay," including summaries of College Park "[n]oise abatement concerns," deposition testimony, invoices, and "related project records" (Report §IV(D));

- "Bradford's Qualifications and Limitations," which among other things purports to summarize Bradford's credentials, experience, and conduct in connection with the ATL expansion project, as well as deposition testimony and project records,

---

[6] This discussion includes a statement that "the absence of clear commitments in the Power Sales Agreement regarding the timing or feasibility of expanded power delivery introduces ambiguity regarding the parties' respective expectations and obligations." In addition to the bases for inadmissibility identified above, this statement is inadmissible because: (i) it is an impermissible legal conclusion, see *PharmacyChecker.com*, 2023 WL 2973038, at *15; and (ii) Ponte fails to explain how his experience qualifies him to opine on contractual ambiguity. See *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 643 (S.D.N.Y. 2014) ("an expert basing his opinion solely on his experience must do more than aver conclusorily that his experience led to his opinion").

8

including Ponte's opinions (i) about what those allegedly "do not substantiate" about Bradford's deposition testimony, (ii) circumstances of which there allegedly is "no evidence," and (iii) "the reliability and credibility" of Bradford's public statements (Report §IV(F));

- a timeline – *i.e.*, a summation – Ponte purportedly prepared based on his "review of the available[7] documents, deposition testimony, and project records," which he says compares Bradford's "public statements" regarding the ATL expansion project "with the actual internal status of the project at the time those statements were made" (based on documents produced in discovery) and which he then claims "reveals a consistent and material disconnect between" public statements and "internal realities known to project personnel and documented contemporaneously." (Report §IV(G)).

Factual narrative likewise infuses Ponte's summary opinions concerning CleanSpark's conduct. *See, e.g.*, Section II(B) ("Expert Opinions") (summarizing opinions regarding CleanSpark's "project governance"); Section V ("Conclusion") at 28 ("Based on my review of the available documents, deposition testimony, project records, and planning materials, it is my professional opinion that CleanSpark and its project leadership not only failed to exercise appropriate planning, oversight, and due diligence…but exhibited a complete disregard for known risks, constraints, and feasibility limitations."); *id.* ("Internal documents make clear that project leadership was aware of these substantial and foreseeable obstacles well before the publicly promoted completion dates.").

---

[7] Ponte does not define "available."

9

In short, the bulk of the Report consists of exactly the kind of inappropriate factual narrative that courts prohibit from experts, and the Court therefore should exclude it. *See, e.g., Scentsational,* 2018 WL 1889763, at *4.

### III. THE COURT SHOULD EXCLUDE PONTE'S OPINIONS ABOUT CLEANSPARK'S ALLEGED KNOWLEDGE AND CONDUCT

Although Plaintiff's improper use of Ponte as a "vehicle to present a factual narrative" is by itself enough to render the bulk of his Report inadmissible, *see id.*, much of it is inadmissible for several other reasons, too, as set forth below.

#### A. Ponte Improperly Opines On Defendants' Knowledge and Credibility

Based solely on his review of certain documents in this matter, Ponte repeatedly claims to know what Defendants were thinking. For example, he: (i) opines that Bradford's public statements were inconsistent with "internal realities known to project personnel" (Report at 25) or were otherwise not credible (Report at 5, 24); (ii) opines that CleanSpark disregarded "*known* risks, constraints, and feasibility limitations" (Report at 28) (emphasis added); (iii) opines that Defendants had "unsupported expectations" (Report at 5) or made statements without "basis" (Report at 3, 8, 24); (iv) opines that a particular email "indicates an early acknowledgement that the timeline was likely unattainable" (Report at 15); and (v) questions the credibility of deposition testimony (Report at 3 (claiming that "contemporaneous records do not substantiate" testimony)).

All of this is inadmissible. It is well-settled that "[o]pinions concerning state of mind are an inappropriate topic for expert opinion." *Sec. & Exch. Commn. v. Am. Growth Funding II, LLC,* 16-CV-828 (KMW), 2019 WL 1772509, at *1 (S.D.N.Y. Apr. 23, 2019) (excluding state-of-mind expert testimony, including regarding whether the defendants had "acted with the requisite intent to defraud"). Any "[i]nferences about the intent or motive of parties or others lie outside the bounds

10

of expert testimony." *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 115 (S.D.N.Y. 2020) (internal quotation marks omitted).

Similarly, "an expert may not offer evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise." *Accent Delight*, 2023 WL 2307179, at *28 (expert's opinions "based on his reading of emails in the record that" defendant was aware of certain facts were inadmissible).

Moreover, opinions about Defendants' state of mind or credibility "do[] not utilize [Ponte's] expertise but rather [are] comprised of a summary of internal documents that a jury would be equally qualified to review." *Colangelo v. Champion Petfoods USA, Inc.*, 6:18-CV-1228 (LEK/ML), 2022 WL 991518, at *15 (N.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Paradowski v. Champion Petfoods USA, Inc.*, 22-962-CV, 2023 WL 3829559 (2d Cir. June 6, 2023). *See also Rezulin*, 309 F.Supp.2d at 546 ("[T]he opinions of these [expert] witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.").

As a matter of law, Ponte simply cannot "offer testimony on what defendants knew or should have known, which is for the jury to figure out." *Doe 3 v. Indyke*, 24-CV-1204 (AS), 2025 WL 2642114, at *3 (S.D.N.Y. Sept. 15, 2025). And Ponte's failure to "ground most of these opinions on any specific experiences derived from his background" renders them inadmissible "*ipse dixit* ... as well." *Accent Delight*, 2023 WL 2307179, at *28.

### B. Ponte Improperly Opines On Legal Issues

Ponte also peppers his Report with summary conclusions that CleanSpark's conduct was unreasonable or departed from a "standard of care" (*e.g.*, Report at 5, 27, 29), that certain unspecified statements were without "reasonable" basis (*e.g.*, Report at 8, 24), and that certain

11

circumstances were "foreseeable" (*e.g.*, Report at 26, 27). He also tosses in an opinion *on contractual ambiguity* (Report at 13) and a couple on materiality. (Report at 5 ("material disconnect"), 25 (same)).

Even assuming that Plaintiff ultimately demonstrates that such conclusions are relevant to the issues in this case, these are inadmissible because they are legal conclusions. *See PharmacyChecker.com v N.A. of Boards of Pharm.*, 19-CV-7577 (KMK), 2023 WL 2973038, at *15 (S.D.N.Y. Mar. 28, 2023) (Second Circuit mandates "exclusion of expert testimony that expresses a legal conclusion") (internal quotation marks omitted), *cert. denied sub nom. PharmacyChecker.com LLC v N.A. of Boards of Pharm.*, 19-CV-7577 (KMK), 2023 WL 4492148 (S.D.N.Y. June 5, 2023).

Moreover, Ponte's opinions "[a]t best … would be unhelpful commentary on lay matters which a jury is capable of understanding and deciding without the expert's help" and "[a]t worst … would usurp the jury's function"; either renders them inadmissible. *Accent Delight*, 2023 WL 2307179, at *28.

In addition, "while '[a]n opinion is not objectionable just because it embraces an ultimate issue,' the proffered testimony here strays into effectively tell[ing] the jury what result to reach….[E]xpert testimony that usurps the role of the jury in applying the law to the facts before it by undertaking to tell the jury what result to reach or attempting to substitute the expert's judgment for the jury's is inadmissible." *Wells Fargo Bank, N.A. v. United States Life Ins. Co. in City of New York*, 22 CIV. 8606 (JPC), 2025 WL 2220948, at *23 (S.D.N.Y. Aug. 4, 2025) (quoting FRE 704(a); other internal quotation marks omitted). Similarly, although "an expert can aid the jury with his opinions on hypothetical facts, from which plaintiff can argue that the jury should draw certain inferences…an expert cannot inform the jury that based on the evidence defendants

12

likely engaged in" particular conduct. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11 MDL 2262 (NRB), 2025 WL 2733020, at *22 (S.D.N.Y. Sept. 25, 2025). *See also Abreu*, 2025 WL 1730213, at *4 (opinion that individual exhibited road rage was irrelevant and thus inadmissible, given that it was based on video evidence; "[t]he jury…is capable of observing the video evidence and drawing conclusions therefrom for itself").

Here, Ponte "crosses [the] line[] when he moves from offering general opinions about" construction project management standards "to offering specific opinions about the facts in this case….He crosses these red lines too when he merely rehashes evidence in the case without providing any expert analysis, as when he describes the contents of invoices and emails, or when he opines on the inferences to be drawn from such evidence…."[8] *Accent Delight*, 2023 WL 2307179, at *28. *See also Cerbelli v. City of New York*, 99 CV 6846 (ARR)(RML), 2006 WL 2792755, at *11 (E.D.N.Y. Sept. 27, 2006) (although expert could testify that he believes certain tactics are likely to increase risks, "he presents no reliable basis for opining that these purported policies did contribute to the decedent's death in this particular case, or that the police defendants could or should have foreseen that outcome").

### C. Ponte Relies On Hearsay

What is more, the Report is rife with reliance on inadmissible hearsay. "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis for his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

Throughout the Report, Ponte repeatedly relies on out-of-court statements for their truth, *see* FRE 801(c), such as deposition testimony of former CleanSpark employee Lisa DeKalb (*e.g.*,

---

[8] *See*, *e.g.*, Report at 3, 4, 12, 15, 16, 20, 21, 26.

13

Report at 15, 16) and current employee Kent Shelley (*e.g.*, Report at 14) and communications and notes concerning third party City of College Park. (*e.g.*, Report at 12). This renders those portions of the Report inadmissible. *See Marvel*, 726 F.3d at 136.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the following sections of the Report, as well as any related testimony: Sections II, III, IV(B), IV(C), IV(D), IV(F), IV(G), V.

Dated: New York, New York
       December 12, 2025

Respectfully Submitted,

_____
Jay S. Auslander
Aari Itzkowitz
David Partida
Wilk Auslander LLP
Worldwide Plaza
825 Eighth Avenue, Suite 2900
New York, New York 10019
Tel: 212-981-2300

*Attorneys for Defendants CleanSpark, Inc., Zachary Bradford, and S. Matthew Schultz*