**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCOTT BISHINS and DARSHAN HASTHANTRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CLEANSPARK, INC., ZACHARY BRADFORD, and S. MATTHEW SCHULTZ,<br><br>Defendants. | Civil Case No. 1:21-cv-00511-LAP |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF DR. ZAHN BOZANIC**

**TABLE OF CONTENTS**

**Page**

I.    PLAINTIFF DISTORTS APPLICABLE STANDARDS ..................................................1

    A.    Plaintiff Improperly Attempts to Shift Burden to Defendants.............................1

    B.    Plaintiff Relies On Outdated Case Law ..............................................................2

II.    BOZANIC'S MERITS OPINIONS ARE UNRELIABLE............................................2

    A.    Bozanic Fundamentally Misapplies and Misconstrues Statistical
         Significance ..........................................................................................................3

    B.    Bozanic's Approach Contradicts His Own Opinion On Market
         Efficiency..............................................................................................................5

         1.    Bozanic and Plaintiff Seek To Circumvent Fundamental
             Principles .................................................................................................5

         2.    Informational Efficiency.........................................................................5

         3.    Disclosure Processing Costs ...................................................................6

         4.    Combination of Returns More Than Six Months Apart ..........................7

         5.    Cherry-Picked Dates ...............................................................................9

    C.    Bozanic's Disaggregation Methodology Is Unreliable.......................................9

         1.    Use of "Disclosure Salience".................................................................9

         2.    Bozanic Ignores Other Factors That Should Be
             Disaggregated .......................................................................................10

III.    MERITS OPINIONS ARE INADMISSIBLE FOR ADDITIONAL
     REASONS ....................................................................................................................11

IV.    EFFICIENCY REPORTS ARE IRRELEVANT..........................................................12

CONCLUSION................................................................................................................13

i

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Abreu Bautista v. Pagan-Rodriguez,*
   No. 24-CV-631 (JMF), 2025 WL 1730213 (S.D.N.Y. June 23, 2025) ................................. 8, 9

*Arkansas Teacher Retirement Sys. v. Goldman Sachs Group, Inc.,*
   77 F.4th 74 (2d Cir. 2023) ............................................................................................... 8

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC,*
   No. 20-2805-CV, 2022 WL 151302 (2d Cir. Jan. 18, 2022) ...................................... 11

*Basic Inc. v. Levinson,*
   485 U.S. 224, 108 S.Ct. 978 (1988) ................................................................................. 1

*Bricklayers and Trowel Trades Int'l. Pension Fund v. Credit Suisse Sec. (USA) LLC,*
   752 F.3d 82 (1st Cir 2014) ........................................................................................... 5, 6

*Daubert v. Merrell Dow Pharm., Inc.,*
   509 US 579, 113 S. Ct. 2786, 125 L Ed 2d 469 (1993) ................................................ 12

*Erica P. John Fund v. Halliburton Co.,*
   563 U.S. 804, 131 S. Ct. 2179 (2011) .............................................................................. 2

*In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.,*
   No. 22MC3043 (DLC), 2024 WL 3357608 (S.D.N.Y. July 10, 2024) ........................... 4

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.,*
   17 CIV. 1580 (LGS), 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ............................. 6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*
   No. 14-MD-2542 (VSB), 2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) ...................... 2, 4

*In re Omnicom Grp. Inc. Sec. Litig.,*
   597 F.3d 501 (2d Cir. 2010) ............................................................................................ 6

*In re Pfizer Inc. Secs. Litig,*
   819 F.3d 642 (2d Cir. 2016) .......................................................................................... 16

*In re Vivendi, S.A. Sec. Litig.,*
   838 F.3d 223 (2d Cir. 2016) .......................................................................................... 11

*In re Xcelera.com Sec. Litig.,*
   430 F3d 503 (1st Cir. 2005) ............................................................................................ 8

*Keller v. ExxonMobil Oil Corp.,*
   No. 23-CV-1528-LTS, 2025 WL 771297 (S.D.N.Y. Mar. 11, 2025) ............................. 1

*Leone v. ASP Isotopes Inc.,*
   No. 24-CV-9253 (CM), 2025 WL 3484821 (S.D.N.Y. Dec. 4, 2024) .................... 10, 11

*Monroe County Employees Retirement System v. Southern Co.,*
   332 F.R.D. 370 (N.D. Ga. 2019) ..................................................................................... 1

*Pirnik v. Fiat Chrysler Autos, N.V.,*
   327 F.R.D. 38 (S.D.N.Y. 2018) ....................................................................................... 1

*Sundaram v. Freshworks Inc.*,
 No. 22-CV-06750 (CRB), 2025 WL 1083168 (N.D. Cal. Apr. 10, 2025) ................................ 7

*WM High Yield Fund v. O'Hanlon*,
 No. 04–3423, 2013 WL 3230667 (E.D. Pa. June 27, 2013) ...................................................... 11

**Rules**

Federal Rules of Evidence 702 ...................................................................................... 1, 2, 4, 12

## I.  PLAINTIFF DISTORTS APPLICABLE STANDARDS

### A.  Plaintiff Improperly Attempts to Shift Burden to Defendants

Plaintiff[1] bears the burden here. *See, e.g.*, *Keller v. ExxonMobil Oil Corp.*, No. 23-CV-1528-LTS, 2025 WL 771297, at *8 (S.D.N.Y. Mar. 11, 2025) ("Plaintiff has not met his burden of demonstrating by a preponderance of the evidence that [expert's] testimony" satisfies Federal Rule of Evidence ("FRE") 702); Mot. 4. And because Plaintiff fails to satisfy his burden, exclusion is mandatory. *See id.* (expert's "testimony must be excluded"); FRE 702, advisory committee comments ("ACC") to 2023 amendment ("expert testimony *may not be admitted unless* the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements") (emphasis added).

Although these standards are undisputed, Plaintiff spends much of his opposition brief (the "Opposition" or "Opp.") pretending they do not exist. For example, Plaintiff relies heavily on inapplicable class certification decisions, Opp. 7, 9, in which the defendants bore the burden of rebutting the *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978 (1988) ("*Basic*") presumption of reliance. *See, e.g.*, *Monroe County Employees Retirement System v. Southern Co.*, 332 F.R.D. 370, 393 (N.D. Ga. 2019) (class certification; defendants sought to rebut *Basic* presumption); *Pirnik v. Fiat Chrysler Autos, N.V.*, 327 F.R.D. 38, 46 (S.D.N.Y. 2018) (same).

Similarly, Plaintiff's refrain that Defendants' expert has not presented an "alternative methodology" for determining loss causation and damages, Opp. 4, 16, is irrelevant because Defendants have no such obligation. Rather, it is *Plaintiff's* obligation to "demonstrate[] to the court that it is more likely than not" that Bozanic's testimony is admissible. FRE 702. Moreover,

---

[1] Capitalized terms have the same meanings as in Defendants' initial memorandum of law filed December 12, 2025 (ECF 109) (the "Motion" or "Mot."), unless otherwise defined herein.

it is *Plaintiff's* ultimate obligation to prove loss causation and damages, which are crucial elements of his Section 10(b) claim. *See*, *e.g.*, *Erica P. John Fund v. Halliburton Co.*, 563 U.S. 804, 809, 131 S. Ct. 2179 (2011).

### B.    Plaintiff Relies On Outdated Case Law

Similarly myopic is Plaintiff's reliance on outdated decisions to suggest that any argument touching on "weaknesses in [Bozanic's] methodologies" automatically goes to weight rather than admissibility. Opp. 2-3; citing cases from 1999 and 2019. That is not the law. Rule 702 has been amended "to clarify and emphasize" the mandatory showing experts' proponents must make for admission of their testimony, with the Advisory Committee explicitly noting that "many courts" have incorrectly "held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." FRE 702, ACC to 2023 amendment. *See also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2025 WL 354671, at *1 (S.D.N.Y. Jan. 30, 2025) (rule clarification sought "to provide guidance to district courts that were misapplying it").

## II.    BOZANIC'S MERITS OPINIONS ARE UNRELIABLE

In the Motion, Defendants show that Bozanic's Merits Reports[2] are saturated with flagrant departures from industry and judicial standards; glaring inconsistencies with his deposition testimony and his work in other expert engagements; internal conflicts among statements he makes within the Merits Reports themselves; and blatant reverse-engineering. Plaintiff's effort to frame this as a mere reasonable difference of opinion between experts, Opp. 2-3, is meritless for the reasons below.

---

[2] "Merits Report" or "MR" is Bozanic's report dated July 18, 2025 (ECF 108-4). "RMR" is his reply report dated October 9, 2025 (ECF 108-6). "Merits Reports" refers to both of these reports, together.

And Plaintiff's contention that Defendants "do not contest" the reliability of Bozanic's event study and his related calculations and conclusions, Opp. 4, is nonsensical: most of Defendants' Motion is devoted to illustrating the unreliability of Bozanic's opinions.

### A.    Bozanic Fundamentally Misapplies and Misconstrues Statistical Significance

In his Merits Report, Bozanic claims that any statistical result with a confidence level greater than 50% is statistically significant (the "50% Threshold"), meaning it is likely that the event being measured did not occur by chance. MR ¶¶ 69, 78. As Defendants demonstrate in the Motion at Section II, Bozanic's view constitutes an extraordinary departure from:

- conventional statistical standards and principles employed by Bozanic's industry, Mot. 9-10, and by judicial precedent, Mot. 10-11, which among other things acknowledge that a 95% confidence level is the generally accepted threshold for statistical significance and, even in certain procedurally distinguishable instances where a slightly lower threshold is used, do not dive anywhere near the 50% Threshold that Bozanic employs in this litigation, Mot. 10;

- other portions of the Merits Report, which treat a result with a confidence level of 67.23% as *not* statistically significant, in direct conflict with the 50% Threshold Bozanic otherwise urges in this action, Mot. 11;

- his sworn deposition statements, which acknowledge that his field does not accept a 50% Threshold, Mot. 9-10; and

- Bozanic's work on other expert engagements, in which he employs confidence level thresholds of 99%, 95%, and 90%, Mot. 10.

The Opposition ignores much of this and glosses over the rest. For example, Plaintiff is silent concerning Bozanic's deposition admissions, as well as his inconsistent, only-when-it-helps-

Plaintiff application of the 50% Threshold within the Merits Reports. Likewise, Plaintiff ignores Defendants' argument that confidence levels near 50% are inherently prone to error (Mot. 10).

Further, Plaintiff's unsupported protest, Opp. n.6, that Bozanic's use of more conventional statistical significance thresholds in other expert engagements is irrelevant (Mot. 10) overlooks the reverse-engineering that this discrepancy highlights. *See In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, No. 22MC3043 (DLC), 2024 WL 3357608, at \*14-15 (S.D.N.Y. July 10, 2024) ("the same level of intellectual rigor" as in field). It also suggests the 50% Threshold was "developed for the purposes of litigation," FRE 702 ACC to 2000 amendment.[3] *See* Mot. 6-7.

In addition, Plaintiff does not dispute the utter lack of industry norms or judicial precedent employing a 50% Threshold. Opp. 6-8. At most, Plaintiff insists that statistical significance is a "continuum" and argues that courts have not applied a strict 95% cutoff to the question of whether information had no price impact. Opp. 6-7. That is a quintessential straw man argument: Bozanic does not urge a confidence level threshold of 94.9%, or 94%, or even 90%. Rather, Bozanic claims that *any confidence level above 50%* is necessarily statistically significant. MR ¶ 69.

Finally, Plaintiff's characterization of Defendants' arguments as mere disagreement with Bozanic's conclusions, Opp. 8, 12, 14, is not only baseless but also legally insufficient. "The existence of divergent opinions between parties' experts is not license for a court to abandon the gatekeeping function." *Keurig,* 2025 WL 354671, at \*4 n.3.

---

[3] The 50% Threshold even diverges from pre-Merits Reports in *this* action: Bozanic applied statistical significance thresholds of "95% or better" in his Efficiency Report. *See*, *e.g*., ER ¶ 62.

4

**B.        Bozanic's Approach Contradicts His Own Opinion On Market Efficiency**

**1.        Bozanic and Plaintiff Seek To Circumvent Fundamental Principles**

Earlier in this action, market efficiency was very useful to Plaintiff. He avoided dismissal in part based on allegations of market efficiency, ECF 101 at 22, and he obtained class certification in part based on the Efficiency Reports. *Id*.

Now, however, market efficiency poses an obstacle to Plaintiff:

> If it is assumed that the market reacts to the fraud, it must also be assumed that it reacts to the truth. Accordingly, once a misstatement or corrective disclosure is publicly known in an efficient market, courts will assume that the stock price reacts immediately, and any claim that an event moved the stock price when the event was not actually a new disclosure will necessarily fail.

*Bricklayers and Trowel Trades Int'l. Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 88-89 (1st Cir 2014).

As Defendants detail in the Motion, the Alleged Corrective Disclosures Bozanic analyzes contain information that was public before they were. Mot. 13-14, 17. Bozanic's analysis also contravenes the market's prompt absorption of public information in other ways, such as by combining returns from February 12, 2021 with returns from August 17, 2021 on the ground that they purportedly "respond[] to the same corrective events." Opp. 10.

Plaintiff fails to grapple with this argument in the Opposition.

**2.        Informational Efficiency**

Nor does Plaintiff demonstrate the reliability of Bozanic's application of the concept of "informational efficiency" as justification for his disregard of market efficiency principles. RMR ¶¶ 29-30.

In fact, Plaintiff barely mentions this issue. Opp. 8. Nor does Plaintiff identify any authority that endorses Bozanic's view or address *Bricklayers*, 752 F.3d at 94, discussed in Mot. 12-14, which contradicts it.[4]

At most, Plaintiff quotes language regarding third-party analysis of corporate financials from inapposite decisions that arose during pleading and class certification stages. Opp. 8-9. But these address neither informational efficiency nor motions to exclude expert opinions nor experts who opine that market efficiency exists but later try to circumvent market efficiency principles. *See*, *e.g.*, *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 17 CIV. 1580 (LGS), 2020 WL 1329354, at *5 (S.D.N.Y. Mar. 23, 2020) (defendants sought to rebut *Basic* reliance presumption). His citation to this Court's distinguishing of *In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) *at the motion to dismiss stage*, Opp. 9; ECF 113 at 9, is similarly misplaced.

### 3.    Disclosure Processing Costs

Further, there is no authority for applying a "disclosure processing costs" theory when analyzing the impact of alleged corrective disclosures to determine loss causation, materiality, or damages, RMR ¶ 33, let alone for doing so in contravention of efficient market principles. Mot. 15-16.

---

[4] To clarify and correct a sentence regarding *Bricklayers* at the end of Mot. 14, the court there held: "We have…explained that the relevant inquiry is whether the market is informationally efficient, meaning that 'all publicly available information is impounded in [the] price' rapidly after it is disseminated. The district court correctly applied this standard to Dr. Hakala's event study. Having established that AOL stocks traded in an efficient market in order to obtain class certification, the shareholders could not abandon that factual premise when proving loss causation. Yet several of the relevant events in Dr. Hakala's study are based on published references to information previously disclosed that, under an efficient market theory, would have already been incorporated into AOL's share price." *Bricklayers*, 752 F.3d at 94.

Plaintiff's response on this point is circular and conclusory: he argues Bozanic "rel[ies] on academic literature" and "opined" that Culper would not have incurred unidentified "costs if investors were already aware of the information," and that Bozanic's analysis will be "reliable and helpful." Opp. 9-10. The referenced "literature," however, are merely the same inapposite academic articles cited in the Merits Reports, which provide no support for Bozanic's approach. Mot. 15-16. *See*, *e.g.*, Fama, E., 1991, "Efficient Capital Markets: II" *Journal of Finance* 46 (1991) (does not mention "disclosure processing costs" and reviews "market efficiency literature" that the author "find[s] most interesting").

And Plaintiff does not address Defendants' argument that Bozanic's "theory" is rooted in inadmissible conjecture, nor that it involves improper inferences about Culper's "'intent or motive.'" Mot. 15. To be clear, Bozanic never spoke to Culper. Zahn Bozanic Deposition, at 538:10 – 538:17 (October 30, 2025). ECF 108-7. His suggestions about Culper's motivations are speculation based on the *ipse dixit* "disclosure processing costs" theory he advances. RMR ¶¶ 32-33.

Finally, contrary to Plaintiff's suggestion Opp. 10, Defendants' description of *Sundaram v. Freshworks Inc.*, No. 22-CV-06750 (CRB), 2025 WL 1083168, at *5 n.6 (N.D. Cal. Apr. 10, 2025), Mot. 15-16, properly conveys that Bozanic's underlying expert report in *Freshworks* discusses "disclosure processing costs" in connection with his speculative opinion on "drift theory." Mot. 15-16; citing ECF 108-13 at ¶¶17-18, 21.

### 4. Combination of Returns More Than Six Months Apart

Likewise unavailing is Plaintiff's response concerning Bozanic's unsupportable decision to combine abnormal returns from over six months apart. For example, Plaintiff's suggestion that Defendants cite no authority to the contrary, Opp. 11, ignores Defendants' well-supported argument that Bozanic's unprecedented approach defies an efficient market's quick incorporation

of public information. Mot. 13, 16-17. Moreover, Plaintiff's *own* cases undercut him: the cited multi-day cases, Opp. 12, involve short windows of *consecutive* dates. *See*, *e.g.*, *In re Xcelera.com Sec. Litig.*, 430 F3d 503, 513 n.11 (1st Cir. 2005) (plaintiff used one-day window at class certification and listed two, three, and five-day windows "as a control").

Also, Bozanic's approach conflicts with: (i) Plaintiff and Bozanic's *own* allegations that CleanSpark stock traded in an efficient market that quickly absorbed public information, *see, e.g.*, ER[5] ¶ 47 (market for CleanSpark stock "reacted rapidly to company-specific news"); AC ¶ 165 ("the market…promptly digested current information regarding CleanSpark from all publicly available sources and reflected such information in CleanSpark's share price"); MR ¶ 90 (claiming *other* CleanSpark news was incorporated into the market within one day); and (ii) efficient market case law. *See, e.g., Arkansas Teacher Retirement Sys. v. Goldman Sachs Group, Inc.,* 77 F.4th 74, 80 (2d Cir. 2023) (under *Basic* presumption, "[c]ourts can…presume that stock trading in an efficient market incorporates into its price all public, material information").

In addition, Bozanic's *ipse dixit* "expla[nation]" that it was "reasonable" to combine the returns because they both purportedly reflect market "response to the corrective information entering the market regarding expansion delays'", Opp. 11, cannot render his opinion admissible. *See Abreu Bautista v. Pagan-Rodriguez,* No. 24-CV-631 (JMF), 2025 WL 1730213 (S.D.N.Y. June 23, 2025). Nor does Plaintiff address the clash between Bozanic's "explanation" and Plaintiff's own allegations as well as prevailing law.

Finally, Plaintiff's reference to this Court's acceptance, at the motion to dismiss stage, of Plaintiff's "materialization of risk" allegations, Opp. 11; ECF 60 at 38, is irrelevant given that

---

[5] "ER" is Bozanic's report dated January 10, 2025 (ECF 91-1). "Efficiency Reports" are the ER and Bozanic's reply report dated May 2, 2025 (ECF 96), together.

Bozanic instead engages in a *corrective disclosure* analysis and purports to combine the more-than-six-months-apart returns in aid of that analysis (MR ¶¶ 118, 146; *see also* FR 49 n.183 (noting MR does not analyze materialization of concealed risk)).

### 5.    Cherry-Picked Dates

Plaintiff's response regarding Bozanic's cherry-picking of dates, Mot. 17, illustrates the unreliability of that approach: for example, Plaintiff justifies not treating an expansion estimate as a corrective disclosure because a same-day press release does not mention "expansion delays" and analysts did not report on it. Opp. 13. Yet the same criteria would disqualify other Alleged Corrective Disclosures: Bozanic identifies no analyst or press coverage discussing those expansion estimates. ECF 108-5 at ¶¶ 12, 93, 97.

### C.    Bozanic's Disaggregation Methodology Is Unreliable

### 1.    Use of "Disclosure Salience"

Also unavailing are Plaintiff's attempts to justify Bozanic's reliance on "disclosure salience" to avoid disaggregating certain Culper allegations that are unrelated to Plaintiff's fraud allegations. Mot. 19.

For example, in response to Defendants' argument that Bozanic's theory is *ipse dixit* (Mot. 20), Plaintiff points to the Merits Report to claim academic literature supports Bozanic. Opp. 17. But Defendants have already shown that literature is utterly inapplicable, Mot. 15-16, and Plaintiff's bald assertion that "there is no reason to assert that [corporate headlines] would impact the stock price in a way that the former would not" is insufficient speculation and conjecture. *See Abreu Bautista*, 2025 WL 1730213, at *2.

Nor does Plaintiff dispute or even mention Bozanic's apparent development of this approach solely for this litigation. Mot. 20. Plaintiff likewise fails to counter Defendants'

9

arguments that Bozanic's approach contravenes the principle that an efficient market quickly incorporates public information. Mot. 21.

And Plaintiff's attempt to minimize Bozanic's reliance on "disclosure salience" by arguing that he explained why certain points "lacked value relevance", Opp. 18, is ineffective because: (i) Bozanic expressly states he relied on "the disclosure salience literature due to it establishing a strong and robust relation between the prominence of information in a given disclosure, and its relation to stock price movements" RMR ¶ 34, and (ii) Bozanic's purported explanation is itself inadmissible *ipse dixit, see* above at 7-9 ; Plaintiff cites no authority for Bozanic's musings about what subjects investors would find unimportant. Opp. 18.

Further, Plaintiff's assertion that Garmaise "did not disavow the legitimacy of disclosure salience" nor "opine on how he would evaluate a disclosure's salience", Opp.  17, is wrong in one aspect and pointless in the other. First, Garmaise disavowed disclosure salience as a disaggregation tool. ECF 108-5 ¶¶ 42, 46, 48. Second, Plaintiff fails to explain why – or how – Garmaise would "evaluate a disclosure's salience" in the context of a Section 10(b) loss causation analysis. That's the point: Bozanic's out-of-left-field approach makes no sense. Moreover, the reliability burden is on Plaintiff. *See* above at 1.

### 2.    Bozanic Ignores Other Factors That Should Be Disaggregated

Although Plaintiff contests, Opp. 19, Defendants' argument concerning Bozanic's failure to disaggregate certain specific, major factors affecting stock price, Mot.  21, he ineffectively relies on mere conclusory, boilerplate Merits Reports statements. *See* MR ¶ 68 (referring to event study in Efficiency Report); *see also* MR ¶ 86 ("after controlling for market and industry effects").

Plaintiff also argues Garmaise did not provide his "own empirical quantification of what portions of the price drops were due to non-fraud related factors" and cites *Leone v. ASP Isotopes Inc.*, No. 24-CV-9253 (CM), 2025 WL 3484821, at *33 (S.D.N.Y. Dec. 4, 2024). Garmaise had

10

no such obligation, however. *See* above at 9-10. Further, *Leone* is another class certification decision, and the "rebuttal" it references is a defendant's effort to rebut the *Basic* presumption of reliance. *Leone*, 2025 WL 3484821, at \*33. *WM High Yield Fund v. O'Hanlon*, No. 04–3423, 2013 WL 3230667, at \*11 (E.D. Pa. June 27, 2013), Opp. 20, is also unhelpful to Plaintiff: granting summary judgment to the defendant, it holds that the *plaintiff* must submit an event study that distinguishes between fraud and non-fraud influences.

Plaintiff's final argument contends that the jury should determine the amount of any artificial inflation. Opp. 20. If Plaintiff is suggesting that Bozanic need not disaggregate, Plaintiff is wrong. *See*, *e.g., Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 20-2805-CV, 2022 WL 151302, at \*2 (2d Cir. Jan. 18, 2022) ("proof of loss causation requires that plaintiffs 'disaggregate' losses"). Nor are Plaintiff's authorities to the contrary. *See*, *e.g.*, *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 256 (2d Cir. 2016) (unlike here, expert "measure[ed] actual inflation, without reference to the timing or nature of a defendant's alleged misstatements").

## III.    MERITS OPINIONS ARE INADMISSIBLE FOR ADDITIONAL REASONS

Plaintiff's responses to the additional arguments Defendants raise in Motion Section III are, again, unavailing.

For example, Plaintiff implicitly admits that Bozanic improperly relied on the fact of certain announcements as demonstrating their importance. MR ¶ 41; Mot. 22. *See* Opp. 15 (Bozanic "noted that CleanSpark regularly updated investors…*which demonstrated that* the Company understood the importance of this information") (emphasis added).

Plaintiff also fails to meaningfully dispute that Bozanic's damages analysis is unhelpful given that he essentially leaves it to the jury to identify confounding factors and quantify price effects. Mot. 22; Opp. 20.

Further, Plaintiff's criticism of Defendants for not providing an "alternative methodology" for measuring inflation, Opp. 16, is meritless because Defendants have no such obligation. *See* above at 1-2.

Plaintiff also insists the "constant dollar inflationary ribbon" is "widely recognized", Opp. 16, but that cannot erase the need to reliably apply it nor to take into account sufficient facts and data. *See* FRE 702(b); *In re Pfizer Inc. Secs. Litig.*, 819 F.3d 642 (2d Cir. 2016) (analytical gap). Further, the Moeller article Plaintiff cites, Opp. 17, addresses an inapplicable dot-com bubble between 1998 and 2001 and also reflects that large loss deals are uncommon and reflect loss nowhere near the magnitude implied by Bozanic's measure of inflation.

Finally, Plaintiff's argument based on similar CleanSpark stock prices before and after the Class Period, Opp. 17, ignores the volatility that occurred throughout it, ECF 108-5 ¶ 105, as well as Bozanic's deposition admission that CleanSpark's business model at the beginning of the Class Period was different from that at the end. ECF 108-7 at 86-91, 379:19 – 384:2.

## IV.   EFFICIENCY REPORTS ARE IRRELEVANT

Plaintiff argues that the Efficiency Reports are relevant because Defendants or the Court may one day seek decertification of the class, Opp. 21, but there is no dispute concerning whether CleanSpark stock traded in an efficient market during the Class Period, Mot. 2, 23, and thus Bozanic's analysis concerning this question is inadmissible. *See, e.g., Daubert v. Merrell Dow Pharm., Inc.*, 509 US 579, 591, 113 S. Ct. 2786, 2795, 125 L Ed 2d 469 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

Moreover, contrary to Plaintiff's position, Opp. 21, statements in the Efficiency Reports relating to loss causation, damages, and materiality are inadmissible for the same reasons the Merits Reports are. Mot. 23.

## CONCLUSION

For the reasons above and in the Motion, Defendants respectfully request that the Court grant their Motion in its entirety.

Respectfully Submitted,

Dated:  New York, New York
   March 3, 2026

WILK AUSLANDER LLP

/s/ David J. Partida
Jay S. Auslander
Aari Itzkowitz
David J. Partida
Worldwide Plaza
825 Eighth Avenue, Suite 2900
New York, New York 10019
Tel: 212-981-2313

*Attorneys for Defendants CleanSpark, Inc., Zachary Bradford, and S. Matthew Schultz*

13